# UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MICHIGAN

**FILED - LN**
December 29, 2023 3:56 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: __lg /_____ SCANNED BY: _____ / 12/29/23

JEFFREY RYAN FENTON,

        PLAINTIFF

v.

VIRGINIA LEE STORY ET AL.,

        DEFENDANTS

CASE NO. 1:23-CV-1097

## DECLARATION IN SUPPORT OF OBJECTION TO
## 12/13/2023 REPORT AND RECOMMENDATION

Plaintiff brings this testimony pursuant to F.R.Civ.P. 26(c).

I, Jeffrey Ryan Fenton, declare as follows:

1.   I am over 18 years old and have personal knowledge of the following facts.

2.   I don't have time to prepare a proper response, but I must file a response to try to protect my case, so please know that due to my disabilities, I am not able to move fast, clearly, and concisely. This will be choppy, but I am doing the best that I can on short notice.

3.   I need electronic service. I do not have time to waste waiting on the mail, while if my box is full my mail carrier may not cram extra stuff in my box, so I may not be aware that I ever received a filing by the court.

4.   With my disabilities, I have only a fraction of a percent of a chance at ever being able

Initials: _____

to litigate this case to successful completion, not due to what is right, or true, or just, or legal, but because of the number of power players who I am against, who have already demonstrated their capacity to play the game, without regard for the truth, good faith, just motives, or anything of good and ethical repute.

5.  I need every advantage I can get and every chance I can possibly be afforded to try to litigate my case pro se. Electronic notice and filing is absolutely critical to me having any real opportunity to defend my case in federal court.

6.  I did not receive the "Report and Recommendation" by the Western District of Michigan until the evening of 12/27/2019.

7.  I have been franticly staying awake for the past two days doing everything in my power to reply to this to protect my case, but I do not have the ability to move quickly. I have "Obsessive Compulsive Personality Disorder" (OCPD) and "Attention deficit Disorder" (ADHD). Time is my greatest liability, and I need every aid possible for me to have any chance at reaching justice in this case.

8.  The reason that I filed this in Lansing rather than another Federal Court in the State of Michigan, is because I called the court first, I spoke with a clerk named "Emily" on 10/11/2023, and she told me that I could file it in Lansing, while she specifically told me that if it needed to be forwarded to a different District Court, that the Western District Court would forward my complaint wherever it needed to go, while preserving the filing date.

Initials:

9. https://www.rico.jefffenton.com/evidence/2023-10-11_usdc-wdm-emily-can-file-in-lansing.mp3

10. I don't have time right now to elaborate a lot, it is currently 1:37PM on 12/29/2023, and today is my final day to drive this to Lansing to file it at the court.

11. I've uploaded the recorded phone call from my conversation with Emily at the Western District of Michigan[1], please listen to it to verify that I did exactly as I was instructed. While I was not informed that there was any deviation or risk of my case not being forwarded to the correct court, let along being dismissed.

12. I have been working literally six days per week, 12-16 hours per day, since I filed my complaint on 10/13/2023 to write my "First Amended Complaint", which I hope to have done within the next week and a half to two weeks, so that I can hopefully serve it within the required 90 days. (My "First Amended Complaint" has massive improvements to fix the errors.)

13. I don't have that finished though I have made massive improvements, while I am providing references throughout my 2,000 page record, with great specificity, so that it will be easy to find citations without a need to read a lot of excess documentation.

14. I don't have time to tell you anymore now. I would love to, but I need more time please. I need to get my "First Amended Complaint" done before needing to spend more days simply

---

[1]   https://www.rico.jefffenton.com/evidence/2023-10-11_usdc-wdm-emily-can-file-in-lansing.mp3

Initials:

trying to keep you from dismissing my case.

15. I swear to you that I am not trying to disrepute the judiciary in any way. I have entered each court taking for granted that I would obtain justice. It is only after an absurd amount of crimes have been committed against me by the previous courts that I've been forced to research and learn about the crimes which have sadly been committed against me.

16. I wish I had time to explain more to you. Please give me more time. Justice is dependent upon me having a hearing and due process, which I have yet to be afforded, despite the mountain of "power" which I am up against.

17. I Jeffrey Ryan Fenton swear under the penalty of perjury, that Judge Michael Weimar Binkley, Attorney Virginia Lee Story, Attorney Kathryn Lynn Yarbrough, Attorney Mary Elizabeth Maney Ausbrooks, Attorney Alexander Sergey Koval, and Attorney Henry Edward Hildebrand, III, at the very least, participated in a racketeering conspiracy against my rights and my property, between the United States Bankruptcy Court Middle Tennessee District and the Williamson County Chancery Court, under the color of law, office, and official right, though wholly repugnant of the rule of law, both state and federal constitutions, the federal rules of civil procedure, the federal rules of bankruptcy procedure, a multitude of federal bankruptcy laws, along with gross violations of Title-18, Title-28, and Title-42 federal laws.

18. I Jeffrey Ryan Fenton swear under the penalty of perjury, that Judge Michael Weimar Binkley, Attorney Virginia Lee Story, Attorney Kathryn Lynn Yarbrough, Attorney Mary Elizabeth Maney Ausbrooks, Attorney Alexander Sergey Koval, and Attorney Henry Edward

Initials:

Hildebrand, III, at the very least, further violated the federal judicial canons, the State of Tennessee's Rules of Judicial and professional conduct, as well as violating my natural inalienable human rights.

19. I Jeffrey Ryan Fenton swear under the penalty of perjury, the following crimes have been committed against me by those named above and other defendants in this case: Excessive "Fraud on the Court" by Officers of both the United States Bankruptcy Court for the Middle District of Tennessee and the Williamson County Chancery Court; who Conspired together (U.S.C. 18 § 241) to strategically Circumvent & deprive my lawful Rights and Property Under Color of Law (U.S.C. 18 § 242), Office, and Official Right (18 U.S.C. § 1951), using a Fraudulent Bankruptcy petition (18 U.S.C. § 157) where my property investments and interests where falsely denied and fraudulently misrepresented, while intentionally denying me and my two lawful tenants/roommates who had legitimate leasehold property interests, with an adversarial proceeding or at the very least notice and a hearing in Federal District or Bankruptcy Court (F.R.B.P. 7001 & 11 U.S.C. § 362), further committing Concealment of Assets; False Oaths and Claims; Bribery (18 U.S.C. § 152) to wrongfully deprive a qualified ADA individual – me (42 U.S.C. §§ 12202, 12203) with the loss of over a million dollars of lifetime enjoyment and net wealth in my property investments (18 U.S.C. §§ 1341, 1957), without notice or opportunity sufficient to save my property interests (42 U.S.C. § 1985), nor to attempt to mitigate my losses (42 U.S.C. § 1986), to the unwarranted, unnecessary, unrecoverable financial detriment of myself, and severe damage to my ex-wife, while it was entirely avoidable.

Initials:

20. I Jeffrey Ryan Fenton swear under the penalty of perjury, that Judge Michael Weimar Binkley is guilty of "Official Oppression" for placing an unlawful 6-year "Order of Protection" against me based upon the false unsigned personal testimony of my ex-wife, and an almost exclusively fraudulent narrative fabricated by Attorney Virginia Lee Story.

21. I Jeffrey Ryan Fenton swear under the penalty of perjury, that Judge Michael Weimar Binkley and Attorney Virginia Lee Story are guilty of coercion my signature on a listing agreement under the threat of incarceration in Chancery Court on 8/29/2019.

22. I Jeffrey Ryan Fenton swear under the penalty of perjury that Attorney Virginia Lee Story is guilty of extortion by holding my personal property hostage, and even obtaining a federal court order from the United States Bankrupcy Court under fraudulent pretenses, to allow her to "sell" or "discard" my personal property, which she only had possession of due to her own lies and "Obstruction to Justice" in Chancery Court on 8/29/2019.

23. To clarify the extent of the abuse by Attorney Story, this Federal Court order to sell or discard of my personal property, was to intentionally supersede the State of Tennessee's "Personal Property Exemption", where any litigant can protect $10k worth of their personal property from forfeiture in any civil suit in the State of Tennessee.

24. Attorney Story intentionally obtained the Federal Court order to supersede Tennessee State law, specifically while threatening to discard or sell my personal property (which she fraudulently forced me to leave behind on 8/29/2019 in Chancery Court), demanding thousands of dollars to pay for storage or prevent her from literally discarding my stuff.

Page **7** of 49

Initials:

25. This was so obscenely abusive for the sole purpose of causing me further harm. Without it being of financial benefit to any party. Just to further dominate and punish me for trying to stand up for my rights.

26. **I Jeffrey Ryan Fenton swear under the penalty of perjury, that I have been litigiously tortured by Judge Michael Weimar Binkley and Attorney Virginia Lee Story.**

27. I Jeffrey Ryan Fenton swear under the penalty of perjury, that every action in Williamson County Chancery Court Docket #48419B is VOID (not voidable). Due to Judicial Bias, failed Due Process of Law, Jurisdictional Violations, and an excessive amount of "Fraud On the Court by Officer(s) of the Court."

28. Each of which have no "statute of limitations" for seeking corrections and a cure.

29. Executed completely in bad faith by Attorney Virginia Lee Story, an undisclosed close family friend of Presiding Judge Michael W. Binkley. Ms. Story strategically fabricated an almost exclusively "fraudulent narrative", to falsely assassinate my character, before I ever entered the Court. To forcefully take from me nearly everything I spent my life working for, invested toward our retirement, devoted my life to, and cherished. Although of hardly any financial significance to her.

30. I Jeffrey Ryan Fenton swear under the penalty of perjury, that Judge Michael W. Binkley refused his Judicial Supervisory Duties (which are not optional) to correct Attorney Story's false statements regarding matters of law, while he also refused to correct her almost non-

Initials:

stop violations of the "Rules of Professional Conduct".

31. I Jeffrey Ryan Fenton swear under the penalty of perjury, that Judge Michael W. Binkley allowed Ms. Story's pleadings to seek further <u>favor</u>, <u>dominance</u>, and <u>depravity</u>, "under color of law", instead of <u>justice</u>, as is required of all judicial pleadings, by the Federal Rules of Civil Procedure, the Judicial Canons, and the Rules of Professional Conduct. None of which Judge Binkley nor Attorney Story showed any care or submission toward, whatsoever.

32. It will require **multiple declarations** for me to articulate the depth and breadth of the crimes which were committed against me and my family "under color of law," in Williamson County Chancery Court and the United States Bankruptcy Court for the Middle District of Tennessee.

33. Along with the damage which we have and continue to daily suffer.

34. I Jeffrey Ryan Fenton swear under the penalty of perjury, that Judge Michael W. Binkley and Attorney Virginia Lee Story have committed Hobbs Act "extortion of my property" followed by "extortion of my silence" against me.

35. I Jeffrey Ryan Fenton swear under the penalty of perjury, that Judge Michael Weimar Binkley and Attorney Virginia Lee Story and ADA "Coercion/Extortion/Threats/Retaliation/and Interference".

36. I Jeffrey Ryan Fenton swear under the penalty of perjury, that my testimony has never been heard or considered, despite the fact that I have never failed to plead. I had over 250 pages

Initials:

of sworn testimony including clear and convincing evidence that every action brought against me was substantially fraudulent, which I filed in the Chancery Court on 8/29/2019, before they wrongfully evicted me from my home, driving me to the State of Michigan to seek emergency shelter and provision in the 748 SqFt basement of my elderly mother who lives in Linden, Michigan.

37. I have done nothing but been literally terrorized by the court system so far. While not one single action was my fault. While every action is required by the Federal Rules of Civil Procedure to seek justice, yet not one filing by the defendants in this case ever did. Not in state court, not in federal court.

38. I can not respond to anything within 14 days. I don't even have time to do the research and understand what I'm replying to or how I should reply in fourteen days. Right now I will need to stay awake all night working on this, I'm sure that it will be rough at best, but I must drive to Lansing tomorrow to file this at the court in person, since I have been denied electronic filing, and since my 14-day deadline seems to be expiring today, the day that I've received this reply from the court.

39. I'm sorry, but I don't have TIME to edit this any better, it is almost 2pm on 12/29/2023. I must print and run to the court to file this to meet your deadline. I can and would like to do a better job, but I need TIME please.

40. The genesis of this complaint came colored as a domestic divorce action (with no children), executed in the Williamson County Chancery Court in the State of Tennessee.

Initials:

41. Bundled along with a completely unnecessary, strategically engineered, precisely timed, fraudulent federal bankruptcy filing, to cheat me out of my property interests, while alleviating my ex-wife of all financial responsibility for paying the significant "transitional alimony" as we had repeatedly agreed upon.

42. The Chancery Court usurped—or the bankruptcy court abdicated—jurisdiction[2] over the marital home, in violation of 28 U.S. Code § 1334(e)(1),[3] which states: "The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction—of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate."

43. The Williamson County Chancery Court was leveraged by the defendants to literally circumvent the Federal Rules of Bankruptcy Procedure and an outrageous number of Federal Bankruptcy Laws, for the primary purpose of unlawfully depriving my multiple legitimate property interests in our marital residence, along with my two lawful tenants legitimate leasehold property interests in our marital residence, located at 1986 Sunnyside Drive, Brentwood, TN 37027, without equal and due process of law, while denying me the "adequate protection" required by the Bankruptcy Court.

---

[2]  Case 1:23-cv-01097-PLM-RSK, ECF No. 1-34, PageID.1882 (See e.g., In re Palmer, 78 B.R. 402, 405-06 (Bankr. E.D.N.Y. 1987))

[3]  Case 1:23-cv-01097-PLM-RSK, ECF No. 1-34, PageID.1882

Initials:

44. To be clear, the United States Bankruptcy Court was required to provide me and my two lawful tenants/roommates with notice and a hearing in either Federal Bankruptcy Court or in the Federal District Court, at the very beginning of the bankruptcy filing.

45. I had possession of the marital residence; my ex-wife had moved out the year prior. The bankruptcy court was required by Rule 7001 of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. § 363 to provide both myself and my two lawful tenants/roommates with an "adverse proceeding" (or at the very least notice by which I could file an adverse proceeding) in order for the court to determine if the marital residence could be sold as part of the bankruptcy estate, in compliance with 11 U.S.C. § 363, as it was secretly and deceptively listed on my ex-wife's bankruptcy petition, by her bankruptcy counsel, defendant Ausbrooks.

46. Nothing that happened in either court was legal, lawful, honorable, done in good-faith, equal, impartial, ethical, unbiased, fair, for the purposes claimed.

## WILLIAMSON COUNTY CHANCERY COURT

47. This case addresses harm caused in **Docket #48419B**[4] filed on **6/4/2019,** by **Story, Abernathy, and Campbell, PLLP** in Williamson County Chancery Court, in the State of Tennessee. The Courthouse is located at 135 4th Avenue South, Franklin, TN 37064.

---

[4]  https://rico.jefffenton.com/evidence/2019-06-04_fenton-chancery-court-record-48419b.pdf  (Case  1:23-cv-01097-PLM-RSK, ECF No. 1-17, PageID.641 ~ ECF No. 1-26, PageID.1369)

Initials:

48. The Chancery Court Clerk & Master was **Attorney Elaine Beaty Beeler** (BPR# 016583), the presiding Chancellor was **Judge Michael Weimar Binkley** (BPR# 005930), while my opposing Counsel was **Attorney Virginia Lee Story** (BPR# 011700) and **Attorney Kathryn Lynn Yarbrough** (BPR# 032789) with **Story, Abernathy, and Campbell, PLLP.**

## U.S. BANKRUPTCY COURT – MIDDLE TENNESSEE

49. The actions taken in Williamson County Chancery Court, were directly tied to, in coordination with, and allegedly based upon the **Chapter-13** bankruptcy petition filed by my ex-wife, in **Case 3:19-bk-02693**[5] in **The United States Bankruptcy Court for the Middle District of Tennessee**. Located at 701 Broadway Ste 260, Nashville, TN 37203-3983.

50. The Federal Bankruptcy Court Judge presiding was **Judge Charles M. Walker** (BPR# 019884). The Chapter-13 Trustee responsible was **Attorney Henry Edward Hildebrand, III** (BPR# 032168). While Bankruptcy Counsel for my ex-wife was **Attorney Mary Elizabeth Maney Ausbrooks** (BPR# 018097) and **Attorney Alexander Sergey Koval** (BPR# 029541) both of **ROTHSCHILD & AUSBROOKS, PLLC.**

## COURT OF APPEALS OF TENNESSEE AT NASHVILLE

51. Upon appeal of the actions above in Chancery Court, I was the "Appellant" at the

---

[5]   https://rico.jefffenton.com/evidence/2019-04-26_fenton-bankrupcy-record-3-19-bk-02693.pdf   (Case  1:23-cv-01097-PLM-RSK, ECF No. 1-8, PageID.74 ~ ECF No. 1-11, PageID.478)

Initials:

**Court of Appeals of Tennessee at Nashville**, in **No. M2019-02059-COA-R3-CV**.[6]

52. The Court of Appeals dismissed[7] my appeal, without correction, assistance or cure. Refusing to act upon the clearly disclosed judicial and attorney misconduct, either in error, bias, collusion, and/or negligence.

53. The Order dismissing my appeal was approved by the following panel of Judges: **Judge Frank Goad Clement** (BPR# 006619), **Judge Andy Dwane Bennett** (BPR# 009894), and **Judge William Neal McBrayer** (BPR# 013879).

### SUPREME COURT OF TENNESSEE AT NASHVILLE

54. I attempted to escalate my appeal to the **Supreme Court of Tennessee at Nashville**, in **No. M2019-02059-SC-Rl1-CV**[8], but my application for permission to appeal was denied.[9]

55. The United States Bankruptcy Court for the Middle District of Tennessee, was **not** allowed by the Federal Rules of Bankruptcy Procedure (Rule 7001) and related Bankruptcy Laws (11 U.S.C. § 362, § 363, § 541, § 542, § 1204, § 1205, § 1206, § 1207, § 1208) to force the sale of my home.

---

[6] https://rico.jefffenton.com/evidence/2021-01-19_fenton-seeking-help-tnsc-coa-aoc-bpr-fbi-ustp.pdf (Case 1:23-cv-01097-PLM-RSK, ECF No. 1-29, PageID.1684-1691)

[7] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-29, PageID.1693

[8] https://rico.jefffenton.com/evidence/2021-01-19_fenton-motion-to-escalate-to-tnsc.pdf (Case 1:23-cv-01097-PLM-RSK, ECF No. 1-27, PageID.1370 ~ ECF No. 1-29, PageID.1683)

[9] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-29, PageID.1692

Initials:

56. This was the strategic purpose for the Chancery Court in this conspiracy. The Chancery Court was literally used to circumvent the Federal Rules of Bankrupcy Procedure and Federal Bankrupcy Laws, to specifically deprive my property interests, though the State Courts were forbidden from exercising jurisdiction over property in a federal bankruptcy estate, especially when that property was core to the bankruptcy estate, as it was, and when the bankruptcy was filed 39-days before ANY action was filed in the Chancery Court.

57. The motion to sell the marital residence was "core" to the bankruptcy, which merely reinforces the fact that a Federal Court was required to hear the property deprivation to provide Plaintiff and his two lawful tenants/roommates with "adequate protection" throughout the bankruptcy.

58. In addition to that, the Bankruptcy Action was on the face fraudulent, with false details about the couple's property interests in the Marital Residence. (Any action planted squarely inside a fraudulent action in another court, especially for the express purpose of intentionally deceiving both courts while circumventing the rights and protections required to be obeyed in that court prior to the deprivation of the property, is fraud sowed upon fraud and can beget nothing other than fraud compounded.

59. In addition to that, the Motion to Sell the Marital Residence written by defendant Yarbrough and argued in Chancery Court on 8/1/2019 by defendant Story, was highly abusive (harassing and abuse by process) and obscenely fraudulent.

60. There are so many violations of the court's rules of professional conduct, the Federal

Initials:

Rules of Civil Procedure, and the rule of law, the best way that I know to try to describe this is with an extremely heavy markup I did of Yarbrough and Story's motion. I don't do this to be offensive at all, I do this because due to my disabilities, I am not capable of articulating the extent of the fraudulent bad faith claims and actions taken, without using hundreds of pages or losing the attention of my audience, so I have resorted to trying to SHOW what I literally don't have the education, knowledge, legal training, and language to communicate in a non-offensive way which is believable without showing it. I beg the court to please hear this testimony, I call it "testimony in evidence", and absent showing my testimony using graphic arts inline, I know no other way in a static inline format such as this complaint.

61. As long as I could bring our mortgage payments current and keep them current, the Bankrupcy Trustee would have been forced to remove our marital residence from .

62. I had no idea that a single mortgage payment was missed or late.

63. I had a verbal contract with my ex-wife whereby she promised to pay our mortgage payments (and had prior to the defendants in this case) until a divorce settlement or decree, or until further notice, while I was never notified.

64. My ex-wife had changed all the financial account credentials, blocking me from having any direct access to our mortgages. She changed her email to one which she alone had access to. She changed the mailing address with our mortgage companies from our marital residence to her apartment which she rented after she moved out.

Initials:

65. Short of the Bankruptcy Attorney and the Bankruptcy Trustee obeying the Federal Rules of Bankruptcy Procedure and Federal Bankruptcy Laws, or my ex-wife notifying me, I had no means of learning about the defaults, and was unconstitutionally deprived of any opportunity to save my property interests or to at the very least attempt to mitigate my losses prior to the forced deprivation of my property interests.

66. None of the aforementioned parties ever notified me, which I have confirmation from the DOJ/USTP who I requested do a bankruptcy fraud investigation.

67. After a pre-trial conference in the back of the Chancery Court on 8/1/2019, I told my counsel that I could borrow money from my mother to bring our mortgages current and to keep them current (roughly $8k, less than I collectively spent on counsel for that day), provided I could continue living in my home.

68. As I asked my counsel if that might be possible, defendant Story overheard me and stated, **"No. It's already too far along in the bankruptcy."**

69. I was strategically deprived of the lawful notice and adequate protection required by the bankruptcy court.

70. Both my 5th and 14th Amendment rights as a United States Citizen were violated.

71. Furthermore, the Chancery Court placed a restraining order against me specifically forbidding me from contacting the bankruptcy court or our mortgage companies (under the guise that I somehow wished some harm upon my ex-wife's finances).

Initials:

72. According to Wikipedia[10]: "Williamson County[11] is ranked as the wealthiest county in Tennessee, as well as among the wealthiest counties in the country. In 2006 it was the 17th-wealthiest county in the country according to the U.S. Census Bureau, but the Council for Community and Economic Research ranked Williamson County[12] as America's wealthiest county (1st) when the local cost of living was factored into the equation with median household income. In 2010, Williamson County is listed 17th on the Forbes list of the 25 wealthiest counties in America."

## BRENTWOOD MARITAL RESIDENCE WORTH $900K[13] TODAY
## (ONLY OWED $300K[14] ON MORTGAGES)

73. My wife and I owned a beautiful home,[15] in coveted Brentwood Tennessee, which I had invested everything that I had into (including all my premarital retirement funds along with proceeds from my own premarital home).

74. Further complimented by nearly a decade of my "sweat equity", including thousands of hours of labor, making and supervising roughly $200k of improvements[16] in the property.

75. We purchased the home on 4/29/2011 for $350k.[17]

---

[10]   https://en.m.wikipedia.org/wiki/Williamson_County,_Tennessee

[11]   https://williamsoncounty-tn.gov/

[12]   Case 1:23-cv-01097-PLM-RSK, ECF No. 1-12, PageID.497-500

[13]   Case 1:23-cv-01097-PLM-RSK, ECF No. 1-12, PageID.485

[14]   Case 1:23-cv-01097-PLM-RSK, ECF No. 1-12, PageID.505; ECF No.1-13, PageID.567

[15]   Case 1:23-cv-01097-PLM-RSK, ECF No. 1-12, PageID.485, 494-512

[16]   Case 1:23-cv-01097-PLM-RSK, ECF No. 1-12, PageID.508-511

[17]   Case 1:23-cv-01097-PLM-RSK, ECF No. 1-27, PageID.1416-1431

Initials:

76. Together we had roughly $550k invested into the home, while improvements to the property were also my primary work product for much of the time between 2011-2018, during which my wife built her career in architecture.



77. The home is currently worth $900,000[18] and our sole asset and retirement investment,

---

[18] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-12, PageID.485, PageID.494-510

Initials:

while the Chancery Court forced the liquidation of the property for just $324,360.

78. On information and belief, suspiciously, exactly what was due on the mortgages, plus the auctioning fees and closing costs, without one dollar to either myself or Ms. Fenton, for their life's savings, and the sum total of both of their premarital retirement investments.

79. The very first action, the foundation for every crime, unnecessary and unconscionable loss to follow, within this complaint, was a secretly executed, falsified, fraudulent Federal Bankruptcy petition (Case 3:19-bk-02693[19]), executed by bankruptcy specialist Mary Elizabeth Maney Ausbrooks, through her Nashville law firm, "ROTHSCHILD & AUSBROOKS, PLLC", allegedly on behalf of Plaintiff's ex-wife. While I was strategically deprived of lawful notice[20] about this bankruptcy action, which my home was secretly included in, *by special request.*

80. The truth is, that my wife, never needed to file bankruptcy,[21] and actually had a terribly difficult time "qualifying",[22] because she was a highly successful professional with a $116k annual compensation package,[23] before the counsel within this complaint got involved.

81. Entered on 04/26/19 at 13:29:16, on Appendix D, Part 9, "**Nonstandard Plan**

---

[19]   Case 1:23-cv-01097-PLM-RSK, ECF No. 1-8, PageID.74 ~ ECF No. 1-11, PageID.478

[20]   Case 1:23-cv-01097-PLM-RSK, ECF No. 1-13, PageID.565-566

[21]   Case 1:23-cv-01097-PLM-RSK, ECF No. 1-13, PageID.569-576

[22]   Case 1:23-cv-01097-PLM-RSK, ECF No. 1-8, PageID.74 ~ ECF No. 1-11, PageID.478

[23]   Case 1:23-cv-01097-PLM-RSK, ECF No. 1-27, PageID.1444

Initials:

**Provisions**", the following special request was included by defendant Ausbrooks[24]: *"Debtor moves for permission to sell real property located at 1986 Sunny Side Drive Brentwood, TN 37027 Williamson County, within 180 days of confirmation with no payments being made in the interim. The liens of Bank of America, NA and BanCorp South shall be satisfied in full and **all remaining proceeds after Debtor's homestead exemption and costs of sale shall be paid to the Chapter 13 Trustee for the benefit of the estate."***

82. To be clear, this language asked for permission to sell real property, owned by Ms. Fenton **and** one other equally deeded party, me, as "Tenancy by the Entirety". Which can be easily verified by checking the property deed and/or the property tax records, where I am clearly named, the same being the legal responsibilities of both defendants Ausbrooks and Hildebrand.

83. Examining this request on the face, imploring no more than common sense and the most fundamental knowledge about natural and constitutional rights in the United States of America, this request does not appear that it could have reasonably been made in "good faith" by defendant Ausbrooks, for at least the following two reasons.

> ➤ First, this "special request" sought to sell the property owned by another. (While providing them nothing in return.)

---

[24] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-8, PageID.144

Initials:

➢ Secondly, this language promised **all** the proceeds of the sale to benefit only the party making this request (and her creditors). Without any language indicating if or how the proposed sale could be of any benefit to the other equally deeded and mutually interested property owner.

84. That wreaked of foul-play straight off the face, yet defendant Ausbrooks filed it, while personally and professional certifying[25] that her request was well grounded in law and made in good-faith. Without bringing any of the obvious concerns and potential conflicts of interest to light. Without performing any due diligence to protect the property interests of Plaintiff and to provide both Plaintiff and his two lawful tenants/roommates with adequate protection, as is required by the bankruptcy code.

85. Defendant Ausbrooks was well aware that Ms. Fenton was still married. She also knew that the State of Tennessee is a "Deed of Trust" state, not a mortgage state. Meaning that the name on a mortgage does not define who owns the property or holds legal title to it, for that the property's "Deed of Trust" is the sole instrument.

86. Furthermore, real property which is owned by husband and wife in the State of Tennessee, is by default held as "tenancy by entirety"[26]. Even if I wasn't named on the deed of

---

[25] FRBP Rule 9011 & 11 U.S.C. § 707

[26] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-13, PageID.541-542

Initials:

trust (which I was), the property still can't be sold with a clear title without me signing a Quit Claim Deed or some instrument conveying or forfeiting my "marital interest" in the property. While if that was to be compelled by **any** court, that could not be lawfully or ethically done without due process.

87. I was deprived of equal and due process of law in the Chancery Court.

88. Judge Michael W. Binkley was bias and discriminated against me.

89. Judge Michael W. Binkley and Attorney Virginia Lee Story have been repeatedly exposed in the Nashville newspapers for being "vacationing" and "partying" friends, though Judge Binkley has insisted this doesn't present a conflict of interest for litigants, that is a lie.

90. Many people have been caused substantial harm by the corruption of Judge Michael W. Binkley.

91. Judge Michael W. Binkley has a reputation for favoring those attorneys who work for the law firm which he originally founded prior to becoming a judge, along with Attorney Virginia Lee Story who Judge Binkley has a sordid past with.

92. There is a Facebook page setup by a litigant wounded long before I even knew his name: https://www.facebook.com/judgebinkley

93. The title of this Facebook page is **"Investigate Michael W. Binkley Circuit Court Judge"**.

Initials:

94. I never received notification that a single one of our mortgage payments had been missed.

95. Furthermore, it is unreasonable that Attorney Ausbrooks, Attorney Henry Edward Hildebrand, III, the Bankruptcy Court, or Attorney Virginia Lee Story could proport to know or determine what investment or ownership interest I had in the marital residence, based upon the testimony of any one party, other than myself or a judge who had performed equal and due process, heard both sides, and equitably divided out our interests. None of which was done.

96. Prior to a final decree of divorce, marital interests in real property or debts can not be exactly divided between spouses or definitively determined, without complying with the Federal Rules of Bankruptcy Procedure and multiple Federal Bankruptcy Laws which required that both I and my Tenants be provided with lawful notice and hearings in either Federal District Court or in the Federal Bankruptcy Court, while providing adequate protection to both my multiple property interests as well as the tenants lawful leasehold interests, until an adversarial proceeding or other equal and due process has taken place.

97. Choosing not to notify me[27] or my two lawful tenants, while defendant Ausbrooks had requested that **all** our lawful property interests be deprived, the property liquidated, and the funds

---

[27]  Case 1:23-cv-01097-PLM-RSK, ECF No. 1-13, PageID.565-566

Initials:

disbursed, entirely to the benefit of others, wasn't legal or ethical.

98. 11 U.S.C. § 707(4)(C)[28] The signature of an attorney on a petition, pleading, or written motion shall constitute a certification that the attorney has—

> ➢ (i) performed a reasonable investigation into the circumstances that gave rise to the petition, pleading, or written motion; and

> ➢ (ii) determined that the petition, pleading, or written motion—

> ➢ (I) is well grounded in fact; and

> ➢ (II) is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law and does not constitute an abuse under paragraph (1).

99. The actions between the State and Federal Courts were conducted under the pretense of "legal" actions, under the guise of a "domestic" civil divorce. Except that none of the actions taken were actually "legal", in accordance with the rules of law.

100. Not state or federal laws, nor either of their constitutions.

101. Nor was any interest or care shown about any real merit involving our marriage or

---

[28] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-34, PageID.1894

Initials:

subsequent dissolution of that marriage, through a divorce.

102.     In fact, discovery for our divorce was strategically prevented by the Chancery Court, and defendants Binkley, Beeler, and Story, from ever getting started.

103.     Once defendants seized possession of the marital residence, they fraudulently terminated all litigation under the guise of "default" judgments, claiming that I chose to relocate to the State of Michigan and had no interest in participating further or defending myself in Chancery Court docket #48419B.

104.     That is absurdly false. I've fought day and night for four years straight, filing well over a thousand pages of sworn pleadings combined with clear and convincing evidence between the Williamson County Chancery Court[29] and the Tennessee Court of Appeals at Nashville.[30]

105.     None of which is remotely reasonable given the 250 +/- pages of sworn testimony[31] which I had filed in the Chancery Court on 8/29/2019, which included an ad hoc divorce answer and counter complaint, as well as an answer/rebuttal of the egregiously false claims in the "Ex Parte Order of Protection".

---

[29]   https://rico.jefffenton.com/evidence/2019-06-04_fenton-chancery-court-record-48419b.pdf   (Case   1:23-cv-01097-PLM-RSK, ECF No. 1-17, PageID.641 ~ ECF No. 1-26, PageID.1369)

[30]   Case 1:23-cv-01097-PLM-RSK, ECF No. 1-27, PageID.1370 ~ ECF No. 1-28, PageID.1664
       Case 1:23-cv-01097-PLM-RSK, ECF No. 1-29, PageID.1665 ~ ECF No. 1-30, PageID.1793

[31]   Case 1:23-cv-01097-PLM-RSK, ECF No. 1-18, PageID.766 ~ ECF No. 1-22, PageID.1038

Initials:

106.    Defendant Story further accused me of "Dissipating Marital Assets" while demanding that I be forcefully removed from my home with only a five-day notice over a holiday weekend, while demanding that I be removed by the Sherriff's Office.

107.    Defendant Story insisted that I not even be allowed to take any of my personal property with me, not even my bed.

108.    At 49 years old, after literally 25-years of being a hard working tax paying, peaceful Tennessee resident, without so much as a single traffic citation during all that time, they treated me like a hardcore felon while refusing to even tell me why or by rule, law, or legal code they could justify their actions in open court.

109.    Defendants Story and Binkley only allowed me to take with me one carload of clothes, toiletries, and my medications with him. **That's it.**

110.    All under false claims that I was "dissipating marital assets", which wasn't even physically possible in any meaningful capacity, because defendant Story's own complaint for divorce stated on page 2, *"Plaintiff would show that the parties have no assets other than personal property which has been divided with the exception of a few items. Husband and Wife have lived separately since April 2018."*

---

**IV.**

Plaintiff would show that the parties have no assets other than personal property which has been

divided with the exception of a few items.  Husband and Wife have lived separately since April 2018.

~~Husband refuses to work and has not paid the mortgage payment or assisted with the mortgage payment~~

~~or the bills of the home.  Wife has spoken to Husband and made every attempt to have the house listed~~

**Wife's Complaint for Divorce, Page 2, Section IV**
**Case 1:23-cv-01097-PLM-RSK, ECF 1-17, PageID.648**

---

Initials:

111.Every attempt by defendant Story to convert Plaintiff's personal property back into marital property, without bringing Ms. Fenton's personal property back to the marital residence, was in bad-faith, while the proceeds from the proposed sale clearly stated on the Bankruptcy petition, as follows:

112.    *"The liens of Bank of America, NA and BanCorp South shall be satisfied in full and **all remaining proceeds after Debtor's homestead exemption and costs of sale shall be paid to the Chapter 13 Trustee for the benefit of the estate."[32]***

113.    Absolutely nothing was to benefit me.

114.    They all ignored both my critical and essential property interests, my right and means of earning a living (rental income at that time), and my only hope of ever regaining the standard of living which I built by myself prior to the marriage.

115.    Let alone the standard of living which we enjoyed throughout our 13-year marriage, or any chance of ever being able to retire.

116.    My property was taken and liquidated, while my life was discarded like trash by the defendants.

---

[32]    Case 1:23-cv-01097-PLM-RSK, ECF No. 1-8, PageID.144

Initials:

# RELENTLESS SEEKING A CURE TO GET FREE

| | |
|---|---|
| 2019-10-21 | Final Decree of Divorce & OP by "Default" (Fraudulent Order of Protection) |
| 2019-10-21 | Judge Binkley issued an "Order of Protection" against me from 10/21/2019 – 10/21/2020 |
| 2019-10-29 | Closing: 1986 Sunnyside Drive, Brentwood, TN 37027 |
| 2019-11-20 | Tennessee Court of Appeals – Middle Division (Nashville) Divorce Appeal Filed |
| 2019-12-06 | Fawn's Bankruptcy Converted from Chapter-13 to Chapter-7 (Case 3:19-bk-02693) Filed on 12/5 |
| 2020-02-10 | DOJ Disability Rights – No Legal or Financial Assistance |
| 2020-04-15 | Debtor Discharged (Disposition: Standard Discharge) |
| 2020-06-15 | Tennessee Court of Appeals (Appeal Filed) |
| 2020-07-02 | John C McLemore – Chapter 7 Bankruptcy Trustee (Recorded Phone Call) |
| 2020-09-24 | Order of Protection 5-Year Extension - NO Hearing, NO Motion, NO Notice |
| 2020-11-19 | Tennessee Court of Appeals (Appeal Dismissed) |
| 2021-01-04 | FBI Call Center – Not a Federal Matter |
| 2021-01-19 | Motion to Escalate to the Tennessee Supreme Court Filed |
| 2021-04-07 | Tennessee Supreme Court – Application Denied |
| 2021-04-09 | Tennessee Court of Appeals – Mandate Issued |
| 2021-12-02 | FBI Special Agent Mark Shafer (agent named on Corrupt Nashville Judge Casey Moreland's criminal complaint) |
| 2021-12-16 | FBI Special Agent Mark Shafer (Emailed Evidence on Many Dates, through 2023) |
| 2022-01-17 | Emailed Paul Randolph[33] – Acting United States Trustee for Region 8, over the federal judicial districts of Kentucky and Tennessee (Requested Bankruptcy Fraud Investigation) |
| 2022-01-18 | Reply Confirmation from Paul Randolph[34] USTP |
| 2022-03-10 | Megan Seliber – USTP Trial Attorney (Recorded Phone Call) |
| 2022-03-15 | Megan Seliber[35] – USTP Trial Attorney (Confirmed BK Court Failed to Provide Notice) |
| 2023-05-10 | Board of Professional Responsibility – Sandy Garrett Chief Disciplinary Counsel Refusing to File Complaint against Story (Again) |

---

[33] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-13, PageID.563

[34] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-13, PageID.564

[35] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-13, PageID.565-566

Initials:

| 2023-12-13 | Williamson County Sheriff's Office – Complaint #2023-35037, filed with Deputy Brady Cartwright. Spoke to Captain David Beard on 10/15/2023 (615) 790-5554 (Ext. 3227) |
|---|---|

117.    Studying the Court records from the Chancery Court side, it was next to impossible for me to discover what laws were broken in this massive fraud, that allowed them to steal his home. Finally, after three years of studying law, with the final year being spent almost exclusively studying the Federal Bankruptcy Code, Plaintiff finally discovered the heart of the fraud upon the court they had executed to steal his home.

118.    Unlike looking from the Chancery Court side, where the question was "what laws did they break", once I understood the Bankruptcy code, when examining the Federal Rules of Bankruptcy Procedure, along with the related Title-28, Title-11, and Title-18 laws, the question changed radically to **"what laws didn't they break?"** Everything done between the two courts was a flagrant violation of the Federal Rules of Bankruptcy Procedure and subsequent Federal Bankruptcy laws, not by his ex-wife either, **by the attorneys, trustee, and judges in both courts!**

## IRREFUTABLE PROOF OF A CRIMINAL CONSPIRACY
## SPANNING STATE AND FEDERAL COURTS:

119.    No matter what any defendant named in this complaint claims, **the evidence of the conspiracy against rights and property, under the color of law, office, and official right,** by bad actors working in **both State and Federal Courts concurrently**, can be definitively proven beyond any "reasonable" margin of "error", by applying the F.R.B.P., Title-28, Title-11, and Title-18 LAW,[36] to eight

---

[36]    Case 1:23-cv-01097-PLM-RSK, ECF No. 1-34, PageID.1874-1924

Initials:

facts which are irrefutably encapsulated in the Court Records:

(1) The date the **bankruptcy**[37] was filed: **4/26/2019.**

(2) The date the **divorce**[38] was filed: **6/04/2019**.

(3) Plaintiff was a titled owner of the marital residence as **"tenancy by the entirety"**. Named on both the property deed[39] and tax records.[40]

(4) Plaintiff was **never provided any notice or hearing**[41] by the bankruptcy counsel, the bankruptcy trustee, or by the bankruptcy court, as required in the Federal Rules of Bankruptcy Procedure Rule-7001.[42] As a result, these laws[43] were violated, broken, or not obeyed: 11

---

[37] https://rico.jefffenton.com/evidence/2019-04-26_wifes-ch13-petition-3-19-bk-02693.pdf (Case 1:23-cv-01097-PLM-RSK, ECF No. 1-8, PageID.74)
[38] https://rico.jefffenton.com/evidence/2019-06-04_wifes-complaint-for-divorce-48419b.pdf (Case 1:23-cv-01097-PLM-RSK, ECF No. 1-17, PageID.651)
[39] Property Deed
[40] Tax Records
[41] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-34, PageID.1881
[42] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-34, PageID.1898
[43] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-34, PageID.1874-1924

Initials:

U.S.C. § 363[44], 541[45], 542[46], 707[47], 1203[48], 1204[49], 1205[50], 1206[51], 1207[52], 1208[53], 18 U.S.C. § 152[54], 153[55], 154[56], 157[57], 158[58], 241[59], 242[60], 373[61], 401[62], 402[63], 1951[64], 28 U.S.C. § 1334[65], 1927[66]

(5) The bankruptcy only reaped **$44k**[67] worth of alleged **"bankruptcy relief"** for Ms. Fenton in the end, as shown on the "Chapter 7 Trustee's Final Account and Distribution Report

---

[44] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-34, PageID.1903-1906

[45] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-34, PageID.1908-1912

[46] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-34, PageID.1913

[47] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-34, PageID.1914

[48] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-34, PageID.1915

[49] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-34, PageID.1915

[50] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-34, PageID.1915-1916

[51] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-34, PageID.1916

[52] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-34, PageID.1916

[53] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-34, PageID.1916

[54] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-34, PageID.1917

[55] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-34, PageID.1918

[56] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-34, PageID.1918

[57] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-34, PageID.1919-1920

[58] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-34, PageID.1920

[59] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-34, PageID.1922

[60] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-34, PageID.1922

[61] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-34, PageID.1921

[62] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-34, PageID.1921

[63] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-34, PageID.1921

[64] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-34, PageID.1923

[65] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-34, PageID.1882

[66] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-34, PageID.1893

[67] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-13, PageID.569-576 (After subtracting out defendant Story's outstanding fees, because without this scam there would be no need for defendant Story or her exorbitant fees.)

Initials:

(TDR)".[68] It probably cost her twice that in combined legal fees for the action. While forfeiting $250k[69] in cash equity, that the couple had invested into their marital residence, as of the day of the auction. Plus another $400k[70] of appreciation has been lost since.

(6) 11 U.S.C. § 363(h): "Notwithstanding subsection (f) of this section, **the trustee may sell both the estate's interest,** under subsection (b) or (c) of this section, **and the interest of any co-owner in property** in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or **tenant by the entirety, only if**— (3) **the benefit to the estate** of a sale of such property free of the interests of co-owners **outweighs the detriment, if any, to such co-owners;"**

   a. The bankruptcy code measures what is a "benefit to the (bankruptcy) estate", in how much **unsecured debt** a sale could pay off, above and beyond the mortgage notes on that property.

   b. The mortgage notes are secured by the property interest, they can stand alone and balance each other out, and need not be involved in bankruptcy at all. The only reason to compel a forced sale of the property (in this circumstance), would be to leverage

---

[68] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-34, PageID.1883 (BK Case 3:19-bk-02693, Doc 136, Filed 1/26/2021, Page 1 of 8)

[69] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-12, PageID.501-511

[70] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-12, PageID.485

Initials:

the debtor's equity in property to payoff **other unsecured debts**, after the mortgages on the property were completely satisfied.

c. The forced sale of the marital residence was of absolutely **"no benefit to the bankruptcy estate."** The home auctioned for exactly the amounts owed on the two mortgages, while this came of absolutely no surprise to the defendants, it was by design. The sale proceeds did not payoff one dollar of unsecured debts, nor put a dollar in either Plaintiff's pocket or Ms. Fenton's.

d. Even if Plaintiff and Ms. Fenton had another $100k-$200k of equity in the property, it would be almost impossible for the forced sale to **"outweigh the detriment"** to Plaintiff. Plaintiff needed this property to survive and not be rendered broke, destitute, and homeless, while representing a million-dollar retirement nest-egg (investment) for Plaintiff. As long as Plaintiff could obtain the funds to pay the mortgages on time and keep them current, there is no lawful and ethical justification by which to deprive him of his opportunity and right to do so.

(7) The Chancery Court usurped—or the bankruptcy court abdicated—jurisdiction[71] over the marital home, in violation of 28 U.S. Code § 1334(e)(1),[72] which states: "The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction—of

---

[71] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-34, PageID.1882 (See e.g., In re Palmer, 78 B.R. 402, 405-06 (Bankr. E.D.N.Y. 1987))

[72] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-34, PageID.1882

Initials:

all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate."

(8) It is unreasonable that the Bankruptcy Court would have waited for any action in Chancery Court to deprive Plaintiff of his property interests and rights.

   a. There was no action filed in the Chancery Court at the creation of the Bankruptcy Estate. The bankruptcy court was required to immediately notify all parties with a legitimate property interest in the marital residence and provide hearings in federal court, to determine their property interests, and whether or not the marital residence could remain in the Bankruptcy Estate, or needed to be removed as a "burdensome asset", prior to the 341 meeting of the creditors.

   b. The bankruptcy was filed 39-days before any action was filed in the Chancery Court, and 97-days before Plaintiff first stood before defendant Binkley in the Chancery Court. It is wholly unreasonable that the bankruptcy court awaited any predetermined deprivation of property in the Chancery Court, rather than proceeding in proper form in the bankruptcy court, in compliance with bankruptcy rules and federal laws.

   c. Since the bankruptcy court had exclusive jurisdiction, even if the time and care was taken for equal and due process in the Chancery Court (which it was not), the Bankruptcy Judge and Trustee would have known the action was improper and without lawful jurisdiction. They should have performed due diligence.

## SELF-TEACHING HIMSELF THE LAW

Initials:

120.     Plaintiff was told that Attorney John Brandon Coke, the General Counsel for the Tennessee Supreme Court, Administrative Offices of the Courts, was the state court's top ADA authority at the time. During a recorded phone call[73] on 2/13/2020 with defendant Coke, at the 16:01 time marker during that call, Mr. Coke stated: *"...if you are going to be self-represented—and I know it's difficult because you can't afford an attorney... that's just how it is... you have to self-teach yourself. You've gotta go online. Read the law. That's all I can tell you here."*

121.     During a recorded phone call on 7/2/2020 with Chapter-7 Bankruptcy Trustee John C. McLemore[74], Plaintiff reported the scam between the courts, that somehow, Plaintiff was cheated out of his property interests. While asking Trustee McLemore what processes or procedures on the bankruptcy side didn't take place correctly, as well as who was responsible for those tasks? The canned response by nearly everyone was "I can't be your attorney." Which wasn't what Plaintiff sought. Plaintiff sought information, not representation. He received very minimal information with the calls he made seeking help, but slowly and surely, he learned the sections of code which he literally devoted three-years to studying, almost all day every day, before he could unravel the layers of fraud committed by both State and Federal Courts, to intentionally obfuscate the facts between their separate court records.

122.     At the 41:24 marker in the phone call with Attorney McLemore, he stated, *"They just completely walk completely all over your rights, in the state of Tennessee, or perhaps under the Bankruptcy Code - That's where your problem is, but I can't answer your question because I don't have enough*

---

[73]   https://www.rico.jefffenton.com/evidence/2020-02-13_tnsc-aoc-ada-gc-john-code-phone-call.mp3

[74]   https://www.rico.jefffenton.com/evidence/2020-07-02_ch7-bk-trustee-john-mclemore-phone-call.mp3

Initials:

*information. I'm sorry."*

123.    At 41:45 Plaintiff asked, *"Is there some place in the code that you would just point me to, where I could start reading myself to try to understand? Because again, I don't have any money to hire an attorney."*

124.    At 41:58 Attorney McLemore responded, *"You are in an area of the law that is as difficult as tax. But write this down, **11 United States Code 363**. And have a good nap because it's a long statute and you probably will not understand a great deal of it. That's where you look."*

125.    It needs to be noted that in the statement above by the Chapter-7 Bankruptcy Trustee, John C. McLemore, where he stated, ***"11 United States Code 363"***, Plaintiff completely missed the ***"363"*** part of his sentence, at the time. (It was only upon transcribing part of that phone call for this complaint that Plaintiff realized Mr. McLemore had provided him with such precise information.)

126.    Plaintiff's overall "takeaway" from this conversation at the time, was that Mr. McLemore had confirmed his suspicion that *something improper* had taken place, but Plaintiff still did not understand where, how, or by whom. The idea that the bankruptcy code is extremely complicated stuck with Plaintiff, as well as Mr. McLemore's suggestion to read *"11 United States Code"*. After spending over 30 minutes on the call with Mr. McLemore, as he looked through the busy and complicated docket for the case, the overall tone which stuck with the Plaintiff at the time, was Mr. McLemore's statement, *"I can't answer your question because I don't have enough information. I'm sorry."*

127.    Some of Trustee McLemore's statements about "notice" were also not understood by Plaintiff at that time. Throughout much of 2020-2021, Plaintiff sought help through the Tennessee Court of Appeals, the Tennessee Supreme Court, as well as the Tennessee Supreme Court's Admin Offices and Board of Professional Responsibility (BPR). Each attempt absolutely consumed and overwhelmed

Initials:

Plaintiff's life, as he tried to learn how to communicate with them, their rules and procedures, while struggling to articulate a series of crimes which he still didn't even understand how to put language or explain. While most actions were buried under the most absurd domestic "dog and pony show" in the Chancery Court. Which literally served as nothing more than a strategic distraction, but one which Plaintiff spent all of his energy fighting against for the first few years. Until he finally learned enough to see past it. That none of it mattered. **That it was all fraud!**

128.    Plaintiff later filed complaints for Bankruptcy Fraud and Racketeering with both the FBI[75] and the DOJ/USTP.[76] Plaintiff's third year of research was spent studying the bankruptcy codes and seeking a federal cure, since the State has ardently refused to help Plaintiff in any way. Month after month, year after year, as Plaintiff reached out for help and studied the law (as advised by Admin Office General Counsel John Brandon Coke) he slowly learned, as more pieces of the puzzle began to come together.

129.    During the 7/2/2020 phone call with Bankruptcy Trustee John McLemore, Plaintiff was upset that Attorney McLemore hadn't provided him with any actionable information. However, now upon reflection, Trustee McLemore provided quite a bit, but unfortunately it wasn't understood by Plaintiff at that time. While like everyone else, Mr. McLemore refused to take responsibility or invest the energy to provide Plaintiff with a cure within his reach.

130.    Looking back with fresh eyes: Trustee John McLemore stated, *"You are in an area of the law that is as difficult as tax. But write this down, 11 **United States Code 363**. And have a good nap because*

---

[75]  Case 1:23-cv-01097-PLM-RSK, ECF No. 1-29, PageID.1704-1707; ECF No. 1-30, PageID.1771-1792
[76]  Case 1:23-cv-01097-PLM-RSK, ECF No. 1-30, PageID.1758-1761

Initials:

*it's a long statute and you probably will not understand a great deal of it. That's where you look."*

131.    They couldn't legally force the sale of the marital residence. It was of <u>zero</u> <u>benefit</u> to the

"<u>bankruptcy</u> <u>estate</u>". The Trustee would have been ordered to remove it as a "<u>burdensome</u> <u>asset</u>".

---

**Adversary Proceeding in Federal District or Bankrupcy Court**

> The Trustee was <u>required</u> to provide Plaintiff and his two tenants/roommates with <u>notices</u> & <u>hearings</u> in <u>federal court</u>. Plaintiff had the following valid property interests: legal title, ownership, controlling, possession/enjoyment/use, beneficial, equitable, exclusion, investment, income, future. Plaintiff's tenants had secure one-year leasehold interests.

**Rule 7001. Scope of Rules of Part VII**

An adversary proceeding is governed by the rules of this Part VII. The following are adversary proceedings:

> (1) a proceeding to recover money or property, other than a proceeding to compel the debtor to deliver property to the trustee, or a proceeding under §554(b) or §725 of the Code, Rule 2017, or Rule 6002;
> (2) a proceeding to determine the validity, priority, or extent of a lien or other interest in property, but not a proceeding under Rule 3012 or Rule 4003(d);
> (3) a proceeding to obtain approval under §363(h) for the sale of both the interest of the estate and of a co-owner in property;

(4) a proceeding to object to or revoke a discharge, other than an objection to discharge under §§727(a)(8),[1] (a)(9), or 1328(f);

(5) a proceeding to revoke an order of confirmation of a chapter 11, chapter 12, or chapter 13 plan;

(6) a proceeding to determine the dischargeability of a debt;

(7) a proceeding to obtain an injunction or other equitable relief, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for the relief;

(8) a proceeding to subordinate any allowed claim or interest, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for subordination;

(9) a proceeding to obtain a declaratory judgment relating to any of the foregoing; or

(10) a proceeding to determine a claim or cause of action removed under 28 U.S.C. §1452.

**§363. Use, sale, or lease of property**    **skipped ➞**

> (b)(1) The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate, trustee may not sell or lease personally identifiable information to any person unless—

(e) Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest. **(skipped)**

(f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest; **(failed)**
> (2) such entity consents; **(failed)**

(g) Notwithstanding subsection (f) of this section, the trustee may sell property under subsection (b) or (c) of this section free and clear of any vested or contingent right in the nature of dower or curtesy.

(h) Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if— **(failed)**

> (1) partition in kind of such property among the estate and such co-owners is impracticable;
> (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
> (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and **(failed)**

---

Initials: *A.C*

## FACTS BASED UPON THE REAL MERITS OF OUR DIVORCE
## (NEVER MENTIONED IN EITHER OF THE CASES OUTLINED HEREIN)

132.    Contrary to traditional roles, Ms. Fenton was voluntarily the primary breadwinner[77] throughout our 13-year marriage.

133.    Ms. Fenton is a MIT educated, licensed Tennessee Professional Architect[78] (ID Number: #102945), who is a "LEED Accredited Professional", certified by the U.S. Green Building Council, as well as a "Certified Document Technologist" by the Construction Specifications Institute. Ms. Fenton also has a decade of leadership experience in the ACE Mentor Program, teaching high school students about careers in Architecture, Construction, and Engineering.

134.    Prior to this action, my ex-wife had agreed that she would pay me "transitional alimony" in the amount of $1,750 per month, for a duration of 6-years.

135.    This amount was calculated at 22.5% of my ex-wife's gross income, for a term equal to half the duration of our marriage, as we were advised was "fair" with all factors included.

136.    This came at the advice of Ms. Sandy Arons, MBA (Certified Divorce Financial Analyst, Certified Financial Divorce Practitioner, Certified Financial Divorce Specialist, Financial

---

[77]    Case 1:23-cv-01097-PLM-RSK, ECF No. 1-27, PageID.1444
[78]    Case 1:23-cv-01097-PLM-RSK, ECF No. 1-27, PageID.1444

Initials:

Counselor and Mediator) whom I hired on July 12th, 2018.







Initials:

137.    In an email[79] to me and Ms. Arons on 8/30/2018, Ms. Fenton stated in part, **"Our office lease is up in March 2020, and Ken** (the owner of her business) **really wants to retire,** and so there's no telling what my job will be after that."



138.    The defendants in this case, waited until Ms. Fenton's boss was about to retire, then they strategically timed the intentional non-payment of our mortgage payments without notice, followed by the fraudulent bankruptcy filing, while they intentionally falsified her bankruptcy petition, by lying about my ownership interests, concealing that I invested my pre-marital retirement savings into the purchase of our mutually purchased, jointly purchased, equally deeded as "tenancy by the entirety" marital residence, at 1986 Sunnyside Drive, Brentwood, TN 370127.

---

[79]    Case 1:23-cv-01097-PLM-RSK, ECF No. 1-35, PageID.1941 (https://rico.jefffenton.com/evidence/2018-08-30_wife-notifies-about-employers-retirement.pdf)

Initials:

139.    On January 1st, 2019 the "Trump Tax Reform"[80] went into effect. As a result, the alimony payments for divorces finalized prior to January 1st, 2019 were tax deductible, and were "grandfathered" for the duration of the alimony. Which meant in this case, the difference in Ms. Fenton being able to deduct $21k per year from her gross income of $94k+/- per duration of My ex-wife had previously agreed that she would pay me year, for the next six years, or being taxed upon all that money, as her earnings, as if she had personally benefitted from it.

140.    If the divorce could not be finalized by the end of 2018, prior to the Trump Tax Reform taking place, Ms. Fenton calculated her income as follows:

➢     "90k gross – 31k taxes – 21k alimony = 38k net. Plus or minus."[81]

141.    In the end, this was what caused Ms. Fenton to become a prime candidate for "predatory litigation". Willing to be exploited while throwing away nearly everything that we owned, in order to evade six years of financial responsibility, needing to earn $90k plus per year, while taking home less than half that amount.

142.    This had a tremendous impact upon Ms. Fenton's tax bracket and the amount of income taxes which she was required to pay for the next six years. Because of this, Ms. Fenton absolutely demanded that for any "fair" amicable, uncontested divorce action, that the divorce

_____

[80]   Trump Tax Reform

[81]   https://rico.jefffenton.com/evidence/2018-12-22_projected-gross-taxes-alimony-net.pdf

Initials: _____

needed to finalize prior to the end of 2018, or else she refused to cooperate.

143.    The problem was, because of this, the Williamson County Chancery Court docket was nearly full for the remainder of the year, by the start of October 2018. (The court was busy with people trying to get their divorces finalized by the end of the year.)

144.    Ms. Fenton presented the last proposed MDA which she was willing to entertain on 9/14/2018.

145.    Although Plaintiff was very interested in this offer and tried to accept it, Ms. Fenton said it was still subject to review by her counsel as well as by another independent attorney, she hired for a document review, recommended by Sandy Arons, who was helping with the "Collaborative Divorce".

146.    The very first paragraph of Ms. Fenton's offer stated, *"This offer is only good if we successfully sign this into a Marital Dissolution Agreement Contract as soon as possible AND **the divorce Final Order is entered by the court before December 31, 2018.** The financial tax incentives integral to this offer will not apply in 2019, and this Agreement is void if the divorce is not final in 2018."*

147.    This complaint seeks a cure for two fraudulent[82] predatory actions in Middle Tennessee during 2019 (four substantially fraudulent and vexatious legal attacks intertwined),

---

[82]    Fraud on the Court(s), by Members of the Court(s)

Initials:

allegedly on behalf of my wife (at that time), "Fawn Tiffany Fenton". (Hereinafter "Ms. Fenton", "wife", or "ex-wife".) Though we were both financially destroyed as a result. To the enrichment of the State, the County, the Courts, the Counsel, the Auctioneers, Real Estate Investors, Real Estate Professionals, the Banks, and outsiders.

148.     Unfortunately Ms. Fenton's two attorneys shot-down the offer, before Plaintiff was permitted to accept it.

149.     In an email from Ms. Fenton on 9/19/2018 she stated, *"I sent my attorney the draft of our contract to review also, and he just told me he thinks this agreement is totally nuts; it's too complicated and is not at all in my best interest, and there are a thousand ways this could go wrong in the future, and he says he will not write it or facilitate it. He says if we do successfully write up an agreement for both of us to sign, we will have to do our best to format it with the structure and language that the courts expect to see for an MDA, and then I will have to file it myself, appending it to my file that is already active at the Williamson County courts, and I will have to get the court clerks to help me request a court date for a judge to look at the contract. My attorney also says, that even though we might both have agreed to this contract and both voluntarily signed it, the judge could still think it is too unequal or complicated and strike it down. My attorney says the judges will refuse to finalize a divorce degree if they personally do not like/agree with the MDA."*

150.     On the following day, on 9/20/2018 Ms. Fenton stated in another email, *"Tommy confirmed what my lawyer had said: this agreement is so far out of the ordinary, he thinks that even if we both sign it and agree to it, that the judges will strike it down. Tommy says the main problem is the long*

Initials:

*timeline, the judges do not want open-ended issues after a divorce. He said that they will either want one person to get the house free and clear from the other, or they will order the sale of the house and tell us to split the proceeds..."*

151.    Many of the divorce negotiations discussed between Plaintiff and his ex-wife included a means by which Plaintiff could keep the marital residence and continue to live in it, since Ms. Fenton had decided that she did not personally want to keep the home.[83] Despite Plaintiff's offer to give Ms. Fenton his equity for free.[84] So that one of them could enjoy the fruits of both their labor, rather than liquidating the home and losing all that they had worked for and invested.

152.    Here is an excerpt of an email[85] written to me by my ex-wife on 8/4/2018: *"Hello, I am not theoretically opposed to you keeping the house, but I don't know how financially we could make that happen. Maybe there is a way we can make a deal like, **I keep paying the current mortgage payment and 2nd mortgage payment for the next 6 years or so instead of giving you alimony payments.** The financing would have to stay as it is in my name until you can rebuild your credit. When you can re-build your credit and have a job and all, then you could re-fi the house into your own name and cash me out my equity. That plan would suck for the credit card debt, though, as I was counting on the house equity (after sale of the house) to pay off both of our credit card debts. What are your thoughts."*

---

[83]    https://rico.jefffenton.com/evidence/2018-10-09_wife-does-not-want-to-keep-marital-residence.pdf

[84]    Case 1:23-cv-01097-PLM-RSK, ECF No. 1-27, 1472

[85]    Case 1:23-cv-01097-PLM-RSK, ECF No. 1-26, PageID.1341

Initials:

153. On 8/30/2018 Ms. Fenton emailed me a settlement proposal,[86] which included a budget whereby I could retain the marital residence, but I would need to obtain two roommates, one renting the large (spare) bedroom for **$800 per month**, and another renting the smaller spare bedroom for **$600 per month**. Then Ms. Fenton would pay the remainder of the household expenses, and I only needed to earn another $248 per month to support myself.

154. This was to provide me with an opportunity to obtain the needed vocational rehabilitation, and to ease back into the workforce, without needing to immediately sink or swim.

155. I showed immediate interest in this offer and tried desperately to accept it, but Ms. Fenton's counsel advised her against it and she ultimately rescinded the opportunity.

156. I'm sorry I'm out of time. I had to copy and past some parts in, which have the language "Plaintiff" rather than speaking in first person. I understand this error, I just don't have time to fix it and to still make it to the court today. Please read the spirit and excuse my negligence.

157. This is a pro se filing, in which "technicalities" are only allowed to matter to the extent that JUSTICE is still the goal of the court.

158. Justice demands that this case be cured, that these criminals be held to account, and the courts they operate in provide new rules or mechanisms of transparency and accountability to

---

[86] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-26, PageID.1336-1337

Initials:

protect the judicial integrity throughout the State of Tennessee, as well as protecting the people.

159. Again, I write none of this for any foul purpose. My goal is as it has been since my first day in court, to testify to the raw truth, despite what light that puts myself or anyone else in.

160. **I Jeffrey Ryan Fenton swear under the penalty of perjury, that I have filed 1,000 pages of cold raw truth in the State Courts of Tennessee, without yet being given the benefit (outside court) of one single word. While almost everything else filed in docket #49418B was substantially fraudulent. (Please help me!)**

161. "Pro se pleadings are to be considered without regard to technicality; pro se litigants' pleadings are not to be held to the same high standards of perfection as lawyers." *Jenkins v. McKeithen, 395 U.S. 411, 421 (1959); Picking v. Pennsylvania R. Co., 151 Fed 2nd 240; Pucket v. Cox, 456 2nd 233*

162. "Pleadings are intended to serve as a means of arriving at fair and just settlements of controversies between litigants. They should not raise barriers which prevent the achievement of that end. Proper pleading is important, but its importance consists in its effectiveness as a means to accomplish the end of a just judgment." *Maty v. Grasselli Chemical Co., 303 U.S. 197 (1938)*

Page **48** of **49**

Initials:

## DECLARATION

Pursuant to 28 U.S. Code § 1746, I declare under penalty of perjury that the foregoing is true and correct, except as to matters herein stated to be on information and belief, and as to such matters, I certify as aforesaid that I verily believe the same to be true.

Executed on December 29, 2023 @ 2:10 PM EST

JEFFREY RYAN FENTON

17195 SILVER PARKWAY, #150
FENTON, MI, 48430-3426
JEFF.FENTON@LIVE.COM
(P) 615.837.1300
(F) 810.255.4438

Initials: