UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MICHIGAN

FILED - LN
December 29, 2023 3:56 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: jlg / _____ SCANNED BY: /s/ 12/29/23

JEFFREY RYAN FENTON,

    PLAINTIFF

v.

VIRGINIA LEE STORY ET AL.,

    DEFENDANTS

CASE NO. 1:23-CV-1097

## DECLARATION OF ADA ABUSE I WITNESSED IN CHANCERY COURT

Plaintiff brings this testimony pursuant to F.R.Civ.P. 26(c).

I, Jeffrey Ryan Fenton, declare as follows:

1. I am over 18 years of age and have personal knowledge of the following facts.

2. These statements of fact are about Docket #48419B[1] filed on 6/4/2019, by Story, Abernathy, & Campbell, PLLP in Williamson County Chancery Court.

3. Ms. Story represented my wife at that time, Ms. Fawn Fenton, in a contested divorce action, which she initiated.

---

[1] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-17, PageID.641 ~ ECF No. 1-26, PageID.1369

Page 1 of 17

Initials: /s/

4. The Courthouse is located at 135 4th Avenue South, Franklin, TN 37064.

5. The Chancery Court Clerk & Master was Attorney Elaine Beaty Beeler (BPR# 016583), the presiding Chancellor was Judge Michael Weimar Binkley (BPR# 005930), while my opposing Counsel was Attorney Virginia Lee Story (BPR# 011700) and Attorney Kathryn Lynn Yarbrough (BPR# 032789) with Story, Abernathy, and Campbell, PLLP.

6. The first time I ever sat in the Courtroom of Chancellor Michael W. Binkley[2], **I really liked him!** For most of the day.

7. Judge Binkley appeared well carried, articulate, intelligent, kind, gregarious.

8. Judge Binkley appeared to go out of his way to build-up, compliment, and encourage some witnesses and attorneys.

9. For most of the day, Judge Binkley carried himself in a manner where I felt as though he was speaking directly to and with me.

10. I laughed with others in the Court, and I genuinely felt connected to Judge Binkley, his work, and the appearance of fairness and Justice in the Court.

11. On information and belief, my perception was that Chancellor Michael W. Binkley has

---

[2] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-24, PageID.1184 ~ ECF No. 1-25, PageID.1225
August 1st, 2019 – Fenton v. Fenton – Docket #48419B (COA #M2019-02059-COA-R3-CV)

the ability to effectively speak and connect with his audience in the court room.

12. I honestly admired and felt encouraged by Judge Binkley's performance for much of the day.

13. I felt like he was right there with me. That he was down to earth, authentic, responding as I did in my gut, to the same stimuli.

14. I did not perceive Judge Binkley as having a stern, demeaning, or pretentious afront, holding himself above others. Until almost the end of that afternoon, on August 1st, 2019.

15. My case was to be heard the very last, since during rollcall we anticipated needing the most time.

16. What felt like a punch in my gut was when Judge Michael W. Binkley got to the gentleman directly before my case was to be heard.

17. That was when my entire perspective of Judge Binkley changed, quickly, dramatically, and with good cause.

18. This was an intense day for me in Court. Much of my life relied upon the Court's fairness.

19. I had exhausted $9,500 in legal fees to date, the majority of which I had no choice but to borrow from my elderly mother's retirement, if I was to have counsel.

20. My mother has been the single mother of five children for much of her life.

21. My mother is a retired pediatric intensive care nurse, who is not at all wealthy, and lives

by very humble means.

22. Her home was built in 1950 for just $8,752.87, including the property, materials, labor, and landscaping.

23. My mother's tiny home is roughly 748 square-feet and is currently assessed at $52,600, as of 2023.

24. On information and belief, my ex-wife's mother lives in a $4,000,000 home, in Tiburon, California. An affluent peninsula in the San Franciso Bay area. To the best of my knowledge, it is completely paid for, and I anticipate that she will receive a sizable inheritance.

25. My marital residence with Ms. Fenton was located at 1986 Sunnyside Drive, Brentwood, TN 37027.

26. All of my premarital retirement funds were invested into our mutually purchased and equally deeded marital residence[3], as "tenancy by the entirety".[4]

27. There was never a level playing field during my case in the Chancery Court.

28. Judge Michael W. Binkley was bias[5] against me and allowed Attorney Virginia Lee Story

---

[3] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-27, PageID.1416-1430
[4] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-13, PageID.541-542
https://www.rico.jefffenton.com/evidence/2011-04-29_fenton-marital-residence-tenancy-by-entirety.pdf
[5] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-17, PageID.692-702

Initials: *[signed]*

to harass and abuse me in court.

29. Judge Michael W. Binkley failed to perform his judicial supervisory duties and refused to stop, correct, or report Attorney Virginia Lee Story's almost non-stop violations of the State of Tennessee's "Rules of Professional Conduct."[6]

30. Such as "testifying as a witness", which Attorney Story did to nearly everything she spoke about during court on 8/1/2019, while she was a witness to absolutely none of it.

31. Tenn. R. Sup. Ct. 3.4 (Rule 3.4) Fairness to Opposing Party and Counsel

> A lawyer shall not: (e) in trial,
>
> (1) allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence; or
>
> (2) assert personal knowledge of facts in issue except when testifying as a witness; or
>
> (3) state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused…

32. Tenn. R. Sup. Ct. 3.4 was literally violated by Attorney Virginia Lee Story[7] throughout my case (#48419B) more times than I have yet been able to count to date.

---

[6] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-40, PageID.2068-2090
[7] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-34, PageID.1883-1890

Initials:

33. Judge Michael W. Binkley also allowed Attorney Virginia Lee Story to make multiple false and fraudulent statements of law in open court[8], which Judge Binkley not only failed to correct, but he nodded his head up and down while grunting sounds of agreement with her fraudulent claims.[9]

34. After which Judge Michael W. Binkley made completely unreasonable court orders[10], violating my state, federal, and constitutional rights[11], based upon Attorney Story's completely false statements of law combined with her fraudulent assertions of facts.[12]

35. As such, I was overwhelmed beyond words, during my very first hearing in Williamson County Chancery Court, on August 1st, 2019.

36. I don't remember every word verbatim, but I do remember "the show" put on by Judge Michael W. Binkley, including distinct portions of his dialog (though paraphrased), the general tone of each prejudice exhibited by Judge Binkley (as I believe to have also experienced), and my overall "takeaway".

37. The Courtroom was still quite full, so the "audience" was captivated and largely engaged with Judge Binkley.

38. This was also witnessed by my Attorney, Mitchell Ray Miller (BPR #036126) then

---

[8] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-24, PageID.1184 ~ ECF No. 1-25, PageID.1225

[9] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-1, PageID.34-47

[10] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-35, PageID.1951-1953

[11] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-34, PageID.1874-1924

[12] Case 1:23-cv-01097-PLM-RSK, ECF No. 1-35, PageID.1925 ~ ECF No. 1-36, PageID.2006

Page 6 of 17

Initials: ____

Case 3:24-cv-01282   Document 12   Filed 12/29/23   Page 6 of 17 PageID #: 2168

employed by Schaffer Law Firm. Attorney Miller has since opened his own practice at "The Law Office of Mitchell R. Miller" (mitchell@millerlawtn.com), also reachable by phone at (615) 538-1885, for confirmation of the events to follow.

39. I hope that Mitchell will still tell the truth, despite the tremendous pressure which I found throughout the Middle Tennessee Judicial System, not to challenge any judge's autonomy.

40. On information and belief, that pressure I found to be exponentially higher in the alliance between Judge Michael W. Binkley and Attorney Virginia Lee Story, though I knew none of their history at that time.

41. On information and belief, even the simplest steps to promote transparency and accountability within the Civil Division of the Williamson County Chancery Court have been overlooked and/or denied by that Court and/or its governance.

42. For example, on information and belief, that court maintains no records of who appeared and testified in Civil hearings.

43. On information and belief, they have neither a reporter nor a clerk in the court rooms, to transcribe the hearings or even keeps minutes for the Court record. (Such as maintaining records of who appeared and testified in court, or what is said or done during a hearing.)

44. On information and belief, they also didn't provide any audio or video recordings in civil hearings, by which to increase transparency and accountability, to help protect litigants from false and fraudulent claims and subsequent court orders.

45. Furthermore, the Attorney for the "winning party" literally **wrote the Court Orders** in the 21st Judicial District, which further discriminated against Pro Se litigants, by disallowing their participation in the "Proposed Order/Agreed Order" process.

46. Though other Tennessee Judicial Districts discriminated far less against Pro Se litigants, at least by their published "Local Rules of Practice".

47. I had no clue about any of this at the time. I was much more confident about the integrity, impartiality, and equality throughout the entire Court System, than I unfortunately found to be true, in my experience.

48. After witnessing "the show" put on by Judge Binkley that afternoon, Attorney Michell Miller quietly approached me and asked, **"Did you see (or hear) that?"** At which point, I believe we both knew that I had little, to no chance, at finding favor, impartiality, equality, or justice in that Courtroom.

49. On information and belief, even without collusion, corruption, the deprivation of rights and property (which all followed), the clear prejudices of Chancellor Michael W. Binkley were steeply stacked against me.

50. On information and belief, the gentleman on the "stand", immediately prior to my first hearing, on August 1st, 2019, obviously had a severe speech impediment.

51. I don't know the man's name, his case number, or even precisely what the Court wanted the man's money for, but it felt like an alimony or child support type case.

52. I believe that the man had an MBA, while Judge Binkley kept drilling him about when he was going to quit being "underemployed", when he was going to "get a new job" making more money.

53. The man responded several times with difficulty in speaking fluidly, stuttering, and stammering as he informed Judge Binkley that he was already working his "new job", making (I believe) $55k per year, and that was the extent of what he claimed that he could earn at that point.

54. Judge Michael W. Binkley would have no part in it. He kept drilling the guy about primarily the same thing over and over, as the man's condition was obviously exacerbated by the pressure of being intensely confronted on the stand, while failing to have an answer, or to find the words, which might satisfy the judge.

55. The man repeatedly fumbled around, as if trying to figure out what to say or how to say it. Appearing as if he sincerely hoped to appease the judge, in good-faith, and was struggling to do so. While Judge Michael W. Binkley put on a show for the entire courtroom.

56. Judge Binkley was clearly frustrated with this man for his lag in response and his lack of fluidity in his speech.

57. Judge Binkley also hammered this man about when he would quit being underemployed and get a new job earning more money.

58. Showing signs of obvious frustration, Judge Binkley threw his hands-up in the air at one point.

59. At another point Judge Michael W. Binkley put his head down on his bench, while shaking it from side to side, repeatedly signaling for the guy to hurry up and provide him with an acceptable answer.

60. The gentleman on the stand clearly appeared to have a genuine disability, yet Judge Binkley openly chastised him for his failure to answer his questions more quickly, directly, acceptably, etc...

61. I'm honestly not sure what Judge Binkley hoped to get out of him that day, but the man told the Court, more than once, that the job he was already working, was "his new job", making more money than he had previously earned.

62. On information and belief, although I don't know the man's vocational history or the basis for his case, what was clear was that this man had a genuine speech impediment and was physically unable to respond to the judge in the manner which Judge Binkley repeatedly demanded.

63. It was also clear that Judge Binkley openly acted in a mocking manner toward this gentleman, using demonstrative movements with his hands and his head, acting exasperated, as though waiting forever to obtain a response.

64. On information and belief, in the end, Judge Binkley ordered the gentleman's counsel (a lady) to take the man and "work with him some more", to basically prepare him better for their next hearing, to improve his quickness, directness, and the fluidity with which he spoke.

65. Judge Binkley went on to threaten this man's counsel, that if this gentleman did not speak more quickly and clearly at his next hearing, answering the Judge's questions more concisely, then

Judge Binkley would further penalize this man with some additional charge.

66. I don't remember what term Judge Binkley used, or specifically what other charge he threatened this gentleman with. I don't believe that it was "contempt", but it was some equivalent sounding charge as though the man was intentionally, maliciously, speaking in the struggling "stutter", to avoid, delay, or deflect the questions of the Court.

67. On information and belief, I never perceived that to be the case with this gentleman.

68. On information and belief, Judge Binkley was overtly expressive and dramatic, in violation of the Rules of Judicial Conduct, which speak directly to "body language", and the appearance of impropriety.

69. On information and belief, Judge Michael W. Binkley, appeared to intentionally engage the audience present in the court room that day, while he mocked this man demonstratively. As if the Court was subjected to some inhumane intentional burden while waiting for this man to answer the relentless questions, which I believed him to have already answered to the best of his ability that day.

70. I believe that during the "show" detailed above, that Judge Michael W. Binkley clearly violated Tenn. R. Sup. Ct. 2.3 - Bias, Prejudice, and Harassment, which states:

> ➢ A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice.

> ➢ A judge shall not, in the performance of judicial duties, by words or conduct manifest

Initials: _[signature]_

bias or prejudice, or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, and shall not permit court staff, court officials, or others subject to the judge's direction and control to do so.

*Comment*

- A judge who manifests bias or prejudice in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute.

- Examples of manifestations of bias or prejudice include but are not limited to epithets; slurs; demeaning nicknames; negative stereotyping; attempted humor based upon stereotypes; threatening, intimidating, or hostile acts; suggestions of connections between race, ethnicity, or nationality and crime; and irrelevant references to personal characteristics. Even facial expressions and body language can convey to parties and lawyers in the proceeding, jurors, the media, and others an appearance of bias or prejudice. A judge must avoid conduct that may reasonably be perceived as prejudiced or biased.

- Harassment, as referred to in paragraphs (B) and (C), is verbal or physical conduct that denigrates or shows hostility or aversion toward a person on bases such as race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation.

71. I am reasonably sure that Judge Michael W. Binkley's behavior was a genuine ADA violation as well.[13]

72. Had I been in this man's shoes, I would have been completely humiliated by how demonstrative and obviously derogatorily (if not defamatorily and hostilely) Judge Binkley acted toward him, in front of a nearly full courtroom of "spectators".

73. The entire incident appeared to be "way over the top", unnecessary, unproductive, unwarranted, unhelpful, prejudicial, and mean.[14]

74. On information and belief, mocking the man for what appeared a genuine disability, for which the man appeared physically incapable of changing to satisfy the judge with simply how he spoke, not to mention the judge's harshness, claiming relentlessly that the man was remaining "underemployed", as though intentional, as the judge repeatedly accused.

75. Again, I know nothing of the case, except for what I saw in the courtroom.

76. I know not this man's vocational history or aptitude, or to whom or for what the money

---

[13] Tenn. R. Sup. Ct. 1.1 - Rule 1.1 – COMPLIANCE WITH THE LAW:
A judge shall comply with the law, including the Code of Judicial Conduct.

[14] Tenn. R. Sup. Ct. 8.3 - Rule 8.3(a)(b) - REPORTING PROFESSIONAL MISCONDUCT:
(a) A lawyer who knows that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects, **shall inform** the **Disciplinary Counsel of the Board of Professional Responsibility**.

(b) A lawyer who knows that a judge has committed a violation of applicable rules of judicial conduct that raises a substantial question as to the judge's fitness for office **shall inform** the **Disciplinary Counsel of the Board of Judicial Conduct**.

was required by the court.

77. On information and belief, I have no doubt that with the obvious extremity of this man's disability, that he is likely unable to earn as much as another man with the same education, who does not suffer from a heavy stuttering speech impediment.

78. On information and belief, regardless of this man's financial aptitude, I saw no legal, ethical, or humane reason for the treatment which he received that day, in Williamson County Chancery Court, at the bench of Chancellor Michael W. Binkley.

79. On information and belief, my personal conclusions from what I witnessed, directly before my hearing, was that I believe that Judge Michael W. Binkley is "Old School", "Old South", **the man must provide** adequately for his family, discriminating against any and all who fall short. Regardless of the circumstances.

80. On information and belief, Judge Binkley clearly showed disdain rather than compassion for this man's disability.

81. On information and belief, I saw prejudice against men in that Court Room, especially for men who Judge Binkley deems "fall short", who are "underemployed", or who suffer with any challenge or disability which limits their earning capacity, with a **"there are no excuses"** world view.

82. On information and belief, my hearing that day didn't evoke the "show" that Judge Michael W. Binkley put on with the gentleman directly before me on 8/1/2019, with a speech impediment, but my perceptions about Judge Binkley's prejudices proved flawless. (Which I have hundreds of pages of clear and convincing evidence to prove.)

83. I have much more to say on the topics of bias, prejudice, and discrimination by Judge Michael W. Binkley and the Williamson County Chancery Court, including the Chancery Court's Clerk & Master's Office, all which repeatedly failed to comply with or exhibit the slightest care (to me) regarding State and Federal ADA regulations, laws, and policies.

84. The Chancery Court failed or refused to show me any care, compassion, or consideration for my basic "inalienable" human rights to life, liberty, and the pursuit of happiness.

85. Similarly, I found and experienced extreme discrimination against "Pro Se" and so called "Indigent" litigants, both in policy and in practice, within that same publicly owned Court.

86. According to the Merriam Webster Dictionary online, the term "indigent"[15] means: **"suffering from extreme poverty: impoverished"**.

87. On information and belief, the term "indigent" alone is shameful, discriminatory, and a reflection upon the Williamson County Chancery Court's contempt and disdain for less financially advantaged litigants. (Whose tax dollars built that "Court" and employ their staff.)

88. On information and belief, a lot of hard-working people can afford to meet the needs of their families, yet don't have the luxury of keeping tens-of-thousands to hundreds-of-thousands of dollars, in "disposable funds", to defend themselves in "Court" against more financially fortunate parties. Often who leverage and exploit our "legal" system to fraudulently take from others, that

---

[15] https://www.merriam-webster.com/dictionary/indigent

which they are not due.

89. Let the record show, that never in my life have I been "indigent" before I entered the Williamson County Chancery Court.

90. On information and belief, now due to the greatest crimes committed against my person and my family, in my lifetime; purportedly "under color of law", I have been left with no means or reason to expect that I will ever be anything more than "indigent", again in my life.

91. The facts in this document and others were drafted a couple of years ago, while my memory was fresh, but unfortunately, I didn't know where I could safely file them.

92. I have personally experienced gross bias and harsh retaliation by the Williamson County Chancery Court, Judge Michael W. Binkley and Attorney Virginia Lee Story.

93. For that reason, I did not file this document (or others) at the time when I wrote them, because of fear of further retaliation by the Williamson County Chancery Court, Judge Michael W. Binkley and Attorney Virginia Lee Story.

94. I have not written this for any purpose other than to expose the **truth**, as stated herein, with the hope that by exposing this the State of Tennessee and the Chancery Court will take the necessary steps to protect future disadvantaged litigants.

95. Despite how savagely and carelessly I have been wounded by the aforementioned parties, I do not seek retribution, but **justice** and the **protection** of other litigants.

96. For each and every person **equally**, who find themselves either by choice or need, inside

Page 16 of 17

Initials: _____

Case 3:24-cv-01282    Document 12    Filed 12/29/23    Page 16 of 17 PageID #: 2178

that which claims to be a "Court of Equity or Law". **Let it be so!**

97. I am here exercising my <u>first amendment right</u> and <u>responsibility</u> as a <u>citizen</u>, to hold government accountable for their actions, no matter how resistant to the <u>truth</u> that government is.

98. May JUSTICE be served. The public welfare requiring it!

## DECLARATION

Pursuant to 28 U.S. Code § 1746, I declare under penalty of perjury that the foregoing is true and correct, except as to matters herein stated to be on information and belief, and as to such matters, I certify as aforesaid that I verily believe the same to be true.

Executed on October 25, 2023

_____
JEFFREY RYAN FENTON

17195 SILVER PARKWAY, #150
FENTON, MI, 48430-3426
JEFF.FENTON@LIVE.COM
(P) 615.837.1300
(F) 810.255.4438