

# LEASE AGREEMENT
### FOR 1986 SUNNY SIDE DRIVE, BRENTWOOD, TENNESSEE 37027

1. **PARTIES**  This Lease Agreement is entered into this __26th__ day of __MARCH__, __2019__ between LANDLORD, Jeffrey R. Fenton, owner of 1986 Sunny Side Drive, Brentwood, TN 37027 and TENANT ___████████ MERRIMAN___, in conformance with the Uniform Residential Landlord and Tenant Act of the State of Tennessee.

2. **LEASED PROPERTY**  LANDLORD leases to TENANT a BEDROOM, inside LANDLORD'S residence, at 1986 Sunny Side Drive, Brentwood, TN 37027, for use as a private dwelling place for one person, and for no other purpose. This lease includes shared usage of the common living spaces within the home, including the Front Room, the Family Room, the Dining Room, the Kitchen, the Bonus Room, the Hall Bathroom, the Rear Deck, and the Back Yard. This lease includes a single outdoor parking space, for one vehicle. (Primary parking spaces need to be available for the Tenants when they are home. Any tenant with guest vehicles, need to be mindful and considerate about this.)

3. **EXCLUSIONS**  Areas of the property, reserved SOLELY for LANDLORD, which are NOT shared with TENANT, hence being excluded from the LEASED PROPERTY:
   - Master Bedroom and Bathroom
   - Office
   - Attic
   - Crawl Space
   - Most of the Garage (minimal storage is allowed Tenants on one side)

   Tenant is forbidden from entering these areas, without invitation or express permission from LANDLORD, on a case by case basis.

4. **OCCUPANTS**  As a governing principal, no visitor or guest can spend so much time on the property, that it feels as though they are living here. Likewise, no TENANT can create (or permit) an environment which causes others living in the home to become uncomfortable, feeling as though their space is being crowded, or where the peacefulness of our home is disrupted. The LANDLORD and both TENANTS must always feel at ease with any guests on the property, or the TENANT responsible for allowing those guests here should be informed and it is their responsibility to peacefully remove those people from the property. The goal is always, for those paying to live here, to feel "at home", at peace, and undisturbed, so that each of us may equally benefit from the "peaceful enjoyment" of the home which we share together.

5. **LEASE TERM**  The initial Term of this Lease shall commence at 7:00 am on __3/26/2019__ for the term of __12__ months and __6__ days, and shall end at 7:00 am on __4/1/2020__.

6. **RENT**  During the Lease Term, TENANT shall pay to LANDLORD, without any notice or demand, Rent in the amount of __SEVEN HUNDRED + FIFTY__ Dollars ($__750.00__) per month on or before the first (1st) of each month, by check, money order, electronic transfer, or other traceable means (no cash please). In the event that the first day of the Lease Term is other than the first (1st) of the month, the first month's Rent shall be determined on a pro rata basis.

7. **SECURITY DEPOSIT**  The TENANT shall pay a Security Deposit of $__250.00__, on or before the first day of the Lease Term, to be held by the LANDLORD for as long as the TENANT occupies the Leased Property.

   The following conditions must ALL be met by Tenant, for the Tenant to be eligible to receive their entire Security Deposit back after surrendering possession of the Leased Property:

   A. The full term of the Lease Agreement must be satisfied.
   B. Written notice of the TENANT'S intent to terminate this Lease Agreement must be provided to the LANDLORD at least thirty (30) days prior to vacating the Leased Property.
   C. No damage has been done to the Leased Property beyond expected normal wear and tear.
   D. The TENANT'S bedroom is left clean, without disturbing or littering any other areas of the Leased Property.
   E. No holes, burns, or stains are found on the carpeting or flooring.
   F. No unpaid Rents or damage charges are outstanding.

   The Landlord shall make a final walk-through of the Tenant's bedroom, with the Tenant present to witness, pointing out and itemizing in writing any damage found, and deemed by Landlord to be beyond normal wear and tear. Should such damage be found, Landlord will have a period of one week to calculate the costs of the repair, or to get estimates as the case may be, and to release the remainder of the Security Deposit back to the Tenant, while explaining the cost of the damages. If no damage is found by the Landlord during this final walk-through, Landlord shall provide Tenant with a check for the full amount of the Security Deposit, right then and there, without delay.

8. **WILDLIFE**  Wildlife shall be protected and cared for on this property, except for insects. Anyone intentionally harassing, scaring, or harming wildlife on or around this property, will be in express violation of this Lease Agreement, and may at the LANDLORD'S discretion have their Lease Agreement terminated, while forfeiting their Security Deposit to LANDLORD.

   The LANDLORD is responsible for paying the electric, water, trash removal, and Internet service provided to the property, as long as the TENANT does not reduce the temperature settings on the HVAC below 70 degrees or cause any significant increases in the costs of said utilities provided.

**PLAINTIFF'S EXHIBIT K**



This property uses an old SEPTIC SYSTEM, rather than city sewer. As a result, this system must be properly cared for, to continue working. In general, NOTHING should get flushed down the toilets except for that which your body naturally excretes and toilet paper. "Courtesy flushes" are encouraged, to prevent clogging.

**Specifically prevented items, from being flushed down the toilet, include:**
Paper towels, condoms, sanitary napkins, pads, and tampons. Any wrappers or other refuge. Of particular concern, which has caused problems in the past, are the SANITARY WIPES, whether medicated or otherwise, even if they claim to be biodegradable or "septic safe", please NEVER flush these products down the toilet. Please also educate your guest about this concern, since this house has been without a working septic system for a week before and using a porta-potty while not being able to shower for a week, is no fun! On the same note, if the field lines of the septic system get clogged, I've been told that they can't realistically be "fixed" without being replaced, and that work would cost upwards of $15,000! I can't even imagine how LONG such a project would take, so please show a little respect and care for our septic system. Whenever it is treated right, then it works right, but when not, it gets really ugly, really quickly. (Any of the forbidden items, should be wrapped in toilet paper and deposited in the trash. Another solution which has worked in the past, is placing the items inside of pet waste disposal bags, and then putting them in the trash.)

10. **PERSONAL PRIVACY & PEACEFUL ENJOYMENT**  
TENANTS shall be entitled to their own Personal Privacy & Peaceful Enjoyment of the Leased Property. Neither the TENANTS, the Landlord, nor the Landlord's agents or assigns, shall use the Leased Property or behave in such a way as to create a nuisance, annoy, disturb, inconvenience, or interfere with the Peaceful Enjoyment of others at the property, or any nearby resident. TENANTS shall obey all Federal, State, and Local laws. If law enforcement is called to the Leased Property due to the unlawful conduct or activities of any TENANT or their guests, that TENANT shall be considered in Default of this Lease Agreement. Should there be any concern of a domestic disturbance, abuse, violence, drugs, property damage, or similar condition placing the household at risk, then TENANT will need to find other lodging within 24 hours (if they can remain calm and non-threatening throughout that period). In such a case, TENANT would forfeit any pre-paid rents, in addition to their security deposit, for being in default. If the TENANT is unable to calm down or continues to present a credible risk to the property and/or its inhabitants, then the TENANT will need to leave the property immediately, as the lock codes shall be changed, to prevent further access. If deemed necessary, for the purpose of protecting the property and its occupants, the Sheriff's Department will be asked to escort the Tenant, who is in default, from the Leased Property. Under such extreme circumstances, TENANT shall not be allowed to return to the property, to retrieve their personal possessions, without the Sherriff's Department being present, to supervise and ensure TENANT'S peaceful and safe transition out of this property. Again, no funds shall be refunded or returned to the TENANT, after such a traumatic and disruptive incidence.

11. **SUBLEASE**  
The TENANT shall not have the right to pledge or assign his leasehold interest or to sublet the Leased Property or any part thereof.

12. **TENANT'S PERSONAL PROPERTY**  
All of the TENANT'S personal property on the Leased Property shall be at risk of the TENANT only, and the LANDLORD shall not be liable for any damage thereto or theft thereof. The LANDLORD shall not provide any insurance to cover the TENANT'S personal property – the burden of such insurance lies entirely with the TENANT. LANDLORD STRONGLY RECOMMENDS THAT TENANT SECURE ADEQUATE RENTERS INSURANCE TO PROTECT THE TENANT'S PERSONAL PROPERTY.

13. **INDEMNI-FICATION**  
TENANT expressly releases the LANDLORD from any and all liability for any damages or injury to the TENANT, their guests, or any other person, or to any property, occurring on or near the Leased Property, unless such damage is the direct result of obviously reckless negligence or an unlawful act of the LANDLORD or their agents.

14. **REPAIRS AND REIMBURSE-MENT**  
**The Tenant agrees to notify the Landlord and an appropriate representative or agency should the Landlord be unavailable at the time, of the following items <u>immediately upon discovery</u>:** fire; gas leaks; electrical shorts; wind or storm damage; burglary, vandalism or other criminal activity on or near the Leased Property; water leaks; plumbing stoppages, heating or air conditioning malfunctions; and major appliance malfunctions. For any damages or malfunctions that occur as a result of the conduct or negligence of the Tenant or the Tenant's guests, the Tenant shall be responsible for all costs of repairs and agrees to pay these damages to the Landlord immediately upon request. The Landlord shall be given reasonable time to arrange for repairs, considering the nature of the problem and availability of repair services and parts for that item.

15. **RIGHT OF ACCESS**  
The bedrooms for both the Landlord and the Tenants, are to remain their private personal spaces, without intrusion for any reason. The ONLY exceptions being if there is an immediate legitimate threat to either property or life, or if the Tenant is suspected to have experienced a medical emergency or to have possibly deceased.

16. **MOVE-OUT**  
When moving out, the Tenant agrees to surrender the Leased Property to the Landlord in the same condition as when the Tenant first moved-in, normal wear excepted. "Normal wear" means that which occurs day-to-day without negligence, carelessness, accident, or abuse. Tenant agrees that normal and reasonable wear does NOT include that caused by pets and that the Landlord's judgment shall be the sole factor determining any damage.



PLAINTIFF'S EXHIBIT K-1



| | | |
|---|---|---|
| 17. | NOTICE | Service of all notices to the Tenant shall be mailed or delivered to the Tenant at the Leased Property. |

Service of all notices to the Landlord, and payment of all Rents, shall be mailed to:

**Jeff Fenton**
P.O. Box 159200
Nashville, TN 37215

Correspondence mailed by the Tenant but not received by the Landlord shall not be considered.

**Additional contact information for the Landlord:**

Mobile Phone: (615) 837-1301 (Voice & Text Accepted)

Email: ▓▓▓▓▓▓▓▓▓▓

Especially in the case of maintenance issues or other possible emergencies, **the Tenant must try every available means to contact the Landlord and <u>leave messages if the Landlord is unavailable</u>.** Phone calls, emails, and other non-written communication between both parties shall be honest and considered in good faith but shall not be contractually binding.

| | | |
|---|---|---|
| 18. | CASUALTY | If the Leased Property is damaged or destroyed by fire, water, lightning, or other disasters that are in no way attributable to acts of the Tenant or the Tenant's occupants or guests to an extent that use of the Leased Property is severely impaired, the Tenant may immediately vacate the Leased Property and shall notify the Landlord, in writing and within fourteen (14) days, of the intent to terminate this Lease Agreement. Upon acceptance of this termination due to Casualty, the Landlord shall return all Security Deposits to the Tenant, and prepaid Rent for that month shall be pro-rated to the date of the Casualty and the remainder returned. Landlord shall not have the common areas of the home remodeled, or any construction performed which may interfere with the Tenant's Personal Privacy & Peaceful Enjoyment of the Leased Property, without first obtaining the written consent of both Tenants to perform such work. |
| 19. | SALE | If the Landlord sells this property, or places it up for sale, whether voluntarily or by court order, or in any way the ownership of this property or rights to sell this property are conveyed to another party, whether by foreclosure or other legal process, during the term of Tenancy per this Agreement, the assuming, owning, or controlling party, and their agents/assigns must continue to comply in-full with the terms of this Lease Agreement, until such a time as the term of this Lease has been fulfilled, and the Tenant has been given proper legal notice of any changes desired by the new owners, or to vacate the Leased Property, with plenty of time to find a comparable rental, in both cost and location, as well as to make that move smoothly, without any abrupt disturbances, to their life. |
| | | Landlord herein promises and assures Tenant, that under absolutely NO circumstances, will the Tenant be requested or required to move-out, without receiving at the very least, 90-Days of written notice in advance, of such a request or demand. This is the absolute legal minimum required by both Tennessee law and Federal laws, which the Tenant can take security in, despite any other instability in the marital status between the property owners. |
| 20. | DEFAULT | Written notice of nonpayment of Rent by Landlord is hereby waived. In the event that Rent is not paid within SEVEN DAYS of the due date, Landlord may terminate this Lease Agreement immediately and proceed with a detainer action for possession of the Leased Property. |
| | | Abandonment by Tenant is considered a default under the terms of this Lease Agreement. |
| 21. | LEGAL FEES & COLLECTIONS | Tenant agrees to pay all reasonable attorneys' fees together with any court costs and expenses which Landlord incurs in any action for breach of this Lease Agreement or failure to pay Rent or other monies due, provided the judgment is in the Landlord's favor. Alternately, Landlord agrees to pay all reasonable attorneys' fees together with any court costs and expenses which Tenant incurs in any action for breach of this Lease Agreement by Landlord, for failure to honor or complete the full-term of this Lease, or for opening/entering the Tenant's bedroom for any reason without Tenant's prior permission in writing, on a case-by-case basis. Both Landlord and Tenant reserve the right, to turn any delinquent debts owed to themselves, by the other party, over to a Collection Agency or other such organization which may adversely affect the debtor's credit rating and ability to qualify for credit in the future. |
| 22. | NO WAIVER | Any failure of Landlord to insist upon the strict and prompt performance of any covenants or conditions of this Lease Agreement shall not operate as a waiver of any such Lease Agreement provision or of Landlord's right to insist on a prompt compliance in the future of such covenant or condition, and shall not prevent a subsequent action by Landlord for any future violation. No provision, covenant or condition of this Lease Agreement may be waived by Landlord unless such waiver is in writing and signed by Landlord. |
| 23. | SAVINGS CLAUSE | If any provision of this Lease Agreement is determined in a court of law to be in conflict with any Federal, State or Local Statute or Ordinance, the nullity of that specific provision shall not affect the other provisions of this Lease Agreement which can be given effect in the absence of the nullified provision, and to this end the provisions of this Lease Agreement are severable. |
| 24. | LEAD BASED ▓▓▓▓ RE | Housing built before 1978 may contain lead-based paint. This property was built in 1977 so it could contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. The Landlord has no knowledge, records, or reports of lead-based paint and/or lead-based paint hazards in the building. In compliance with Federal guidelines, Landlord has provided to Tenant a printed copy of the EPA pamphlet "Protect Your Family From Lead In Your Home", which Tenant herein acknowledges receipt of. Additional copies are available online at http://www.hud.gov. |

**PLAINTIFF'S EXHIBIT K-2**



25. **PERSONAL INTEREST DISCLOSURE** — Tenant has been advised that Landlord is the OWNER of this property, and is also a LICENSED real estate professional in the State of Tennessee (license is currently in "retirement" status), acting on his own behalf and in his own best interests, to manage and rent this property. Landlord is NOT assuming any agency relationship with the Tenant.

**THIS IS A LEGALLY BINDING CONTRACT.** (Please seek legal counsel before signing, if you don't fully understand.)

**TENANT HEREBY ACKNOWLEDGES** THAT HE HAS READ AND UNDERSTANDS THIS "LEASE AGREEMENT". NO ORAL AGREEMENTS HAVE BEEN MADE WHICH CONFLICT WITH THE CONTENTS HEREIN. TENANT UNDERSTANDS THAT ALL PROVISIONS OF THIS LEASE AGREEMENT ARE MADE FOR THE PURPOSE OF PROTECTING THE LEASED PROPERTY AND PROVIDING FOR THE SAFETY AND WELL BEING OF ALL OCCUPANTS. BOTH LANDLOD AND TENANT, LEGALLY AGREE AND AFIRM, BY SIGNING BELOW, THAT THEY WILL, IN ALL RESPECTS, COMPLY WITH THE TERMS AND PROVISIONS OF THIS LEASE AGREEMENT, HEREIN STATED.

| Jeffrey R. Fenton | ▓▓▓▓▓▓▓ MERRIMAN |
|---|---|
| LANDLORD | TENANT (Print Name) |
| *[signature]* | *[signature]* |
| LANDLORD SIGNATURE | TENANT SIGNATURE |
| 3/26/2019    7:50 PM | 3/26/2019    7:57 PM CST |
| BINDING AGREEMENT DATE    TIME | BINDING AGREEMENT DATE    TIME |

**PLAINTIFF'S EXHIBIT K-3**



Check 1338 — 3/26/19 — Pay to Jeff Fenton — $250.00 — Two Hundred Fifty + No/100 — Deposit for Lease at 1986 Sunnyside Drive

Check 1341 — 3/26/19 — Pay to Jeff Fenton — $300.00 — Three Hundred & No/100 — For Partial Rent

Check 1343 — 4/1/19 — Pay to Jeff Fenton — $450.00 — Four Hundred Fifty + No/100 — Rent Balance

PLAINTIFF'S EXHIBIT K-4




## Check Details

| | |
|---|---|
| Account: | 360 Savings ...5604 |
| Available Amount: | $250.00 |
| Check Amount: | $250.00 |
| Deposit Date: | Tuesday, March 26, 2019 |



MERRIMAN
FRANKLIN, TN 37064
1338
3/26/19

PAY TO THE ORDER OF: JEFF FENTON   $ 250.00
TWO HUNDRED FIFTY + NO/100 DOLLARS

Pinnacle
615-744-3700 www.pnfp.com
DEPOSIT FOR LEASE AT
FOR 1946 SUNNYSIDE DRIVE



7912<
CAPITAL ONE, NA
0010303534     03272019
RICHMOND, VA 004 21
360 RDC   Deposit         604



PLAINTIFF'S EXHIBIT
K-5




## Check Details

| | |
|---|---|
| Account: | 360 Checking ...5855 |
| Available Amount: | $300.00 |
| Check Amount: | $300.00 |
| Deposit Date: | Tuesday, March 26, 2019 |








## Check Details

| | |
|---|---|
| Account: | 360 Checking ...5855 |
| Available Amount: | $450.00 |
| Check Amount: | $450.00 |
| Deposit Date: | Monday, April 1, 2019 |







## LEASE AGREEMENT
*FOR 1986 SUNNY SIDE DRIVE, BRENTWOOD, TENNESSEE 37027*

1. **PARTIES** — This Lease Agreement is entered into this __9th__, day of __APRIL__, __2019__ between LANDLORD, Jeffrey R. Fenton, owner of 1986 Sunny Side Drive, Brentwood, TN 37027 and TENANT ▮▮▮▮▮▮▮▮ __GARCIA_____, in conformance with the Uniform Residential Landlord and Tenant Act of the State of Tennessee.

2. **LEASED PROPERTY** — LANDLORD leases to TENANT a BEDROOM, inside LANDLORD'S residence, at 1986 Sunny Side Drive, Brentwood, TN 37027, for use as a private dwelling place for one person, and for no other purpose. This lease includes shared usage of the common living spaces within the home, including the Front Room, the Family Room, the Dining Room, the Kitchen, the Bonus Room, the Hall Bathroom, the Rear Deck, and the Back Yard. This lease includes a single outdoor parking space, for one vehicle. (Primary parking spaces need to be available for the Tenants when they are home. Any tenant with guest vehicles, need to be mindful and considerate about this.)

3. **EXCLUSIONS** — Areas of the property, reserved SOLELY for LANDLORD, which are NOT shared with TENANT, hence being excluded from the LEASED PROPERTY:
   - Master Bedroom and Bathroom
   - Office
   - Attic
   - Crawl Space
   - Most of the Garage (minimal storage is allowed Tenants on one side)

   Tenant is forbidden from entering these areas, without invitation or express permission from LANDLORD, on a case by case basis.

4. **OCCUPANTS** — As a governing principal, no visitor or guest can spend so much time on the property, that it feels as though they are living here. Likewise, no TENANT can create (or permit) an environment which causes others living in the home to become uncomfortable, feeling as though their space is being crowded, or where the peacefulness of our home is disrupted. The LANDLORD and both TENANTS must always feel at ease with any guests on the property, or the TENANT responsible for allowing those guests here should be informed and it is their responsibility to peacefully remove those people from the property. The goal is always, for those paying to live here, to feel "at home", at peace, and undisturbed, so that each of us may equally benefit from the "peaceful enjoyment" of the home which we share together.

5. **LEASE TERM** — The initial Term of this Lease shall commence at 7:00 am on __4/9/2019__ for the term of __11__ months and __22__ days, and shall end at 7:00 am on __4/1/2020__.

6. **RENT** — During the Lease Term, TENANT shall pay to LANDLORD, without any notice or demand, Rent in the amount of __Six Hundred Fifty__ Dollars ($__650.00__) per month on or before the first (1st) of each month, by check, money order, electronic transfer, or other traceable means (no cash please). In the event that the first day of the Lease Term is other than the first (1st) of the month, the first month's Rent shall be determined on a pro rata basis.

7. **SECURITY DEPOSIT** — The TENANT shall pay a Security Deposit of $__250.00__, on or before the first day of the Lease Term, to be held by the LANDLORD for as long as the TENANT occupies the Leased Property.

   The following conditions must ALL be met by Tenant, for the Tenant to be eligible to receive their entire Security Deposit back after surrendering possession of the Leased Property:

   A. The full term of the Lease Agreement must be satisfied.
   B. Written notice of the TENANT'S intent to terminate this Lease Agreement must be provided to the LANDLORD at least thirty (30) days prior to vacating the Leased Property.
   C. No damage has been done to the Leased Property beyond expected normal wear and tear.
   D. The TENANT'S bedroom is left clean, without disturbing or littering any other areas of the Leased Property.
   E. No holes, burns, or stains are found on the carpeting or flooring.
   F. No unpaid Rents or damage charges are outstanding.

   The Landlord shall make a final walk-through of the Tenant's bedroom, with the Tenant present to witness, pointing out and itemizing in writing any damage found, and deemed by Landlord to be beyond normal wear and tear. Should such damage be found, Landlord will have a period of one week to calculate the costs of the repair, or to get estimates as the case may be, and to release the remainder of the Security Deposit back to the Tenant, while explaining the cost of the damages. If no damage is found by the Landlord during this final walk-through, Landlord shall provide Tenant with a check for the full amount of the Security Deposit, right then and there, without delay.

8. **WILDLIFE** — Wildlife shall be protected and cared for on this property, except for insects. Anyone intentionally harassing, scaring, or harming wildlife on or around this property, will be in express violation of this Lease Agreement, and may at the LANDLORD'S discretion have their Lease Agreement terminated, while forfeiting their Security Deposit to LANDLORD.

   The LANDLORD is responsible for paying the electric, water, trash removal, and Internet service provided to the property, as long as the TENANT does not reduce the temperature settings on the HVAC below 70 degrees or cause any significant increases in the costs of said utilities provided.

**PLAINTIFF'S EXHIBIT K-8**



This property uses an old SEPTIC SYSTEM, rather than city sewer. As a result, this system must be properly cared for, to continue working. In general, NOTHING should get flushed down the toilets except for that which your body naturally excretes and toilet paper. "Courtesy flushes" are encouraged, to prevent clogging.

**Specifically prevented items, from being flushed down the toilet, include:**
Paper towels, condoms, sanitary napkins, pads, and tampons. Any wrappers or other refuge. Of particular concern, which has caused problems in the past, are the SANITARY WIPES, whether medicated or otherwise, even if they claim to be biodegradable or "septic safe", please NEVER flush these products down the toilet. Please also educate your guest about this concern, since this house has been without a working septic system for a week before and using a porta-potty while not being able to shower for a week, is no fun! On the same note, if the field lines of the septic system get clogged, I've been told that they can't realistically be "fixed" without being replaced, and that work would cost upwards of $15,000! I can't even imagine how LONG such a project would take, so please show a little respect and care for our septic system. Whenever it is treated right, then it works right, but when not, it gets really ugly, really quickly. (Any of the forbidden items, should be wrapped in toilet paper and deposited in the trash. Another solution which has worked in the past, is placing the items inside of pet waste disposal bags, and then putting them in the trash.)

10. **PERSONAL PRIVACY & PEACEFUL ENJOYMENT** — TENANTS shall be entitled to their own Personal Privacy & Peaceful Enjoyment of the Leased Property. Neither the TENANTS, the Landlord, nor the Landlord's agents or assigns, shall use the Leased Property or behave in such a way as to create a nuisance, annoy, disturb, inconvenience, or interfere with the Peaceful Enjoyment of others at the property, or any nearby resident. TENANTS shall obey all Federal, State, and Local laws. If law enforcement is called to the Leased Property due to the unlawful conduct or activities of any TENANT or their guests, that TENANT shall be considered in Default of this Lease Agreement. Should there be any concern of a domestic disturbance, abuse, violence, drugs, property damage, or similar condition placing the household at risk, then TENANT will need to find other lodging within 24 hours (if they can remain calm and non-threatening throughout that period). In such a case, TENANT would forfeit any pre-paid rents, in addition to their security deposit, for being in default. If the TENANT is unable to calm down or continues to present a credible risk to the property and/or its inhabitants, then the TENANT will need to leave the property immediately, as the lock codes shall be changed, to prevent further access. If deemed necessary, for the purpose of protecting the property and its occupants, the Sheriff's Department will be asked to escort the Tenant, who is in default, from the Leased Property. Under such extreme circumstances, TENANT shall not be allowed to return to the property, to retrieve their personal possessions, without the Sherriff's Department being present, to supervise and ensure TENANT'S peaceful and safe transition out of this property. Again, no funds shall be refunded or returned to the TENANT, after such a traumatic and disruptive incidence.

11. **SUBLEASE** — The TENANT shall not have the right to pledge or assign his leasehold interest or to sublet the Leased Property or any part thereof.

12. **TENANT'S PERSONAL PROPERTY** — All of the TENANT'S personal property on the Leased Property shall be at risk of the TENANT only, and the LANDLORD shall not be liable for any damage thereto or theft thereof. The LANDLORD shall not provide any insurance to cover the TENANT'S personal property – the burden of such insurance lies entirely with the TENANT. LANDLORD STRONGLY RECOMMENDS THAT TENANT SECURE ADEQUATE RENTERS INSURANCE TO PROTECT THE TENANT'S PERSONAL PROPERTY.

13. **INDEMNIFICATION** — TENANT expressly releases the LANDLORD from any and all liability for any damages or injury to the TENANT, their guests, or any other person, or to any property, occurring on or near the Leased Property, unless such damage is the direct result of obviously reckless negligence or an unlawful act of the LANDLORD or their agents.

14. **REPAIRS AND REIMBURSEMENT** — **The Tenant agrees to notify the Landlord and an appropriate representative or agency should the Landlord be unavailable at the time, of the following items <u>immediately upon discovery</u>:** fire; gas leaks; electrical shorts; wind or storm damage; burglary, vandalism or other criminal activity on or near the Leased Property; water leaks; plumbing stoppages, heating or air conditioning malfunctions; and major appliance malfunctions. For any damages or malfunctions that occur as a result of the conduct or negligence of the Tenant or the Tenant's guests, the Tenant shall be responsible for all costs of repairs and agrees to pay these damages to the Landlord immediately upon request. The Landlord shall be given reasonable time to arrange for repairs, considering the nature of the problem and availability of repair services and parts for that item.

15. **RIGHT OF ACCESS** — The bedrooms for both the Landlord and the Tenants, are to remain their private personal spaces, without intrusion for any reason. The ONLY exceptions being if there is an immediate legitimate threat to either property or life, or if the Tenant is suspected to have experienced a medical emergency or to have possibly deceased.

16. **MOVE-OUT** — When moving out, the Tenant agrees to surrender the Leased Property to the Landlord in the same condition as when the Tenant first moved-in, normal wear excepted. "Normal wear" means that which occurs day-to-day without negligence, carelessness, accident, or abuse. Tenant agrees that normal and reasonable wear does NOT include that caused by pets and that the Landlord's judgment shall be the sole factor determining any damage.



PLAINTIFF'S EXHIBIT K-9



| | | |
|---|---|---|
| 17. | NOTICE | Service of all notices to the Tenant shall be mailed or delivered to the Tenant at the Leased Property. |

Service of all notices to the Landlord, and payment of all Rents, shall be mailed to:

**Jeff Fenton**
**P.O. Box 159200**
**Nashville, TN 37215**

Correspondence mailed by the Tenant but not received by the Landlord shall not be considered.

Additional contact information for the Landlord:

Mobile Phone: (615) 837-1301 (Voice & Text Accepted)

Email: ▮

Especially in the case of maintenance issues or other possible emergencies, **the Tenant must try every available means to contact the Landlord and** leave messages if the Landlord is unavailable. Phone calls, emails, and other non-written communication between both parties shall be honest and considered in good faith but shall not be contractually binding.

| | | |
|---|---|---|
| 18. | CASUALTY | If the Leased Property is damaged or destroyed by fire, water, lightning, or other disasters that are in no way attributable to acts of the Tenant or the Tenant's occupants or guests to an extent that use of the Leased Property is severely impaired, the Tenant may immediately vacate the Leased Property and shall notify the Landlord, in writing and within fourteen (14) days, of the intent to terminate this Lease Agreement. Upon acceptance of this termination due to Casualty, the Landlord shall return all Security Deposits to the Tenant, and prepaid Rent for that month shall be pro-rated to the date of the Casualty and the remainder returned. Landlord shall not have the common areas of the home remodeled, or any construction performed which may interfere with the Tenant's Personal Privacy & Peaceful Enjoyment of the Leased Property, without first obtaining the written consent of both Tenants to perform such work. |
| 19. | SALE | If the Landlord sells this property, or places it up for sale, whether voluntarily or by court order, or in any way the ownership of this property or rights to sell this property are conveyed to another party, whether by foreclosure or other legal process, during the term of Tenancy per this Agreement, the assuming, owning, or controlling party, and their agents/assigns must continue to comply in-full with the terms of this Lease Agreement, until such a time as the term of this Lease has been fulfilled, and the Tenant has been given proper legal notice of any changes desired by the new owners, or to vacate the Leased Property, with plenty of time to find a comparable rental, in both cost and location, as well as to make that move smoothly, without any abrupt disturbances, to their life. |
| | | Landlord herein promises and assures Tenant, that under absolutely NO circumstances, will the Tenant be requested or required to move-out, without receiving at the very least, 90-Days of written notice in advance, of such a request or demand. This is the absolute legal minimum required by both Tennessee law and Federal laws, which the Tenant can take security in, despite any other instability in the marital status between the property owners. |
| 20. | DEFAULT | Written notice of nonpayment of Rent by Landlord is hereby waived. In the event that Rent is not paid within SEVEN DAYS of the due date, Landlord may terminate this Lease Agreement immediately and proceed with a detainer action for possession of the Leased Property. |
| | | Abandonment by Tenant is considered a default under the terms of this Lease Agreement. |
| 21. | LEGAL FEES & COLLECTIONS | Tenant agrees to pay all reasonable attorneys' fees together with any court costs and expenses which Landlord incurs in any action for breach of this Lease Agreement or failure to pay Rent or other monies due, provided the judgment is in the Landlord's favor. Alternately, Landlord agrees to pay all reasonable attorneys' fees together with any court costs and expenses which Tenant incurs in any action for breach of this Lease Agreement by Landlord, for failure to honor or complete the full-term of this Lease, or for opening/entering the Tenant's bedroom for any reason without Tenant's prior permission in writing, on a case-by-case basis. Both Landlord and Tenant reserve the right, to turn any delinquent debts owed to themselves, by the other party, over to a Collection Agency or other such organization which may adversely affect the debtor's credit rating and ability to qualify for credit in the future. |
| 22. | NO WAIVER | Any failure of Landlord to insist upon the strict and prompt performance of any covenants or conditions of this Lease Agreement shall not operate as a waiver of any such Lease Agreement provision or of Landlord's right to insist on a prompt compliance in the future of such covenant or condition, and shall not prevent a subsequent action by Landlord for any future violation. No provision, covenant or condition of this Lease Agreement may be waived by Landlord unless such waiver is in writing and signed by Landlord. |
| 23. | SAVINGS CLAUSE | If any provision of this Lease Agreement is determined in a court of law to be in conflict with any Federal, State or Local Statute or Ordinance, the nullity of that specific provision shall not affect the other provisions of this Lease Agreement which can be given effect in the absence of the nullified provision, and to this end the provisions of this Lease Agreement are severable. |
| 24. | LEAD BASED [PAINT DISCLOSURE] | Housing built before 1978 may contain lead-based paint. This property was built in 1977 so it could contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. The Landlord has no knowledge, records, or reports of lead-based paint and/or lead-based paint hazards in the building. In compliance with Federal guidelines, Landlord has provided to Tenant a printed copy of the EPA pamphlet "Protect Your Family From Lead In Your Home", which Tenant herein acknowledges receipt of. Additional copies are available online at http://www.hud.gov. |

**PLAINTIFF'S EXHIBIT K-10**



25. **PERSONAL INTEREST DISCLOSURE** — Tenant has been advised that Landlord is the OWNER of this property, and is also a LICENSED real estate professional in the State of Tennessee (license is currently in "retirement" status), acting on his own behalf and in his own best interests, to manage and rent this property. Landlord is NOT assuming any agency relationship with the Tenant.

**THIS IS A LEGALLY BINDING CONTRACT.** (Please seek legal counsel before signing, if you don't fully understand.)

**TENANT HEREBY ACKNOWLEDGES** THAT HE HAS READ AND UNDERSTANDS THIS "LEASE AGREEMENT". NO ORAL AGREEMENTS HAVE BEEN MADE WHICH CONFLICT WITH THE CONTENTS HEREIN. TENANT UNDERSTANDS THAT ALL PROVISIONS OF THIS LEASE AGREEMENT ARE MADE FOR THE PURPOSE OF PROTECTING THE LEASED PROPERTY AND PROVIDING FOR THE SAFETY AND WELL BEING OF ALL OCCUPANTS. BOTH LANDLOD AND TENANT, LEGALLY AGREE AND AFIRM, BY SIGNING BELOW, THAT THEY WILL, IN ALL RESPECTS, COMPLY WITH THE TERMS AND PROVISIONS OF THIS LEASE AGREEMENT, HEREIN STATED.

| Jeffrey R. Fenton | ▮▮▮▮▮ Garcia |
|---|---|
| LANDLORD | TENANT (Print Name) |
| *[signature]* | *[signature]* |
| LANDLORD SIGNATURE | TENANT SIGNATURE |
| 4/9/2019   3:30 PM | 4/9/2019   3:30 pm |
| BINDING AGREEMENT DATE   TIME | BINDING AGREEMENT DATE   TIME |

**PLAINTIFF'S EXHIBIT K-11**



**REGIONS**  CASHIER'S CHECK  ████8062
04/09/2019

Jesse M Garcia / Rent
Purchaser / Purchased For

VOID

SIX HUNDRED FIFTY DOLLARS AND 00 CENTS

PAY TO THE ORDER OF: Jeff Fenton     $650.00   Fee   $0.00

NOT NEGOTIABLE
CUSTOMER COPY

Regions Bank

Branch TN05102
CC102053

---

**REGIONS**  CASHIER'S CHECK   61-1/620   ████8062
04/09/2019

████Garcia / Rent
Purchaser / Purchased For

SIX HUNDRED FIFTY DOLLARS AND 00 CENTS

PAY TO THE ORDER OF: Jeff Fenton     $650.00

*Authorized Signature*    Branch TN05102
CC102053

Regions Bank

⑈55052⑈



PLAINTIFF'S EXHIBIT K-12




## Check Details

| | |
|---|---|
| Account: | 360 Checking ...5855 |
| Available Amount: | $650.00 |
| Check Amount: | $650.00 |
| Deposit Date: | Tuesday, April 9, 2019 |



**PLAINTIFF'S EXHIBIT K-13**