**FILED - LN**
August 26, 2024 1:18 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: __DJW__ /___   SCANNED BY 60 /920

# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MICHIGAN

JEFFREY RYAN FENTON,

PLAINTIFF

v.

CASE NO. 1:23-CV-01097

VIRGINIA LEE STORY ET AL.,

DEFENDANTS

## MEMORANDUM OF LAW REGARDING VOID TENNESSEE COURT ORDERS[1,2]

### Disqualification for Bias: Tenn. R. Sup. Ct. 2.11 and 28 U.S.C. § 455(a)
### Coercion or Persuasion of Witness — Tenn. Code § 39-16-507(a)(3)

### FACTS AND BACKGROUND

1.     Defendants orchestrated a scheme[3] by which Plaintiff's ex-wife, Ms. Fenton, had

secretly defaulted upon their mortgage payments and then filed for bankruptcy[4] without notice to

Plaintiff.[5]  Then they motioned for the forced sale of the marital residence[6] in the Williamson

County Chancery Court in Tennessee (hereinafter "Chancery Court"), where the case was

"fixed[7]," rather than seeking the sale of the marital residence in the U.S. Bankruptcy Court for

---

[1]   Citations to the court record in this lawsuit will be notated without the case name or number, using the starting ECF Number, followed by both the beginning and ending PageID, which is abbreviated as "PID."

[2]   This document is a revised version of the document titled, "Memorandum of Law Regarding Court Actions in Tennessee", filed in ECF 21, PID.2781-2817 on 3/25/2024, and replaces that document in its entirety. This revision was created to expound upon the subject matter, add important clarification, and correct errors, while naming it more accurately to reflect the contents of this document.

[3]   ECF 59, PID.4724 | https://rico.jefffenton.com/evidence/1-23-cv-01097_fenton-vs-story-wilco-rico-deed-fraud-intro.mp4
      ECF 59, PID.4723-4735 | https://rico.jefffenton.com/evidence/1-23-cv-01097_fenton-vs-story-wilco-rico-video-declaration.pdf

[4]   ECF 19-2, PID.2632-2646 | https://rico.jefffenton.com/evidence/2019-04-26_ausbrooks-story-fraudulent-bk-petition.pdf

[5]   ECF 52, PID.4208-4210 | https://rico.jefffenton.com/evidence/2022-03-15_ustp-bk-fraud-referral-confirmed-no-notice.pdf

[6]   ECF 19-5, PID.2664-2667 | https://rico.jefffenton.com/evidence/2019-07-17_chancery-motion-to-sell-marital-residence.pdf

[7]   ECF 1-1, PID.34-47 | https://rico.jefffenton.com/evidence/2022-02-01_fenton-affidavit-of-story-binkley-fraud-on-court.pdf

the Middle District of Tennessee[8] (hereinafter "Bankruptcy Court") as was required by federal law[9].

2.    The Chancery Court usurped—or the Bankruptcy Court abdicated—jurisdiction[10] over the marital home, in violation of 28 U.S. Code § 1334(e)(1),[11] which states: "The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction—of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate."

3.    Furthermore, the motion to sell the marital residence was "core" to the bankruptcy, which merely reinforces the fact that a federal court was required to hear the proposed property deprivation in order to provide Plaintiff and his two lawful tenants/roommates with "adequate protection" throughout the bankruptcy.

4.    In addition to that, the bankruptcy action was on its face fraudulent[12], with false details about Plaintiff's[13] and Ms. Fenton's property interests[14] in the marital residence, which also fraudulently concealed Ms. Fenton's domestic support obligations[15] that previously existed[16], Plaintiff actively needed, and had been agreed upon and promised into the future[17].

---

[8]    ECF 1-8, PID.74-478

[9]    ECF 38, PID.3445-3496 | https://rico.jefffenton.com/evidence/2019-04-26_bankruptcy-crimes-rules-and-laws-violated.pdf

[10]    ECF 1-34, PID.1882 | See e.g., In re Palmer, 78 B.R. 402, 405-06 (Bankr. E.D.N.Y. 1987)

[11]    https://www.law.cornell.edu/uscode/text/28/1334

[12]    ECF 19-2, PID.2632-2646 | https://rico.jefffenton.com/evidence/2019-04-26_ausbrooks-story-fraudulent-bk-petition.pdf

[13]    ECF 19-1, PID.2624-2628 | https://rico.jefffenton.com/evidence/2011-04-29_1986-sunnyside-brentwood-tn-deed.pdf

[14]    ECF 19-1, PID.2620-2623 | https://rico.jefffenton.com/evidence/2011-04-29_fenton-marital-residence-tenancy-by-entirety.pdf

[15]    ECF 37, PID.3398-3443 | https://rico.jefffenton.com/evidence/fenton-family-finances-property-education-experience.pdf
         ECF 27, PID.3260-3275 | https://rico.jefffenton.com/evidence/2018-07-12_arons-and-associates-divorce-planning.pdf

[16]    ECF 43, PID.3720-3721 | https://rico.jefffenton.com/evidence/2018-05-02_family-budget-living-apart.pdf

[17]    ECF 1-26, PID.1317-1318 | https://rico.jefffenton.com/evidence/2018-10-27_verbal-settlement-agreement.pdf
         ECF 44, PID.3773 | https://rico.jefffenton.com/evidence/2019-01-08_wifes-claims-about-alimony-and-lawyers.pdf

5.     Furthermore, on Ms. Fenton's Chapter-13 bankruptcy petition[18] (Case: 3:19-bk-02693), Doc 1, Page 27 of 50, entered on April 26, 2019, paragraph 13 asked, "Do you expect an increase or decrease within the year after you file this form?"   The choice checked on Ms. Fenton's bankruptcy petition was "No,"[19] but that is false and is further evidence of the bankruptcy fraud planned and executed by a conspiracy[20] between her two teams of counsel, working in state and federal courts concurrently.

6.     On August 30, 2018, during Plaintiff's and Ms Fenton's prior negotiations for an amicable divorce with collaborative divorce professional Sandy Arons[21], MBA, Ms. Fenton sent Plaintiff and Ms. Arons an email[22] stating in part, "Our office lease is up in March 2020, and Ken really wants to retire, and so there's no telling what my job will be after that."

7.     This was the triggering event for Ms. Fenton's scheduled "financial demise," planned along with her bankruptcy by her counsel in both state and federal courts to avoid paying Plaintiff the $1,750[23] in "transitional alimony" for a duration of six years, as had been previously agreed.

8.     Any action[24] planted squarely inside a fraudulent action[25] in another court, especially for the express purpose of intentionally deceiving both courts while circumventing the rights and protections required to be obeyed in that court[26] prior to the deprivation of the

---

[18]   ECF 45, PID.3835-3915 | https://rico.jefffenton.com/evidence/2019-04-26_wifes-ch13-petition-3-19-bk-02693.pdf

[19]   ECF 47, PID.3982-3984 | https://rico.jefffenton.com/evidence/2019-08-14_bankrupcy-planned-for-when-employer-retires.pdf

[20]   ECF 53, PID.4258-4349 | https://rico.jefffenton.com/evidence/2024-03-13_irrefutable-proof-of-criminal-conspiracy.pdf

[21]   ECF 27, PID.3260-3275 | https://rico.jefffenton.com/evidence/2023-12-31_declaration-about-arons-and-associates.pdf

[22]   ECF 43, PID.3725 | https://rico.jefffenton.com/evidence/2018-08-30_wife-notifies-about-employers-retirement.pdf

[23]   ECF 1-26, PID.1317-1318 | https://rico.jefffenton.com/evidence/2018-10-27_verbal-settlement-agreement.pdf

[24]   ECF 19-5, PID.2664-2667 | https://rico.jefffenton.com/evidence/2019-07-17_chancery-motion-to-sell-marital-residence.pdf

[25]   ECF 19-2, PID.2632-2646 | https://rico.jefffenton.com/evidence/2019-04-26_ausbrooks-story-fraudulent-bk-petition.pdf

[26]   ECF 38, PID.3445-3496 | https://rico.jefffenton.com/evidence/2019-04-26_bankruptcy-crimes-rules-and-laws-violated.pdf

property, is fraud sowed upon fraud and can beget nothing other than fraud compounded.

9.    The reason certain defendants chose this route was because they wanted to force the sale of the marital residence, but Plaintiff had lawful possession of the property and was not at all agreeable with selling it.    Plaintiff's life, shelter, income, and ability to rebuild his independence and recover after their divorce, as well as his ability to maintain and enjoy a lifestyle to which he had both earned and become accustomed, along with any realistic possibility of him ever being able to retire, all hinged upon Plaintiff retaining—not relinquishing—his investments in the marital residence.[27]

10.    The Chancery Court was specifically forbidden from exercising jurisdiction over the property[28] because it was included in a federal bankruptcy estate[29] that instantly formed the moment the bankruptcy was filed[30], which happened thirty-nine days before any action was filed in Chancery Court[31] and ninety-seven days before Plaintiff's first hearing before defendant Binkley.

11.    Plaintiff and his tenants[32] were due notice and a hearing[33] in federal court per the Federal Rules of Bankruptcy Procedure (Rule 7001) and subsequent federal bankruptcy laws.[34]

12.    Had this been done legally, it would have ultimately led to the bankruptcy or

---

[27]    ECF 42, PID.3631-3657 | https://rico.jefffenton.com/evidence/2011-04-29_1986-sunnyside-premarital-assets-invested.pdf
ECF 42, PID.3665-3676 | https://rico.jefffenton.com/evidence/1986-sunnyside-property-improvement-highlights.pdf

[28]    ECF 1-34, PID.1882 | See e.g., In re Palmer, 78 B.R. 402, 405-06 (Bankr. E.D.N.Y. 1987)
11 U.S.C. § 541(a)(1) | https://rico.jefffenton.com/evidence/2019-04-26_bankruptcy-crimes-rules-and-laws-violated.pdf

[29]    https://www.law.cornell.edu/uscode/text/11/541

[30]    ECF 1-8, PID.74-76 | https://rico.jefffenton.com/evidence/2019-04-26_fed-bankrupcy-filing-date-3-19-bk-02693.pdf

[31]    ECF 1-17, PID.641 | https://rico.jefffenton.com/evidence/2019-06-04_tn-chancery-divorce-filing-date-48419b.pdf

[32]    ECF 45, PID.3800-3807 | https://rico.jefffenton.com/evidence/2019-03-26_fenton-sunnyside-roommate-lease-merriman.pdf
ECF 45, PID.3808-3813 | https://rico.jefffenton.com/evidence/2019-04-09_fenton-sunnyside-roommate-lease-garcia.pdf

[33]    11 U.S.C. § 363 (b)(1), 11 U.S.C. § 363 (e), 11 U.S.C. § 363 (h)(3), and 11 U.S.C. § 1206, to name a few.

[34]    ECF 38, PID.3445-3496 | https://rico.jefffenton.com/evidence/2019-04-26_bankruptcy-crimes-rules-and-laws-violated.pdf

district court requiring the bankruptcy trustee to abandon the marital residence and remove it from Ms. Fenton's bankruptcy estate as a burdensome asset[35].

13.      Per 11 U.S.C. § 363[36] - Use, sale, or lease of property, subsection (h) "Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or <u>tenant by the entirety, only if— (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners</u>;" (emphasis added). Under the circumstances, this was impossible.

14.      The interests of both Plaintiff[37] and his tenants[38] outweighed any potential benefit to the bankruptcy estate. The home auctioned only for the amount of the mortgages, plus auctioning and closing costs. Plaintiff was able and willing to bring the mortgages current and keep them current with the help of his family, but defendant Story refused, saying that it was "too far along in the bankruptcy." That was a violation of due process as well as federal bankruptcy laws—and ultimately both state and federal constitutions.

---

[35]   https://www.law.cornell.edu/uscode/text/11/554 | 11 U.S. Code § 554 - Abandonment of Property of the Estate: (a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate. (b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

[36]   ECF 1-34, PID.1898, PID.1903-1906

[37]   ECF 1-12, PID.479-596 | https://rico.jefffenton.com/evidence/2019-10-29_tn-wilco-deed-fraud-ada-financial-exploitation.pdf

[38]   ECF 45, PID.3808-3813 | https://rico.jefffenton.com/evidence/2019-04-09_fenton-sunnyside-roommate-lease-garcia.pdf
     ECF 45, PID.3800-3807 | https://rico.jefffenton.com/evidence/2019-03-26_fenton-sunnyside-roommate-lease-merriman.pdf

https://rico.jefffenton.com/evidence/2024-08-22_memorandum-of-law-about-void-tn-court-orders.pdf

**Adversary Proceeding in Federal District or Bankrupcy Court**

The Trustee was <u>required</u> to provide Plaintiff and his two tenants/roommates with <u>notices</u> & <u>hearings</u> in <u>federal</u> court. Plaintiff had the following valid property interests: legal title, ownership, controlling, possession/enjoyment/use, beneficial, equitable, exclusion, investment, income, future. Plaintiff's tenants had secure one-year leasehold interests.

### Rule 7001. Scope of Rules of Part VII

An adversary proceeding is governed by the rules of this Part VII. The following are adversary proceedings:

(1) a proceeding to recover money or property, other than a proceeding to compel the debtor to deliver property to the trustee, or a proceeding under §554(b) or §725 of the Code, Rule 2017, or Rule 6002;

(2) a proceeding to determine the validity, priority, or extent of a lien or other interest in property, but not a proceeding under Rule 3012 or Rule 4003(d);

(3) a proceeding to obtain approval under §363(h) for the sale of both the interest of the estate and of a co-owner in property;

(4) a proceeding to object to or revoke a discharge, other than an objection to discharge under §§727(a)(8),[1] (a)(9), or 1328(f);

(5) a proceeding to revoke an order of confirmation of a chapter 11, chapter 12, or chapter 13 plan;

(6) a proceeding to determine the dischargeability of a debt;

(7) a proceeding to obtain an injunction or other equitable relief, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for the relief;

(8) a proceeding to subordinate any allowed claim or interest, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for subordination;

(9) a proceeding to obtain a declaratory judgment relating to any of the foregoing; or

(10) a proceeding to determine a claim or cause of action removed under 28 U.S.C. §1452.

**§ 363. Use, sale, or lease of property**    **skipped**⟶

(b)(1) The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate, trustee may not sell or lease personally identifiable information to any person unless—

(e) Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest. **(skipped)**

(f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest; **(failed)**

(2) such entity consents; **(failed)**

(g) Notwithstanding subsection (f) of this section, the trustee may sell property under subsection (b) or (c) of this section free and clear of any vested or contingent right in the nature of dower or curtesy.

(h) Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if— **(failed)**

(1) partition in kind of such property among the estate and such co-owners is impracticable;

(2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;

(3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and **(failed)**

---

15.    The Chancery Court only acted as though they heard and decided one issue allegedly based upon the merits[39], that being the "MOTION TO SELL THE MARITAL RESIDENCE[40]" filed by defendants Story and Yarbrough on July 17, 2019.

---

[39] ECF 19-6, PID.2669-2672 | https://rico.jefffenton.com/evidence/2019-08-01_chancery-court-order-with-counsel.pdf

[40] ECF 19-5, PID.2664-2667 | https://rico.jefffenton.com/evidence/2019-07-17_chancery-motion-to-sell-marital-residence.pdf
ECF 1-17, PID.692-702 | https://rico.jefffenton.com/evidence/2019-07-29_response-to-wifes-motion-to-sell-residence.pdf

Initials: ____

Case 1:23-cv-01097-PLM-RSK (FENTON v. STORY et al.)

16.     The other filings by defendant Story[41], including and/or leading to the divorce decree[42] (whereby they refused to even begin discovery) and the order of protection[43], which was filed in bad faith, for ulterior purposes[44], and with false claims, leveraged an "unsigned personal testimony[45]" allegedly by Ms. Fenton.

17.     Plaintiff was never notified that the mortgages had entered default[46], nor that Ms. Fenton had filed for bankruptcy.[47]   Defendant Story also synchronized events to abruptly terminate all spousal support previously paid to Plaintiff immediately upon service of process for the divorce.   Defendants Ausbrooks and Story concealed Ms. Fenton's voluntary role as the family's primary breadwinner[48] from 2011-2019 along with the fact that she had paid spousal support[49] and promised to pay substantial alimony[50] after the divorce.   This fact was withheld from both courts, while counsel colluded in bad faith and falsified her bankruptcy filing.

---

[41]   ECF 19-12, PID.2695-2704 | https://rico.jefffenton.com/evidence/2019-10-21_fraudulent-final-affidavit-by-virginia-story.pdf

[42]   ECF 19-13, PID.2706-2709 | https://rico.jefffenton.com/evidence/2019-10-21_chancery-final-decree-of-divorce.pdf

[43]   ECF 54-1, PID.4359 | https://rico.jefffenton.com/evidence/2019-06-20_wcso-exparte-order-of-protection-service.mp3
     ECF 1-31, PID.1794-1873 | https://rico.jefffenton.com/evidence/2019-10-21_order-of-protection-as-illegal-prior-restraint.pdf

[44]   ECF 58-1, PID.4573-4626 | https://rico.jefffenton.com/evidence/2014-09-18_tn-stop-false-allegations-for-protective-orders.pdf
     ECF 54-1, PID.4368 | https://rico.jefffenton.com/evidence/2021-03-21_knox-news-binkley-threatens-prior-restraints.mp4
     ECF 1-14, PID.597-640 | https://rico.jefffenton.com/evidence/2021-03-21_knox-news-binkley-threatens-prior-restraints.pdf
     ECF 52, PID.4174-4179 | https://www.knoxnews.com/story/news/crime/2021/03/22/tennessee-appeals-court-pulls-judge-michael-binkley-casey-moreland-brian-manookian/4450016001/
     ECF 54-1, PID.4360 | https://rico.jefffenton.com/evidence/2017-04-03_wtvf-moreland-tried-to-plant-drugs-on-witness.mp4
     ECF 43, PID.3698-3701 | https://rico.jefffenton.com/evidence/2017-04-03_nc5-moreland-tried-to-plant-drugs-on-witness.pdf
     ECF 54-1, PID.4362 | https://rico.jefffenton.com/evidence/2017-04-03_wtvf-undercover-fbi-video-of-casey-moreland.mp4

[45]   ECF 1-17, PID.661-662 | https://rico.jefffenton.com/evidence/2019-06-20_wifes-false-unsigned-personal-testimony-for-op.pdf

[46]   ECF 43, PID.3720-3721 | https://rico.jefffenton.com/evidence/2018-04-23_wife-locked-plaintiff-out-of-financial-accounts.pdf

[47]   ECF 52, PID.4208-4210 | https://rico.jefffenton.com/evidence/2022-03-15_ustp-bk-fraud-referral-confirmed-no-notice.pdf

[48]   ECF 37, PID.3398-3443 | https://rico.jefffenton.com/evidence/fenton-family-finances-property-education-experience.pdf

[49]   ECF 43, PID.3720-3721 | https://rico.jefffenton.com/evidence/2018-05-02_family-budget-living-apart.pdf

[50]   ECF 1-26, PID.1317-1318 | https://rico.jefffenton.com/evidence/2018-10-27_verbal-settlement-agreement.pdf
     ECF 27, PID.3260-3275 | https://rico.jefffenton.com/evidence/2023-12-31_declaration-about-arons-and-associates.pdf

18.     Plaintiff was forced to release his counsel[51] and proceed *pro se* after exhausting $9,500 to primarily defend against malicious predatory claims,[52] while the actual divorce itself had yet to proceed in any meaningful way and was instead never actually litigated according to law.

19.     An alleged violation of the "*Ex parte* Order of Protection" related to an emotional post Plaintiff made on Facebook, which he quickly deleted after being notified by his mother it could be misinterpreted, was leveraged by certain defendants to rush Plaintiff back into Chancery Court.

20.     In court on August 29, 2019, defendant Story stated, "Your Honor, the motion that we are here on today is a motion for violation of the order of the court that was August 14th of '19... I am not here today to argue about that motion necessarily. The more pressing matter... was the deadlines for getting this house sold."

21.     Defendant Story continued, "What is obvious, Your Honor, is you're going to have to set a date for him to be out... he's got to be out for them to get this place ready to go... I have seen correspondence where he said September 1st." Defendant Story actually proposed September 1st in an email with Plaintiff's prior counsel. Plaintiff never mentioned or agreed to such. "Now he's saying he can't. So I would suggest September 3rd, which is next Tuesday. And I would like the Order to reflect that the Williamson County sheriff's department[53] will accompany him... Off the property. And I don't think he needs to take any property."

---

[51]  ECF 47, PID.3978-3980 | https://rico.jefffenton.com/evidence/2019-08-02_attorneys-miller-duke-retainer-exhausted.pdf

[52]  ECF 47, PID.3960-3962 | https://rico.jefffenton.com/evidence/2019-07-26_attorney-gates-failed-to-perform.pdf

[53]  ECF 52, PID.4225-4228 | https://rico.jefffenton.com/evidence/2023-12-13_wcso-racketeering-official-oppression.pdf

22. Also, during the hearing on August 29, 2019[54], in Chancery Court, defendants Story and Binkley collaborated to issue an order wrongfully evicting Plaintiff from his home, with only a five-day notice, while depriving him of taking his personal property. Defendant Story fraudulently claimed, "if you let him take anything out at this point it's going to be sold and he's dissipating marital assets, which would be in violation of the restraining order." (Transcript page 6, lines 20-23).

23. This was clearly false, as defendant Story knew, since Plaintiff had emailed[55] her the night prior to correct those false claims, which she had voiced to his prior counsel, in hopes of preventing more defamatory fraud upon the court by officers of the court.

24. In fact, defendant Story's Complaint for Divorce[56] filed in Chancery Court, docket #48419B, on June 4, 2019, stated in section IV: "Plaintiff would show that <u>the parties have no assets other than personal property which has been divided</u> with the exception of a few items. Husband and Wife have lived separately since April 2018" (emphasis added, Transcript of Evidence, Page 2, Section 4).

---

**IV.**

Plaintiff would show that the parties have no assets other than personal property which has been divided with the exception of a few items. Husband and Wife have lived separately since April 2018.

**Wife's Complaint for Divorce, Page 2, Section IV**
**Case 1:23-cv-01097-PLM-RSK, ECF 1-17, PageID.648**

---

[54] ECF 23, PID.2863-2920 | https://rico.jefffenton.com/evidence/2019-08-29_chancery-hearing-transcript-audio-markers.pdf
  ECF 23-4, PID.2920 | https://rico.jefffenton.com/evidence/2019-08-29_chancery-hearing-audio-recording.mp3

[55] ECF 1-28, PID.1547-1554

[56] ECF 46, PID.3932-3939 | https://rico.jefffenton.com/evidence/2019-06-04_wifes-complaint-for-divorce-48419b.pdf

25.     Every nagging attempt that defendant Story made to convert Plaintiff's personal property back into marital property—while Ms. Fenton's personal property was already removed and separated—was purely fraud.

26.     Furthermore, defendant Story had twice provided lists to Plaintiff's prior counsel—once in an email[57] dated August 2, 2019, and a second time in a letter[58] on August 23, 2019, after the scheduled walk through ordered by the court—containing the personal property that her client wanted and that still remained at the marital residence.

27.     There was only *one* marital property item of contention, which was a three-year-old television costing $1,000 when it was purchased new. Nothing was sold within the statutory injunction since the divorce had been filed[59], as Plaintiff had already informed defendant Story, yet she had no interest in the truth. This was a flagrant violation of defendant Story's oath of office, fraud upon the court, obstruction of justice, financial exploitation of vulnerable person (Tenn. Code § 39-15-502), destruction of and tampering with governmental records (Tenn. Code § 39-16-504), and coercion or persuasion of witness (Tenn. Code § 39-16-507).

28.     Defendant Story used this lie[60] with the assistance of defendant Binkley to forcefully take Plaintiff's home[61] and subsequently render him destitute and homeless, knowing that this would force his geographic displacement nearly 600 miles away in the State of Michigan,

---

[57]  ECF 1-35, PID.1955-1956

[58]  ECF 1-35, PID.1958-1959

[59]  ECF 57-1, PID.4394-4404 | https://rico.jefffenton.com/evidence/2019-08-30_emergency-attempt-to-correct-court-order.pdf
ECF 54-1, PID.4361 | https://rico.jefffenton.com/evidence/2019-08-30_judgment-wrong-emergency-call-to-court.mp3
ECF 57-1, PID.4405-4413 | https://rico.jefffenton.com/evidence/2019-08-30_notified-story-beeler-false-claims-in-court-order.pdf
ECF 57-1, PID.4419-4441 | https://rico.jefffenton.com/evidence/2019-09-20_halt-confronting-criminal-misconduct-by-story.pdf
ECF 57-1, PID.4452-4459 | https://rico.jefffenton.com/evidence/2019-09-23_notified-binkley-false-claims-in-storys-order.pdf

[60]  ECF 57-1, PID.4459 | https://rico.jefffenton.com/evidence/2019-08-30_story-lied-when-notified-false-claims-in-order.pdf

[61]  ECF 19-13, PID.2706-2709 | https://rico.jefffenton.com/evidence/2019-10-21_chancery-final-decree-of-divorce.pdf

Initials: _____

https://rico.jefffenton.com/evidence/2024-08-22_memorandum-of-law-about-void-tn-court-orders.pdf     Case 1:23-cv-01097-PLM-RSK (FENTON v. STORY et al.)

to obtain emergency replacement shelter[62] and provisions from his elderly mother.

29.    Defendant Story's claims were a direct departure from the dialog during the August 1, 2019, hearing[63], along with the subsequent court order.[64] Prior to needing to release his counsel due to financial constraints, Plaintiff was allowed to remain in the marital residence until the auction and to be provided both replacement housing and the money necessary to move.

30.    In fact, the "Ex Parte Order Of Protection Extended Pending Final Hearing And Order Granting Motion To Sell Marital Residence" from the August 1, 2019, hearing, filed for entry on August 14, 2019, clearly states the following (Chancery Court #48419B, Technical Record, Pages 110-112): "The attorneys for the parties will agree upon a date and time for Wife to walk through the home, since Wife has not been in the house since March 2018, to identify items of personal property and to inspect the premises. Wife will provide a list to Husband within ten (10) days from August 1, 2019, through their counsel, of the items of personal property that she would like to obtain and the parties will either agree upon the same or, if they cannot agree, then Wife may file a Motion with the Court to choose the items on her list. Husband will take such actions as necessary to move items of personal property that he would like to retain and tag, price or do whatever steps are necessary to sell the remaining items of personal property. The remaining items at the house that Husband does not take and Wife does not take shall be sold at auction."

31.    Therefore, every party from the Tennessee appellate court[65] to the administrative

---

[62]  ECF 1-17, PID.692-702 | https://rico.jefffenton.com/evidence/2019-07-29_response-to-wifes-motion-to-sell-residence.pdf

[63]  ECF 22, PID.2818-2862 | https://rico.jefffenton.com/evidence/2019-08-01_chancery-hearing-transcript.pdf

[64]  ECF 19-6, PID.2669-2672 | https://rico.jefffenton.com/evidence/2019-08-01_chancery-court-order-with-counsel.pdf

[65]  ECF 57-1, PID.4502-4526 | https://rico.jefffenton.com/evidence/2019-12-08_tn-coa-issues-proposed-to-be-raised-in-appeal.pdf
      ECF 1-27, PID.1370-1664 | https://rico.jefffenton.com/evidence/2021-01-19_fenton-motion-to-escalate-to-tnsc.pdf

office[66] should have easily discerned the foul-play[67] by defendants Story and Binkley since Plaintiff expressly advised them of such and as evidenced in his claims, motions[68], and requests for help[69], made to them. Plaintiff provided both transcripts of evidence along with the subsequent court orders, while clearly articulating the discrepancies. Yet despite Plaintiff's damages and the fact that Plaintiff would remain destroyed[70] for many years to come due to the fraudulent six-year, out-of-jurisdiction, bad faith[71], *default* "Order of Protection," no court, judge, department, or party chose to intervene and mitigate Plaintiff's damages, or the cost of the entire suit for the state and all parties herein. They likewise refused their supervisory duties over lower court judges per the judicial canons, violated their oaths of office, and failed to correct or report both judicial and attorney misconduct[72], which is the responsibility of every bar member.

32. During the August 29, 2019, hearing[73], Plaintiff asked, "Just as a question, were we saying that I disobeyed the Court order?" To which defendant Binkley answered, "No, no,

---

[66]  ECF 26-1, PID.3259 | https://rico.jefffenton.com/evidence/2020-02-13_tnsc-aoc-ada-gc-john-coke-phone-call.mp3
    ECF 26, PID.3227-3258 | https://rico.jefffenton.com/evidence/2020-02-13_tnsc-aoc-ada-gc-john-coke-transcript.pdf
    ECF 57-1, PID.4528-4535 | https://rico.jefffenton.com/evidence/2020-10-05_report-ada-abuse-misconduct-to-coke-hivner.pdf
    ECF 57-1, PID.4551-4557 | https://rico.jefffenton.com/evidence/2020-12-29_tnsc-bpr-complaint-against-story-binkley-etc.pdf
    ECF 1-29, PID.1665-1681 | https://rico.jefffenton.com/evidence/2021-01-19_reported-misconduct-sought-help-tnsc-aoc-bpr.pdf
    ECF 1-29, PID.1699-1703

[67]  ECF 1-1, PID.34-47 | https://rico.jefffenton.com/evidence/2022-02-01_fenton-affidavit-of-story-binkley-fraud-on-court.pdf
    ECF 54-1, PID.4371 | https://rico.jefffenton.com/evidence/2021-12-02_fbi-mark-shafer-binkley-story-corruption.mp3
    ECF 54-1, PID.4371 | https://rico.jefffenton.com/evidence/2021-12-02_fbi-mark-shafer-binkley-story-corruption.pdf

[68]  ECF 50, PID.4082-4086 | https://rico.jefffenton.com/evidence/2020-10-16_coa-emergency-motion-reporting-misconduct.pdf
    ECF 51, PID.4088-4135 | https://rico.jefffenton.com/evidence/2020-10-28_motion-to-supplement-and-correct-the-record.pdf

[69]  ECF 1-38, PID.2032-2045 | https://rico.jefffenton.com/evidence/2020-07-08_tnsc-coa-ada-request-for-modification.pdf

[70]  ECF 1-28, PID.1658 | https://rico.jefffenton.com/evidence/2021-01-19_tnsc-immunity-disorder-strike-expunge-op.pdf
    ECF 1-2, PID.48-63 | https://rico.jefffenton.com/evidence/2020-10-13_affidavit-of-mother-marsha-ann-fenton.pdf

[71]  ECF 19-12, PID.2695-2704 | https://rico.jefffenton.com/evidence/2019-10-21_fraudulent-final-affidavit-by-virginia-story.pdf

[72]  ECF 33, PID.3310-3391 | https://rico.jefffenton.com/evidence/2019-08-01_hearing-professional-and-judicial-misconduct.pdf
    ECF 41, PID.3570-3608 | https://rico.jefffenton.com/evidence/tennessee-rules-of-judicial-and-professional-conduct.pdf

[73]  ECF 23, PID.2863-2920 | https://rico.jefffenton.com/evidence/2019-08-29_chancery-hearing-transcript-audio-markers.pdf
    ECF 23-4, PID.2920 | https://rico.jefffenton.com/evidence/2019-08-29_chancery-hearing-audio-recording.mp3

we don't have anything like that really in front of us..." (Transcript page 11, lines 2-6)

33.     Once Plaintiff was forced to represent himself *pro se*, everything changed, while defendants Story and Binkley took turns "tag-teaming" him.

34.     Plaintiff asked what he had "done wrong to receive that kind of treatment," informing the Chancery Court that his "wife had two months to move out." (Transcript page 17, lines 4-6).

35.     Defendant Binkley responded, "Sir, we have already talked about all that. We had a previous hearing. We have a previous Court Order. You're representing yourself. You're assuming to know everything we've already talked about. I'm not going to go over it with you and spend four hours –" (Transcript page 17, lines 7-12).

36.     Plaintiff reminded defendant Binkley, "On the last Court Order[74] you said that I could take my stuff with me after the ten-day walkthrough. That's what your last Court Order said, and I would like to be able to do that" (Transcript page 18, lines 18-21).

37.     Defendant Binkley demanded, "...Your personal items, sir. You're not stupid. Listen, please. Your personal items are your clothes, your personal jewelry, and that's it." (Transcript page 19, lines 2-5).

38.     Plaintiff asked, "My bed or my furniture?" (Transcript page 19, line 6).

39.     Defendant Binkley demanded, "No, sir. I'm going to say it for the third time. No furniture, no furnishings, no nothing." (Transcript page 19, lines 2-5).

40.     Again, Plaintiff attempted to correct defendant Binkley: "That's not what you said in the last order" (Transcript page 19, lines 10-11).

---

[74]   ECF 19-6, PID.2669-2672 | https://rico.jefffenton.com/evidence/2019-08-01_chancery-court-order-with-counsel.pdf
       ECF 22, PID.2818-2862 | https://rico.jefffenton.com/evidence/2019-08-01_chancery-hearing-transcript.pdf

41.    Defendant Binkley proceeded to chastise Plaintiff, "Sir, you're not paying attention. You're not listening to what has happened. You're not paying attention to anything. And I'm not going to spend three or four hours here at the—just trying to be nice to you and go through everything again. I'm just not going to do that. You're expected to know all of this. Now, you're choosing to represent yourself. There's not a thing that I can do about that" (Transcript page 19, lines 12-21).

42.    In fact, Plaintiff *was* paying attention to what had happened and was correct—that defendants Story and Binkley were committing fraud on the court.

43.    Upon receipt of the subsequent court order[75], Plaintiff saw significant discrepancies in the written order from what had taken place in the Chancery Court the day prior.

44.    Giving defendants Story, Binkley, and Chancery Court the benefit of the doubt that possibly it could have been an honest error, Plaintiff tried emphatically to contact the Chancery Court, defendants Binkley and Story, in an emergency effort to reconcile the discrepancies before further damage was done, but was ignored and denied.

45.    The Chancery Court ordered Plaintiff's eviction with just a five-day notice, over a holiday weekend, and executed and enforced by four sheriff's deputies from the county. The deputy sheriffs were actually leveraged by the defendants Story and Binkley to execute and then enforce multiple criminal felonies against Plaintiff on behalf of defendants Story and Binkley. This was unconscionable, and the refusal by the courts and the state to help cure this atrocity is beyond words.

---

[75]   ECF 19-7, PID.2674-2677 | https://rico.jefffenton.com/evidence/2019-08-29_chancery-court-order-once-pro-se.pdf

46.     The wrongful eviction was also a violation of at least the following Rules of

Professional Conduct:

> (1) Tenn. R. Sup. Ct. 3.4(e)(1) Fairness to Opposing Party and Counsel — allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, (g) request or assist any person to take action that will render the person unavailable to appear as a witness by way of deposition or at trial
>
> (2) Tenn. R. Sup. Ct. 3.5(e) Impartiality and Decorum of The Tribunal — engage in conduct intended to disrupt a tribunal.
>
> (3) Tenn. R. Sup. Ct. 8.4 MISCONDUCT (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects; (c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation; (d) engage in conduct that is prejudicial to the administration of justice; (f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law.

## CASE LAW

47.     The U.S. Supreme Court stated that "when a state officer acts under a state law

in a manner violative of the Federal Constitution, he comes into conflict with the superior

authority of that Constitution, and he is in that case stripped of his official or representative

character and is subjected in his person to the consequences of his individual conduct.  The State

has no power to impart to him any immunity from responsibility to the supreme authority of the

United States." *Scheuer v. Rhodes,* 416 U.S. 232, 94 S. Ct. 1683, 1687 (1974).

48.     In 1994, the U.S. Supreme Court held that "Disqualification is required if an

objective observer would entertain reasonable questions about the judge's impartiality.  If a

judge's attitude or state of mind leads a detached observer to conclude that a fair and impartial

---

[76]   ECF 41, PID.3570-3608 | https://rico.jefffenton.com/evidence/tennessee-rules-of-judicial-and-professional-conduct.pdf

hearing is unlikely, the judge must be disqualified." *Liteky v. United States,* 510 U.S. 540, 114 S.Ct. (1994).

49.    "Recusal under Section 455 is self-executing; a party need not file affidavits in support of recusal and the judge is obligated to recuse herself *sua sponte* under the stated circumstances." *Taylor v. O'Grady,* 888 F.2d 1189 (7th Cir. 1989).

50.    The Supreme Court has ruled and has reaffirmed the principle that "justice must satisfy the appearance of justice." *Levine v. United States*, 362 U.S. 610, 80 S.Ct. 1038 (1960), citing *Offutt v. United States*, 348 U.S. 11, 14, 75 S.Ct. 11, 13 (1954).

51.    Should a judge not disqualify himself, then the judge is in violation of the Due Process Clause of the U.S. Constitution. *United States v. Sciuto,* 531 F.2d 842 (7th Cir. 1976).

52.    Acts in excess of judicial authority constitute misconduct, particularly where a judge deliberately disregards the requirements of fairness and due process. *Gonzalez v. Commission on Judicial Performance*, (1983) 33 Cal. 3d 359, 371, 374; *\*Cannon v. Commission on Judicial Qualifications*, (1975) 14 Cal. 3d 678, 694.

53.    "No judicial process, whatever form it may assume, can have any lawful authority outside of the limits of the jurisdiction of the court or judge by whom it is issued; and an attempt to enforce it beyond these boundaries is nothing less than lawless violence." *Ableman v. Booth,* 62 U.S. 506 (1858).

54.    "The innocent individual who is harmed by an abuse of governmental authority is assured that he will be compensated for his injury." *Owen v. City of Independence*, 445 U.S. 622 (1980).

# CONCLUSION

55. The order[77] created and issued by defendants Story and Binkley subsequent to Plaintiff's August 29, 2019, hearing[78] in Chancery Court to wrongfully evict the plaintiff, leaving him no shelter or provision within the state of Tennessee, with just five days' notice, knowing that he would be forced to relocate to Michigan[79] and far beyond the jurisdiction of the state of Tennessee and the Chancery Court, was not only without question biased and discriminatory, but also a clear felony "by means of coercion, influences or attempts to influence a witness or prospective witness in an official proceeding with intent to influence the witness: to be absent from an official proceeding to which the witness has been legally summoned" (emphasis added). What defendants did was a criminal conspiracy, obstruction of justice, and "coercion or persuasion of witness" Tenn. Code § 39-16-507(a)(3), a class D felony.

56. If not prior, once defendant Binkley helped defendant Story commit these crimes against Plaintiff, he was automatically disqualified per Tenn. R. Sup. Ct. 2.1(a)(1) and 28 U.S.C. §§ 455(a) and (b)(1) whereupon he was immediately stripped of all lawful authority in docket #48419B. Similarly, the Chancery Court was stripped of all lawful jurisdiction to hear or decide any related matter in docket #48419B after August 29, 2019.

57. Had defendant Binkley timely recused himself, as his office required, and been replaced by another judge, or had Plaintiff not been forced beyond the lawful jurisdiction of Tennessee due to the crimes and misconduct committed against him by defendants Story and

---

[77] ECF 19-7, PID.2674-2677 | https://rico.jefffenton.com/evidence/2019-08-29_chancery-court-order-once-pro-se.pdf

[78] ECF 23, PID.2863-2920 | https://rico.jefffenton.com/evidence/2019-08-29_chancery-hearing-transcript-audio-markers.pdf
ECF 23-4, PID.2920 | https://rico.jefffenton.com/evidence/2019-08-29_chancery-hearing-audio-recording.mp3

[79] ECF 1-17, PID.692-702 | https://rico.jefffenton.com/evidence/2019-07-29_response-to-wifes-motion-to-sell-residence.pdf

Binkley in #48419B, then the Chancery Court may have retained jurisdiction while assigning another judge who did not have the obvious bias and conflicts of interest possessed by defendant Binkley.[80]

58.    However, since the Chancery Court was literally leveraged in a criminal racketeering scheme[81] by which to strategically circumvent the Federal Rules of Bankruptcy Procedure and multiple federal bankruptcy laws[82] for the primary purpose of lawlessly depriving the plaintiff of his rights, adequate protection as required under the federal bankruptcy laws, and his property,[83] of which the bankruptcy court could not lawfully force the sale, there is no active good faith case involving the plaintiff in the Chancery Court without fraud on the court being the primary element, cause, and purpose for the action.

59.    Since such a purpose is in utter defiance of the federal rules, it cannot possibly establish and retain jurisdiction for that court and over a litigant once that litigant has relocated to another area in the country, especially subsequent to the criminal damages caused that litigant by the court itself.  To entertain the possibility of a court keeping lawful jurisdiction over a litigant who was forced beyond its jurisdictional borders, to survive the criminal actions and damages caused by that court, is so far beyond absurd, Plaintiff believes that this conclusion should speak for itself.

---

[80]  ECF 43, PID.3726-3729 | https://rico.jefffenton.com/evidence/2018-08-30_tennessean-story-hosts-vacations-with-judges.pdf
ECF 44, PID.3740-3741 | https://rico.jefffenton.com/evidence/2018-09-24_tenn-binkley-defends-partying-with-lawyers.pdf
ECF 1-14, PID.597-640 | https://rico.jefffenton.com/evidence/2021-03-21_knox-news-binkley-threatens-prior-restraints.pdf
[81]  ECF 53, PID.4258-4349 | https://rico.jefffenton.com/evidence/2024-03-13_irrefutable-proof-of-criminal-conspiracy.pdf
ECF 52, PID.4225-4228 | https://rico.jefffenton.com/evidence/2023-12-13_wcso-racketeering-official-oppression.pdf
[82]  ECF 38, PID.3445-3496 | https://rico.jefffenton.com/evidence/2019-04-26_bankruptcy-crimes-rules-and-laws-violated.pdf
ECF 54-1, PID.4367 | https://rico.jefffenton.com/evidence/2020-07-02_bk-trustee-john-mclemore-recorded-call.mp3
ECF 28, PID.3276-3288 | https://rico.jefffenton.com/evidence/2020-07-02_bk-trustee-john-mclemore-call-declaration.pdf
[83]  ECF 1-12, PID.479-596 | https://rico.jefffenton.com/evidence/2019-10-29_tn-wilco-deed-fraud-ada-financial-exploitation.pdf

60.     Every action taken by the Chancery Court in docket #48419B[84] is *void*, always has been, and always will be and must be vacated as a matter of law in the interest of justice.

61.     Pursuant to 28 U.S. Code § 1746, I declare under penalty of perjury that the foregoing is true and correct, except as to matters herein stated to be on information and belief, and as to such matters, I certify as aforesaid that I verily believe the same to be true, and I further declare that Ms. Fenton's "unsigned personal testimony[85]" in docket #48419B, technical records volume-1, pages 15-16, filed in the Chancery Court along with her Petition for an Order of Protection[86], is fraudulent and substantially false.

August 22, 2024

**JEFFREY RYAN FENTON, PRO SE**

17195 SILVER PARKWAY, #150
FENTON, MI, 48430-3426
CONTACT@JEFFFENTON.COM
(P) 615.837.1300

---

[84]  ECF 19, PID.2617-2716 | https://rico.jefffenton.com/evidence/2019_tn-court-motions-in-chronological-order.pdf
      ECF 33, PID.3310-3391 | https://rico.jefffenton.com/evidence/2019-08-01_hearing-professional-and-judicial-misconduct.pdf
[85]  ECF 1-17, PID.661-662 | https://rico.jefffenton.com/evidence/2019-06-20_wifes-false-unsigned-personal-testimony-for-op.pdf
[86]  ECF 54-1, PID.4359 | https://rico.jefffenton.com/evidence/2019-06-20_wcso-exparte-order-of-protection-service.mp3
      ECF 1-31, PID.1794-1873 | https://rico.jefffenton.com/evidence/2019-10-21_order-of-protection-as-illegal-prior-restraint.pdf

Case 3:24-cv-01282     Document 68     Filed 08/26/24     Page 19 of 21 PageID #: 5027
https://rico.jefffenton.com/evidence/2024-08-22_memorandum-of-law-about-void-tn-court-orders.pdf     Case 1:23-cv-01097-PLM-RSK (FENTON v. STORY et al.)

Retail

U.S. POSTAGE PAID
PM
FENTON, MI 48430
AUG 24, 2024

$18.80

S2324H504270-05

LY TO SEAL

48933

RDC 03

ITY®

FROM:

**17195 SILVER PKWY
PMB #150
FENTON, MI     48430-3426**

dest

verage

TO:

Packag
QR cod

**USDC WESTERN DISTRICT OF MICHIGAN**

M/PICKUP

**113 FEDERAL BLDG
315 W ALLEGAN ST RM 113
LANSING, MI          48933-1514**

how2recycle.info

ER
CH

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; October 2023; All rights reserved.

PLACE STICKER



PR㏌

7020 2450 0000 3671 5174

PRESS FIRM



# UNITED STATES POSTAL SERVICE ®

# PRIOR

# M A I

...pected delivery date specified for domestic use.

...mestic shipments include $100 of insurance (restrictions apply).*

...PS Tracking® service included for domestic and many internationa

...nited international insurance.**

...hen used internationally, a customs declaration form is required.

...ance does not cover certain items. For details regarding claims exclusions see the
...stic Mail Manual at *http://pe.usps.com.*

...e International Mail Manual at *http://pe.usps.com* for availability and limitations of c

To schedule fre
scan the



# ...AT RATE ENVELOPE

ONE RATE ■ ANY WEIGHT

USPS.C

# TRACKED ■ INSURED



PS00001000014

EP14F October 2023
OD: 12 1/2 x 9 1/2



PA
PO

This package is made from post-consumer waste. Please recycle - again.