

**PLAINTIFF'S EXHIBIT B**

## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MICHIGAN

**JEFFREY RYAN FENTON,**

PLAINTIFF

v.

**VIRGINIA LEE STORY ET AL.,**

DEFENDANTS

**CASE NO. 1:23-cv-01097**

**RECEIVED**

APR 2 3 2025

U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN

---

## FIRST AMENDMENT RIGHT OF ACCESS: OBJECTION, MOTION,
## AND DECLARATION FOR DISTRICT JUDGE PAUL L. MALONEY
## TO CORRECT & MINIMIZE OR REMOVE REDACTIONS[1]
### (NOT FOR CONSIDERATION BY A MAGISTRATE JUDGE)

Plaintiff brings this objection, motion, and declaration pursuant to 28 U.S. Code § 1746;

Michigan Code of Judicial Conduct, Canons 1, 2, and 3; U.S. Const. amend. I, V, IX, and XIV;

Case Law (6th Cir.); and 18 U.S. Code § 4 - Misprision of felony.

1.      I am the Plaintiff in this lawsuit, domiciled in Genesee County, Michigan.

2.      I understand that there is no longer an open case in this court.

3.      This document is being specifically filed regarding the **local court records** held by

the **Western District of Michigan**, not the ongoing lawsuit after it was transferred to Tennessee.

---

[1]    This lawsuit was originally filed on October 13, 2023, in the United States District Court for the Western District of Michigan (hereinafter "MIWD") as case no. 1:23-cv-01097. On October 25, 2024, MIWD transferred this lawsuit as ordered in ECF 127 to the United States District Court for the Middle District of Tennessee (hereinafter "TNMD") as case no. 3:24-cv-01282. The language used in the file stamps of each page filed is slightly different between the two courts. MIWD uses the term "ECF No." (which I abbreviate as "ECF"), while in place of that, TNMD uses the term "Document" (which I abbreviate as "DOC"). Both courts use the term "PageID" (which I abbreviate as "PID"). Citations to the court record in this lawsuit will be notated without the case name or number, using the starting DOC/ECF number, followed by both the beginning and ending PID. The Notice of Electronic Filing for this transfer is recorded in TNMD DOC 131, at which point the DOC/ECF number from MIWD was retained and continued, but the PID was reset after DOC 130, PID 5727, to restart at zero.

4.     This document, along with those filed with this court during February of 2025, were/are intended to **correct the court record** in this closed Michigan docket (case #1:23-CV-01097) in the United States District Court for the Western District of Michigan.   These documents were **not** filed with this court in an effort to impact the ongoing active litigation in the matters transferred to Tennessee, as was wrongfully presumed by Magistrate Judge Ray Kent (hereinafter "Magistrate Judge").

5.     The MIWD Magistrate Judge filed an ORDER REJECTING PLEADING on February 24, 2025, in ECF 139, PID 5738, and another on February 27, 2025, in ECF 140, PID 5948, both including the following language:

> "The case was transferred to the Middle District of Tennessee on October 25, 2024. All further questions/inquiries should be directed to said Court."

6.     Unfortunately, this order was neither an accurate nor appropriate response to my filings, since I was **not** attempting to impact any matter in the active case which was transferred to the Middle District of Tennessee, through my filings in ECF 139 & 140 in MIWD, but rather how the court records had been redacted by the Western District of Michigan on October 28, 2024, subsequent to a MIWD court order in ECF 137, PID 5736, **after** this lawsuit was transferred to the Middle District of Tennessee on October 25, 2024, in ECF 127, PID 5706-5710.

7.     The Middle District of Tennessee has no jurisdiction, authority, or control over the court records **held by the Western District of Michigan** in case #1:23-CV-01097. Those requests must be made directly to the United States District Court for the Western District of Michigan, as I had correctly filed them.  (Though there may have been some confusion, which I will explain.)

8.      Some of the language in the documents filed in February may have been broader than the scope of simply correcting the court records in Michigan, but that was in an attempt to quickly address substantial misconduct occurring in both courts, by filing nearly identical documents in both courts and cases, for each court to address in matters relevant to and within the jurisdiction of each court.

9.      Any language, objections, or requests within the jurisdiction of either court, was intended to be addressed by whichever court has the lawful jurisdiction and authority to make those corrections **while ignoring that which is beyond their jurisdiction and authority**, to hopefully be addressed separately by the other court, in response to filings I made directly with them.

10.      I can see how that might have been confusing with how I filed the documents since I tried to bundle my pleadings together, in an effort to expedite addressing so many material issues simultaneously, by bad actors sabotaging my lawsuit and usurping my time and resources in two different federal courts concurrently.  For that, I apologize and respectfully resubmit those filings along with this clarification, for direct consideration and action by District Judge Paul L. Maloney (hereinafter "District Judge").

11.      Regardless of any language in the documents attached, I am **not** seeking any action by this court that is outside this court's authority or jurisdiction.

12.      This document and the prior filings attached are intended for action by the United States District Court for the Western District of Michigan, **only in relation to the records held by that court in case 1:23-cv-01097.**

13.      I am not seeking any action by the Western District of Michigan in the ongoing matters in Tennessee or related to case 3:24-cv-01282.

## DOCUMENTS NEEDING CONSIDERATION BY JUDGE PAUL L. MALONEY
### (REGARDING UNREDACTING MY AMENDED COMPLAINT IN MIWD COURT RECORDS)

14.     FIRST OBJECTION TO ALL MOTIONS TO DISMISS, FOR SUMMARY
JUDGEMENT, AND MOTIONS/ORDERS TO REDACT AND SEAL DOCUMENTS[2].

15.     DECLARATION AND MOTION TO CORRECT AND MINIMIZE OR
STRIKE AND REMOVE REDACTIONS, WHILE UNSEALING ALL RECORDS[3].

16.     DECLARATION AND MOTION TO FILE UNDER SEAL REGARDING
DEFENDANT WALKER'S CLAIMED PRIVACY CONCERNS RELATED TO HIS HOME
ADDRESS[4].

17.     SECOND OBJECTION TO ALL DISPOSITIVE MOTIONS, REDACTED
AND SEALED FILINGS, WITH DECLARATION ABOUT JUDICIAL MISCONDUCT IN
MICHIGAN CAUSING SUBSTANTIAL DELAYS IN SERVICE[5].

## OBSTRUCTION OF JUSTICE, JUDICIAL BIAS, AND MISPRISION OF FELONY
### BY MAGISTRATE JUDGE RAY KENT AND OTHER FEDERAL ACTORS

18.     Upon information and belief, I have suffered judicial bias, obstruction of justice, and
misconduct by Magistrate Judge Ray Kent, fraudulent and deceptive misconduct by Nashville
Bankruptcy Judge Charles M. Walker and his counsel by the United States Attorney's Offices in
both Michigan and Tennessee.

19.     Nashville Bankruptcy Judge Charles M. Walker's **home address** is clearly and
openly listed on the **public record** and was never "private" as falsely claimed.

---

[2]     ECF 139-1, PID 5739-5770 | https://rico.jefffenton.com/1-23-cv-01097/ecf/139-1.pdf

[3]     ECF 139-1, PID 5771-5887 | https://rico.jefffenton.com/1-23-cv-01097/ecf/139-1.pdf

[4]     ECF 140-1, PID 5949-5988

[5]     3:24-cv-01282, DOC 222, PID 1164-1214 | https://rico.jefffenton.com/3-24-cv-01282/doc/222.pdf

20.     I have suffered hundreds of hours in damages and a substantial amount of money due to misconduct by court staff and officers in both Michigan and Tennessee.

21.     I have acted in good faith and filed documents under seal with both courts to quickly and easily prove this, without compromising defendant Walker or anyone else's privacy.

## BACKGROUND

22.     This lawsuit was originally filed on October 13, 2023, in the United States District Court for the Western District of Michigan (MIWD) in case# 1:23-cv-01097.

23.     On October 18, 2023, in MIWD, District Judge Jane M. Beckering filed an ORDER OF RECUSAL[6] in ECF 3, PID 2092.

24.     On October 18, 2023, in MIWD, the CLERK OF COURT (E. Siskind) filed a NOTICE REGARDING REASSIGNMENT OF CASE[7] in ECF 4, PID 2093, stating as follows:

> "NOTICE is hereby given that this case has been reassigned to District Judge Paul L. Maloney for all further proceedings pursuant to Order (3). Judge Jane M. Beckering is no longer assigned to the case."

25.     On October 19, 2023, in MIWD, an ORDER OF REFERENCE[8] was filed by the District Judge to Magistrate Judge Ray Kent in ECF 6, PID 2096.

---

[6]   ECF 3, PID 2092 | https://rico.jefffenton.com/1-23-cv-01097/eef/3.pdf

[7]   ECF 4, PID 2093 | https://rico.jefffenton.com/1-23-cv-01097/ecf/4.pdf

[8]   ECF 6, PID 2096 | https://rico.jefffenton.com/3-24-cv-01282/doc/6.pdf

26.    On August 19, 2024, in MIWD, I filed a MOTION TO RECUSE[9] the Magistrate Judge for judicial misconduct and bias in ECF 60, PID 4736-4739.

27.    On August 19, 2024, in MIWD, I also filed a MOTION TO EXTEND SERVICE DEADLINE[10] in ECF 61 & 61-1, PID 4740-4743.

28.    On August 19, 2024, in MIWD, I also filed an OBJECTION TO THIS COURT'S "ORDER REGARDING SERVICE[11]" in ECF 62, PID 4744-4760.

29.    On September 12, 2024, the MIWD District Judge filed an ORDER VACATING ORDER OF REFERRAL AND DISMISSING MOTION FOR RECUSAL[12] in DOC 71, PID 5045, stating in substantial part as follows:

> "Shortly after Plaintiff Fenton filed this lawsuit, the Court issued an order referring the action to Magistrate Judge Kent (ECF No. 6)... Plaintiff disagreed with the manner in which Magistrate Judge Kent has proceeded and filed a motion for recusal (ECF No. 60) in which he accuses the Magistrate Judge of a lack of impartiality. Without any consideration of the merits of the pending motion for recusal, the Court VACATES the order of referral (ECF No. 6). And, because the Court vacates the order of referral, the Court DISMISSES Plaintiff's motion for recusal as moot (ECF No. 60). IT IS SO ORDERED."

---

[9]   ECF 60, PID 4736-4739 | https://rico.jefffenton.com/3-24-cv-01282/doc/60.pdf

[10]   ECF 61, PID 4740-4743 | https://rico.jefffenton.com/1-23-cv-01097/ecf/61.pdf | https://rico.jefffenton.com/1-23-cv-01097/ecf/61-1.pdf

[11]   ECF 62, PID 4744-4760 | https://rico.jefffenton.com/evidence/2024-08-09_objection-to-wdm-order-regarding-service.pdf

[12]   ECF 71, PID 5045 | https://rico.jefffenton.com/3-24-cv-01282/doc/71.pdf

30.    Upon information and belief, this appears to have been a way for the court to remove the Magistrate Judge, in response to my substantive concerns about his bias and misconduct, while "saving face" and not needing to reach a determination about the merits of my motion.

31.    Upon information and belief, unfortunately since the court refused to address the **merits** of my MOTION TO RECUSE[13], the court did not provide me with any **consideration** to compensate me for the damages wrongfully caused by the Magistrate Judge.

### FEBRUARY FILINGS WERE INTENDED FOR THE DISTRICT JUDGE

32.    Every document I filed with MIWD after District Judge Paul L. Maloney's September 12, 2024, ORDER VACATING ORDER OF REFERRAL AND DISMISSING MOTION FOR RECUSAL[14] in DOC 71, PID 5045, I filed to be heard, considered, and acted upon **directly by District Judge Paul L. Maloney**, since he remains the **only judge assigned** to this matter in the Western District of Michigan, subsequent to his September 12, 2024 order.

33.    It, therefore, seems *extremely* **inappropriate** to find the Magistrate Judge *interfering* in this case again, obstructing my rights, hiding crimes and corruption in the court records by the defendants, wasting significant amounts of my time and money, rejecting my filings in this matter, when his involvement in this case was **vacated** by the District Judge, and I can see no honest, ethical, or lawful reason or authority by which he is involved in this case any longer.  Especially not without addressing the substantial **merits** of my MOTION TO RECUSE[15] and providing me with **consideration** to compensate for the damages he and the court have improperly caused me.

34.    Upon information and belief, I further believe that any involvement in this case by the Magistrate Judge after the date of **September 12, 2024,** has escalated **beyond** judicial bias and

---

[13]   ECF 60, PID 4736-4739 | https://rico.jefffenton.com/3-24-cv-01282/doc/60.pdf

[14]   ECF 71, PID 5045 | https://rico.jefffenton.com/3-24-cv-01282/doc/71.pdf

[15]   ECF 60, PID 4736-4739 | https://rico.jefffenton.com/3-24-cv-01282/doc/60.pdf

misconduct (including violations of Canons 1, 2, and 3 from Michigan's Code of Judicial Conduct), to **criminal** obstruction of justice, violations of my first, fifth, ninth, and fourteenth amendment civil rights, and misprision of felony.

### THE REAL NEED (IF EVER ONE EXISTED)

35.     All that needed to be redacted from my complaint, was the following **four** **words** containing defendant Walker's:                          Example:

| | | |
|---|---|---|
| (1) **House Number** | \| | 1234 |
| (2) **Street Name** | \| | Defendant Drive |
| (3) **City** | \| | Nashville |
| (4) **+4 Code** (last four) | \| | 0000 |

36.     That's it! Just ***four words***, in *one sentence*, on only *one page* of my complaint!

37.     According to Microsoft Word, my amended complaint[16] contains:

  ➢ one hundred and thirty-eight pages (138)

  ➢ six hundred and ninety-one paragraphs (691)

  ➢ two thousand five hundred and sixty-seven lines (2,567)

  ➢ thirty-one thousand and fifteen words (31,015)

38.     **All** of which has been completely redacted or sealed from the public, for the alleged purpose of concealing those **four words** in defendant Walker's address, despite being **public record** for anyone to easily find (with interactive maps, pictures, and a floorplan of his home), available on the county's website, by any rudimentary Internet search.

39.     I do not believe that is a reasonable, responsible, or lawful action, by any party involved.

---

[16]   DOC 66, PID 4870-5007 | https://rico.jefffenton.com/evidence/1-23-cv-01097_fenton-vs-story-first-amended-complaint.pdf



40.    Above are the results from serving Judge Walker via email, using alternative service[17]. As of December 13, 2024, this email had been viewed by Judge Walker and forwarded repeatedly throughout Washington DC (government channels I'm assuming), Virginia, New York, Tennessee, Ohio, Michigan, and other states, while being viewed at least **336 times**!

---

[17]   DOC 177, PID 234-250 | https://rico.jefffenton.com/evidence/2024-11-18_fenton-motion-for-alternative-service.pdf

## REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS[18]
## OPEN COURTS COMPENDIUM (6TH CIRCUIT)

### THE ROOT OF ACCESS RIGHTS[19]

"Generally, the Sixth Circuit adheres "to a policy of openness in judicial proceedings."  Applications of Nat'l Broad. Co., 828 F.2d 340, 343 (6th Cir. 1987) (citing Brown & Williamson Tobacco Corp. v. FTC, 710 F.2d 1165, 1176–81 (6th Cir. 1983)).  "Openness in judicial proceedings promotes public confidence in the courts." Id. at 347."

"The Sixth Circuit has traced the roots of the rights of access back to the 19th Century when the D.C. Circuit explained that "[a]ny attempt to maintain secrecy, as to the records of this court, would seem to be inconsistent with the common understanding of what belongs to a public court of record, to which all persons have the right of access."  In re Knoxville News-Sentinel Co., 723 F.2d 470, (6th Cir. 1983) (quoting Ex Parte Drawbaugh, 2 App. D.C. 404, 407 (1894))."

"Similarly, "[t]hroughout our history, the open courtroom has been a fundamental feature of the American judicial system."  Brown & Williamson, 710 F.2d at 1177.  "Openness in judicial proceedings promotes public confidence in courts." Applications of NBC, 828 F.2d at 347.  The same principles that support access to court rooms also supports access to court records because "court records often provide important, sometimes the only, bases or explanations for a court's decisions."  Brown & Williamson, 710 F.2d at 1177."

---

[18]  https://www.rcfp.org/open-courts-compendium/6th-circuit/

[19]  https://www.rcfp.org/open-courts-compendium/6th-circuit/

"[T]he First Amendment right of access to criminal proceedings is grounded generally in a 'purpose of assuring freedom of communication on matters relating to the functioning of government.'" Indianapolis Star v. United States, 692 F.3d 424, 429 (6th Cir. 2012) (quoting Richmond Newspapers v. Virginia, 448 U.S. 555, 575 (1980)). This right of access extends to more than just a criminal trial, but also generally applies to other criminal proceedings, criminal records, civil proceedings, and civil records. Id. 429–30; Detroit Free Press v. Ashcroft, 303 F.3d 695 n.11 (6th Cir. 2002) (explaining that the Sixth Circuit and all other circuit courts that have addressed the issue have "agreed that the press and public have a First Amendment right to attend civil proceedings…"); Applications of NBC, 828 F.2d at 347 ("the importance of some pretrial proceedings dictates that the rule of openness not be confined to the actual trial"); Brown & Williamson, 710 F.2d at 1177–78 ("The Supreme Court's analysis of the justifications for access to the criminal courtroom apply as well to the civil trial" and the same justifications require that access to judicial records also be subject to the First Amendment right of access)."

"The test for deciding if the First Amendment right of access applies to a particular proceeding or record is the "experience and logic" test: "if (1) that proceeding [or record] has 'historically been open to the press and the general public' and (2) 'public access plays a significant positive role in the function of the particular process in question.'" Indianapolis Star, 692 F.3d at 429 (quoting Press-Enterprise Co. v. Superior Court, 478 US. 1, 8 (1986)). Once the First Amendment right of access attaches, it can only be overcome "where a party can show a compelling reason why

certain documents or portions thereof should be sealed [and] the seal itself [is] narrowly tailored to serve that reason." Shane Grp., Inc. v. Blue Cross Blue Shield of Mich., 825 F.3d 299, 305 (6th Cir. 2016) (citing Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 509–11 (1984))."

"In contrast to the First Amendment right of access that applies when the "experience and logic" test is met, "[a] common law right of access generally applies to all public records and documents, including judicial records and documents." In re Morning Song Bird Food Litig., 831 F.3d 765, 777–78 (6th Cir. 2016) (citing Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978)). The common law right of access "may be curtailed if, in the exercise of the court's sound discretion, [the court] determines that non-disclosure is warranted." United States v. Dejournett, 817 F.3d 479, 485 (6th Cir. 2016). This discretion "does not, however, imply that the District Court operates without standards." Id. (quoting Brown & Williamson, 710 F.2d at 1177). This discretion must "be exercised in light of the relevant facts and circumstances of the particular case," and must identify the "'relevant facts and circumstances' justifying non-disclosure..." in the case. Id. (quoting Brown & Williamson, 710 F.2d at 1177). For example, the common law right of access "does not reach materials properly submitted to the court under seal or otherwise kept confidential for important policy reasons." In re Morning Song Bird Food Litig., 831 F.3d at 778 (citations omitted)."

## OVERCOMING A PRESUMPTION OF OPENNESS[20]

"Whether access is sought under the First Amendment or the common law right of access, the party opposing disclosure bears the burden of showing compelling reasons to support confidentiality. In re Morning Song Bird Food Litig., 831 F.3d 765, 772 (6th Cir. 2016) (citations omitted). When the First Amendment right of access applies, the burden on a party seeking closure "is a heavy one: '[o]nly the most compelling reasons can justify non-disclosure of judicial records.'" Shane Grp., Inc. v. Blue Cross Blue Shield of Mich., 825 F.3d 299, 305 (6th Cir. 2016) (quoting In re Knoxville News-Sentinel Co., 723 F.2d 470, 476 (6th Cir. 1983)). "[T]he greater the public interest in the litigation's subject matter, the greater the showing necessary to overcome the presumption of access. Id. at 305 (citing Brown & Williamson Tobacco Corp. v. FTC, 710 F.2d 1165, 1179 (6th Cir. 1983)). The asserted interest in closure may not be based on platitudes, speculation or conjecture, but instead must be identified with specificity. Id. at 307–08. "The proponent of sealing … must 'analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations.'" Id. at 305–06 (quoting Baxter Int'l, Inc. v. Abbott Labs., 297 F.3d 544 548 (7th Cir. 2002))."

"The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." Application of Nat'l Broad. Co., 828 F.2d 340, 343 (6th Cir. 1987) (quoting Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 510

---

[20] https://www.rcfp.org/open-courts-compendium/6th-circuit/

(1984)); see also Rudd Equip. Co. v. John Deere Constr. & Forestry Co., 834 F.3d 589, 593 (6th Cir. 2016) (holding that court records should only be sealed when "there is a compelling reason why certain documents or portions ... should be sealed ... [and] the seal itself must be narrowly tailored to serve that reason"). In the context of sealed court records, the Sixth Circuit has identified a limited category of interests that may be compelling enough to overcome the presumption of openness: (1) national security; (2) trade secrets; (3) fair trial rights of criminal defendants; (4) privacy rights of participants and third parties, especially innocent third parties; (5) privileged information; and (6) "information required by statute to be maintained in confidence." Id. at 308 (citations omitted); Brown & Williamson, 710 F.2d at 1179."

"The burden is not as great when it is the common law right of access that is being analyzed. The common law right of access "may be curtailed if, in the exercise of the court's sound discretion, [the court] determines that non-disclosure is warranted." United States v. Dejournett, 817 F.3d 479, 485 (6th Cir. 2016). This discretion "does not, however, imply that the District Court operates without standards." Id. (quoting Brown & Williamson, 710 F.2d at 1177). This discretion must "be exercised in light of the relevant facts and circumstances of the particular case," and must identify the "'relevant facts and circumstances' justifying non-disclosure..." in the case. Id. (quoting Brown & Williamson, 710 F.2d at 1177). Moreover, the common law right of access "does not reach materials properly submitted to the court under seal or otherwise kept confidential for important policy reasons." In re Morning Song Bird Food Litig., 831 F.3d 765, 778 (6th Cir. 2016) (citations omitted)."

## ORIGINAL VERSUS AMENDED COMPLAINT

41.     In a NOTICE OF INTENT TO TRANSFER ACTION[21], filed in MIWD in ECF 72, PID 5046-5050 on September 12, 2024, District Judge Paul L. Maloney, stated in part:

"Plaintiff Jeffrey Fenton filed this lawsuit without the benefit of counsel. The initial complaint named almost 30 defendants located in Florida, Massachusetts and Tennessee. The Magistrate Judge issued a report recommending, in part, that the Court dismiss the lawsuit for improper venue. While authority for that course of action exists when a plaintiff proceeds under the in forma pauperis statute, 28 U.S.C. § 1915, Plaintiff had paid the filing fee. Therefore, the undersigned rejected that portion of the report and recommendation."

"Plaintiff recently filed an amended complaint. In the amended complaint, Plaintiff named 35 defendants, all but two of which are located in Tennessee. Plaintiff named Bank of America as a defendant and Plaintiff contends Bank of America is located in Tampa, Florida. Plaintiff also named Cadance Bank as a defendant, which Plaintiff asserts is located Case 1:23-cv-01097-PLM-RSK ECF No. 72, PageID.5046 Filed 09/12/24 Page 1 of 52 in Tupelo, Mississippi. Plaintiff resides in Fenton, Michigan, in Genessee County. Genessee County is located in the United States District Court for the Eastern District of Michigan. Plaintiff continues his efforts to serve the defendants and no defendant has made an appearance in this lawsuit."

---

[21]   ECF 72, PID 5046-5050 | https://rico.jefffenton.com/1-23-cv-01097/ecf/72.pdf

Initials:

On pages 24 and 25 of my SECOND OBJECTION TO ALL DISPOSITIVE MOTIONS, REDACTED AND SEALED FILINGS, WITH DECLARATION ABOUT JUDICIAL MISCONDUCT IN MICHIGAN CAUSING SUBSTANTIAL DELAYS IN SERVICE[22], filed in TNMD on March 7, 2025, in DOC 222, PID 1164-1214, the following was stated:

"This lawsuit is against five judges, ten attorneys, five law firms, two real estate firms, two real estate brokers, two banks, three courts, one county, and five state government entities in Tennessee, many of whom have strong relationships rippling through the political, legal, and economic fabric of the Mid-State, with some having connections and influence which exceeds any lawful office of the courts or the state.[23]"

"**PLEASE NOTE:** I never had concerns that the honest interests of justice in my lawsuit would not stand up to any legitimate and honestly impartial screening process."

"I was concerned that the natural and almost inevitable prejudice of the court, or any collective of professionals in a common trade, would grant the *benefit of the doubt* to their peers before I would have enough time to shore up my lawsuit with robust facts, sworn testimony, and evidence, while working the kinks out of my complaint and improving it to the best of my ability with the help and resources within my reach, **to where my lawsuit could stand on its own**, and survive any legitimate, honest, and impartial screening."

---

[22]   DOC 222, PID 1164-1214 | https://rico.jefffenton.com/3-24-cv-01282/doc/222.pdf

[23]   DOC 102, PID 5440 | https://rico.jefffenton.com/evidence/2024-10-09_concerns-about-transferring-to-tennessee.pdf

"That goal was reached when I was able to file my FAC[24], which was my hope from the very beginning, as communicated with the court[25], and why I did not bring summonses for the court to execute in Lansing, the day I filed my lawsuit on October 13, 2023."

## THE IMPORTANCE OF SUBSTANTIVE FACTS AND FILINGS IN MY FIRST AMENDED COMPLAINT[26] TO OUR "FIRST AMENDMENT RIGHT OF ACCESS"

42.     The public's right to know how the federal courts prioritize and allocate resources for the benefit of different socioeconomic demographics in our country, such as indigent and disabled litigants in this case, far exceeds any legitimate privacy concerns by the defendants, which **the court could easily compensate** for by using **single line-level redactions** to conceal any home addresses without the need to redact any section, full page, or document in this lawsuit.

43.     For a better understanding of the challenges I have and continue to face in the Federal Courts and in Tennessee's state courts prior, the level of impropriety by the defendants and their counsel, acting contrary to the honest interests of justice in this matter and others, please read both my DECLARATION EXPLAINING MY PURSUIT OF JUSTICE[27], filed in TNMD on February 6, 2025, in DOC 207, PID 583-619, as well as my NOTICE TO ALL BAR MEMBERS[28] filed in TNMD February 27, 2025, in DOC 216, PID 984-1015.

---

[24]   DOC 66, PID 4870-4972 | https://rico.jefffenton.com/3-24-cv-01282/doc/66.pdf

[25]   DOC 54-1, PID 4375 | https://rico.jefffenton.com/evidence/2023-10-11_usdc-wdm-emily-can-file-in-lansing.mp3
        DOC 10, PID 2109-2114 | https://rico.jefffenton.com/3-24-cv-01282/doc/10.pdf

[26]   DOC 66, PID 4870-5007 | https://rico.jefffenton.com/evidence/1-23-cv-01097_fenton-vs-story-first-amended-complaint.pdf

[27]   DOC 207, PID 583-685 | https://rico.jefffenton.com/evidence/2025-01-20_declaration-explaining-my-pursuit-of-justice.pdf

[28]   DOC 216, PID 984-1015 | https://rico.jefffenton.com/evidence/2025-02-24_notice-to-all-bar-members.pdf

## 18 U.S. CODE § 4 - MISPRISION OF FELONY[29]

"Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both." (June 25, 1948, ch. 645, 62 Stat. 684; Pub. L. 103–322, title XXXIII, §330016(1)(G), Sept. 13, 1994, 108 Stat. 2147.)

## CONCLUSION

44.     It is critical that the public, justice advocates, court reform advocates, indigent and *pro se* rights advocates, court watchers, court oversight boards, government and court watchdogs, as well as people involved in numerous state and federal "equal access to justice[30]" programs, along with segments of society interacting with all different tiers of our justice system, have full unfettered access to the filings in this lawsuit. **A government "for the people by the people" cannot fix problems which are <u>hidden</u> from them.**

45.     EXPERIENCE AND LOGIC TEST: "The test for deciding **if** the First Amendment right of access applies to a particular proceeding or record is the "experience and logic" test: "if...

(1)     that proceeding [or record] has 'historically been open to the press and the general public' and

---

[29]   https://www.law.cornell.edu/uscode/text/18/4

[30]   https://www.acus.gov/ | https://eaja.acus.gov/?action=list&entity=CaseRecord

(2) 'public access plays a significant positive role in the function of the particular process in question.'" Indianapolis Star, 692 F.3d at 429 (quoting Press-Enterprise Co. v. Superior Court, 478 US. 1, 8 (1986)). Once the First Amendment right of access attaches, it can only be overcome **"where a party can show a compelling reason why certain documents or portions thereof should be sealed [and] the seal itself [is] narrowly tailored to serve that reason."** Shane Grp., Inc. v. Blue Cross Blue Shield of Mich., 825 F.3d 299, 305 (6th Cir. 2016) (citing Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 509–11 (1984)) (emphasis added).

46. Per the **first prong** of the court's "experience and logic" test (above), **amended complaints** in federal civil rights lawsuits **have** 'historically been open to the press and the general public'.

47. Per the **second prong** of the court's "experience and logic" test (above), **public access** and **transparency** in court proceedings and government operations is **essential** to promoting honest, ethical, fair, and lawful dealings amongst the people.

> "Where transparency and accountability are stifled, corruption inevitably thrives." — Jeffrey Ryan Fenton

48. On October 28, 2024, an order was entered by District Judge Maloney in ECF 137, PID 5736, ordering **broad redactions** of entire substantive documents in my lawsuit, including my **First Amended Complaint**[31], instead of yielding to case law by the Sixth Circuit Court of Appeals, stating, **"where a party can show a compelling reason why certain documents or portions**

---

[31] DOC 66, PID 4870-5007 | https://rico.jefffenton.com/evidence/1-23-cv-01097_fenton-vs-story-first-amended-complaint.pdf

thereof should be sealed [and] the seal itself [is] <u>narrowly tailored to serve that reason.</u>"

Shane Grp., Inc. v. Blue Cross Blue Shield of Mich., 825 F.3d 299, 305 (6th Cir. 2016) (citing

Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 509–11 (1984)) (emphasis added).

49.     Everything I have filed, which has been sealed or redacted in this lawsuit to date, in

both MIWD and TNMD should be made publicly available again, **except for word-level or

line-level redactions which the court can effectuate to address any real privacy concerns,**

without redacting, sealing, or restricting from the public any more than is "absolutely necessary".

50.     I know of no **honest** compelling reason for redacting **any** document in this lawsuit,

but in the event the court found it reasonable to conceal any (or all) of the defendant's home

addresses, they could easily do so with **word-level or line-level redactions,** without redacting,

sealing, or restricting a substantial portion of any document in this lawsuit.

51.     To repeat, "Once the First Amendment right of access attaches, it can only be

overcome "where a party can show a compelling reason why certain documents or portions thereof

should be sealed [and] the seal itself **[is] narrowly tailored to serve that reason.**"  Shane Grp.,

Inc. v. Blue Cross Blue Shield of Mich., 825 F.3d 299, 305 (6th Cir. 2016) (citing Press-Enterprise

Co. v. Superior Court, 464 U.S. 501, 509–11 (1984)) (emphasis added)."

52.     This document has been filed in an attempt to persuade MIWD to correct this

oversight, error, or injustice; to be in compliance with the Sixth Circuit case law cited in the

previous paragraph.

## CERTIFICATION AND DECLARATION

By signing below, I, Jeffrey Ryan Fenton, certify that this document has been executed in good faith, in the honest pursuit of justice, and in strict compliance with F.R.Civ.P. 11(b).

Pursuant to 28 U.S. Code § 1746, I declare under penalty of perjury that the foregoing is true and correct, except as to matters herein stated to be on information and belief, and as to such matters, I certify as aforesaid that I verily believe the same to be true.

All rights reserved.

Executed on April 8, 2025.

JEFFREY RYAN FENTON, PRO SE
17195 SILVER PARKWAY, #150
FENTON, MI, 48430-3426
CONTACT@JEFFFENTON.COM
HTTPS://JEFFFENTON.COM
(P) 615.837.1300
#TNinjustice
#iAMhuman

*I'm a natural man, not a corporation or property. Please treat my case accordingly.*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY RYAN FENTON,

        Plaintiff,

    v.

VIRGINIA LEE STORY, et al.,

        Defendants.

_____/

Case No. 1:23−cv−01097−PLM−RSK

Hon. Paul L. Maloney

## ORDER REJECTING PLEADING

    The Court has examined the following document(s) received February 24, 2025 and orders the Clerk to reject the Objection to all Motions to Dismiss and Motion and Declaration to Correct, Minimize or Strike and Remove Redactions and return the document(s) to Jeffrey Fenton for the reason(s) noted below:

    The case was transferred to the Middle District of Tennessee on October 25, 2024. All further questions/inquiries should be directed to said Court.

    IT IS SO ORDERED.

Dated:  February 24, 2025

                 _/s/ Ray Kent_____
                 RAY KENT
                 U.S. Magistrate Judge



CLERK'S OFFICE
517-377-1559
US DISTRICT COURT
315 W ALLEGAN STREET
LANSING MI 48933

**4 LBS**     **1 OF 1**
DWT: 16,10,3

SHIP TO:
JEFFREY RYAN FENTON
17195 SILVER PARKWAY #150
**FENTON MI 48430**

**MI 485 0-01**

**UPS GROUND**
TRACKING #: 1Z 463 56B 03 9200 1009

BILLING: P/P

XOL 23.07.01    NV45 9.0A 02/2025*

---

Customer: ALL MAILBOX HOLDERS

Location: Shelf
Package Type: Package
Received On: 2/26/2025

**150**

1Z46356B0392001009

---

JEFFREY RYAN FENTON
17195 SILVER PKWY
FENTON MI 48430

P: RED    S: 400    J: 5A
**405 — RDR**    X
1Z46356B0392001009    1009

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY RYAN FENTON,

      Plaintiff,

      v.

VIRGINIA LEE STORY, et al.,

      Defendants.

_____/

Case No. 1:23−cv−01097−PLM−RSK

Hon. Paul L. Maloney

## ORDER REJECTING PLEADING

      The Court has examined the following document(s) received February 27, 2025 and orders the Clerk to reject the Declaration with exhibits and return the document(s) to Jeffrey Ryan Fenton for the reason(s) noted below:

      The case was transferred to the Middle District of Tennessee on October 25, 2024. All further questions/inquiries should be directed to said Court.

      IT IS SO ORDERED.

Dated:  February 27, 2025

          /s/ Ray Kent
          RAY KENT
          U.S. Magistrate Judge



OFFICE OF THE CLERK
UNITED STATES DISTRICT COURT
110 FEDERAL BUILDING
315 WEST ALLEGAN STREET
LANSING, MICHIGAN 48933

OFFICIAL BUSINESS

SHIP TO:
CLERK'S OFFICE
616US68076
US DISTRICT COURT
315 W ALLEGAN ST RM 113
LANSING MI 48933

JEFFREY RYAN FENTON
17195 SILVER PKWY PMB 150
FENTON MI 48430-3~~~

1 LBS
DWT: 16,10,1

1 OF 1

MI 433 0-01

UPS GROUND
TRACKING #: 1Z C05 74W 03 3038 0838

BILLING: 3RD PARTY



Customer: **JEFFREY FENTON**

Location: Shelf
Package Type: Package
Received On: 2/28/2025

1ZC0574W0330380838

# 150

You received a package via UPS on 2/28/2025.
It was received in the following condition:
Good. Please bring this slip to an associate to
pickup your item as soon as possible to avoid
storage fees.

Please sign below in presence of an associate

Customer Signature

Print Name                    Today's Date

## DOCUMENTS REGARDING (CASE: 1:23-CV-01097):

1. FIRST AMENDMENT RIGHT OF ACCESS: OBJECTION, MOTION, AND DECLARATION FOR DISTRICT JUDGE PAUL L. MALONEY TO CORRECT & MINIMIZE OR REMOVE REDACTIONS (NOT FOR CONSIDERATION BY A MAGISTRATE JUDGE)
   https://rico.jefffenton.com/evidence/2025-04-08_miwd-first-amendment-right-of-access.pdf

2. SECOND OBJECTION TO ALL DISPOSITIVE MOTIONS, REDACTED AND SEALED FILINGS, WITH DECLARATION ABOUT JUDICIAL MISCONDUCT IN MICHIGAN CAUSING SUBSTANTIAL DELAYS IN SERVICE (3:24-cv-01282 [2025] DOC 222)
   https://rico.jefffenton.com/evidence/2025-03-03_objection-judicial-misconduct-in-michigan.pdf

3. NOTICE TO ALL BAR MEMBERS (3:24-cv-01282 [2025] DOC 216)
   https://rico.jefffenton.com/evidence/2025-02-24_notice-to-all-bar-members.pdf

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2025, I mailed the foregoing or above-named papers to the United States District Court for the Western District of Michigan, at their address below, for filing in case number 1:23-CV-01097.

I further certify that on or before April 15, 2025, I am serving these same documents to the defendants or their counsel by first class or priority mail with postage prepaid at the addresses listed below. If for any reason beyond my control, I am unable to complete either on the date specified, I will do so on the very next business day.

U.S.D.C. WESTERN DISTRICT OF MICHIGAN
113 FEDERAL BLDG
315 W ALLEGAN ST RM 113
LANSING, MI    48933-1514

RYAN D. COBB
UNITED STATES ATTORNEY'S OFFICE
330 IONIA AVE NW
GRAND RAPIDS MI 49503-2549

FENTON v. STORY et al.        Page 1 of 2        Case 1:23-cv-01097-PLM-RSK

Case 3:24-cv-01282    Document 238-2    Filed 04/23/25    Page 27 of 46 PageID #: 1733

## CERTIFICATION AND DECLARATION

By signing below, I, Jeffrey Ryan Fenton, certify that this document has been executed in good faith, in the honest pursuit of justice, and in strict compliance with F.R.Civ.P. 11(b).

Pursuant to 28 U.S. Code § 1746, I declare under penalty of perjury that the foregoing is true and correct.

All rights reserved.

Executed on April 8, 2025.

JEFFREY RYAN FENTON, PRO SE
17195 SILVER PARKWAY, #150
FENTON, MI, 48430-3426
CONTACT@JEFFFENTON.COM
HTTPS://JEFFFENTON.COM
(P) 615.837.1300
#TNinjustice
#iAMhuman

FENTON v. STORY et al.          Page 2 of 2          Case 1:23-cv-01097-PLM-RSK

Case 3:24-cv-01282     Document 238-2     Filed 04/23/25     Page 28 of 46 PageID #: 1734



**UNITED STATES POSTAL SERVICE.**

LINDEN
215 S MAIN ST
LINDEN, MI 48451-9998
(800)275-8777

04/09/2025                                    12:24 PM

| Product | Qty | Unit Price | Price |
|---|---|---|---|
| Priority Mail® | 1 | | $19.15 |

Med FR Box
   Lansing, MI 48933
   Flat Rate
   Expected Delivery Date
     Fri 04/11/2025
   Insurance                                   $0.00
     Up to $100.00 included
   Certified Mail®                            $4.85
     Tracking #:
      70203160000230014193
   e-Return Receipt                           $2.62
Total                                          $26.62

Grand Total:                                   $26.62

Credit Card Remit                              $26.62
   Card Name: VISA
   Account #: XXXXXXXXXXXX6036
   Approval #: 009014
   Transaction #: 466
   AID: A0000000031010        Chip
   AL: VISA CREDIT
   PIN: Not Required

Use Tracking # for inquiry on Return
   Receipt (Electronic).

UFN: 255460-0451
Receipt #: 840-54930036-1-5812063-2
Clerk: 6

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

7020 3160 0000 2300 4193

| Certified Mail Fee | $4.85 | |
|---|---|---|
| Extra Services & Fees *(check box, add fee as appropriate)* | | |
| ☐ Return Receipt (hardcopy) | $ | |
| ☑ Return Receipt (electronic) | $ | |
| ☐ Certified Mail Restricted Delivery | $ | |
| ☐ Adult Signature Required | $ | |
| ☐ Adult Signature Restricted Delivery | $ | |
| Postage | $19.15 | |
| Total Postage and Fees | $ | |

Postmark Here

APR 9 2025

**USDC WESTERN DISTRICT OF MICHIGAN**
**113 FEDERAL BLDG**
**315 W ALLEGAN ST RM 113**
**LANSING, MI    48933-1514**

See Reverse for Instructions

# USPS Tracking®



**COMPLETED**

**Tracking Number:**

**Remove ✕**

## 70203160000230014193

Copy     Add to Informed Delivery (https://informeddelivery.usps.com/)

### Latest Update

Your item was delivered to an individual at the address at 9:56 am on April 11, 2025 in LANSING, MI 48933.

Feedback

**Get More Out of USPS Tracking:**

    USPS Tracking Plus®

● **Delivered**
**Delivered, Left with Individual**
LANSING, MI 48933
April 11, 2025, 9:56 am

● **Out for Delivery**
LANSING, MI 48933
April 11, 2025, 6:55 am

● **Arrived at Post Office**
LANSING, MI 48924
April 11, 2025, 6:44 am

● **Arrived at USPS Regional Facility**
LANSING MI DISTRIBUTION CENTER
April 11, 2025, 12:23 am

● **Arrived at USPS Regional Facility**
DETROIT MI DISTRIBUTION CENTER
April 10, 2025, 12:28 pm

**Departed Post Office**
LINDEN, MI 48451
April 9, 2025, 4:03 pm

**USPS in possession of item**
LINDEN, MI 48451
April 9, 2025, 12:22 pm

**Hide Tracking History**

What **Do USPS Tracking Statuses Mean? (https://faq.usps.com/s/article/Where-is-my-package)**

**Text & Email Updates** ⌄

**Return Receipt Electronic** ⌃

☑ Confirmation
Your Proof of Delivery record is complete and will be processed shortly.

Your confirmation will be sent to the following:

contact@jefffenton.com

**USPS Tracking Plus®** ⌄

**Product Information** ⌃

**Postal Product:**
Priority Mail®

**Features:**
Certified Mail™
Return Receipt Electronic
Up to $100 insurance included. Restrictions Apply ⓘ

**See Less** ⌃

Track Another Package

| Enter tracking or barcode numbers |
|---|

**contact@jefffenton.com**

| | |
|---|---|
| **From:** | auto-reply@usps.com |
| **Sent:** | Sunday, April 20, 2025 4:04 AM |
| **To:** | contact@jefffenton.com |
| **Subject:** | USPS Return Receipt (Electronic) Info for 70203160000230014193 |
| **Attachments:** | 70203160000230014193.pdf |



Tracking #: <u>70203160000230014193</u>

Hello Jeffrey Fenton,

**Thank you for using USPS.com® to request a Return Receipt (Electronic) letter for your shipment.**

Tracking #:   <u>70203160000230014193</u>

Service Type:   Priority Mail®

Attachment:   Return Receipt (Electronic) letter (PDF) provided by the U.S. Postal Service®.

Your Return Receipt (Electronic) letter is in the attached PDF. You will need Adobe Acrobat Reader installed on your device to open the PDF. <u>Download Adobe Acrobat Reader for free</u>.

If you need help or have questions about USPS Tracking® services and features, visit <u>USPS Tracking FAQs</u>.

---

**Want to Track on the Go?**

Track packages with USPS Text Tracking® service. Simply text your tracking number to 28777 (2USPS) or select the Text Update option on the <u>USPS Tracking</u> site. Standard Message and Data Rates may apply. For more information, visit <u>USPS Text Tracking</u>.


April 20, 2025

Dear Jeffrey Fenton:

The following is in response to your request for proof of delivery on your item with the tracking number:
**7020 3160 0002 3001 4193**.

## Item Details

| | |
|---|---|
| **Status:** | Delivered, Left with Individual |
| **Status Date / Time:** | April 11, 2025, 9:56 am |
| **Location:** | LANSING, MI 48933 |
| **Postal Product:** | Priority Mail® |
| **Extra Services:** | Certified Mail™ |
| | Return Receipt Electronic |
| | Up to $100 insurance included |

## Shipment Details

| | |
|---|---|
| **Weight:** | 5lb, 10.0oz |

## Recipient Signature

| | |
|---|---|
| Signature of Recipient: | *J Gerona* |
| | 315 W ALLEGAN ST RM 113, LANSING, MI 48933 |
| Address of Recipient: | |

Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004



**UNITED STATES POSTAL SERVICE.**

```
                LINDEN
            215 S MAIN ST
        LINDEN, MI 48451-9998
            (800)275-8777
04/14/2025                      01:57 PM
----------------------------------------
Product           Qty   Unit      Price
                        Price
----------------------------------------
First-Class Mail®   1             $4.31
Large Envelope
    Grand Rapids, MI 49503
    Weight: 0 lb 10.90 oz
    Estimated Delivery Date
    Fri 04/18/2025
    Certified Mail®                $4.85
    Tracking #:
    ➤ 70203160000230014209
    e-Return Receipt              $2.62
Total                           $11.78

----------------------------------------
Grand Total:                    $11.78
----------------------------------------
Credit Card Remit               $11.78
    Card Name: VISA
    Account #: XXXXXXXXXXXX3075
    Approval #: 014448
    Transaction #: 522
    AID: A0000000031010      Chip
    AL: VISA CREDIT
    PIN: Not Required
----------------------------------------

Use Tracking # for Inquiry on Return
    Receipt (Electronic).


UFN: 255460-0451
Receipt #: 840-54930036-1-5818138-2
Clerk: 06
```

---

**U.S. Postal Service™**
# CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*

Grand Rapids, MI 49503

| Certified Mail Fee | $4.85 | |
| --- | --- | --- |
| | $2.00 | 0451 |
| Extra Services & Fees (check box, add fee as appropriate) | | 06 |
| ☐ Return Receipt (hardcopy) | $____ | |
| ☑ Return Receipt (electronic) | $0.00 | Postmark |
| ☐ Certified Mail Restricted Delivery | $0.00 | Here |
| ☐ Adult Signature Required | $0.00 | |
| ☐ Adult Signature Restricted Delivery | $0.00 | |
| Postage | $4.31 | 4/2025 |
| Total Postage and Fees | | USPS |
| $11.78 | | |

**RYAN D. COBB**
**UNITED STATES ATTORNEY'S OFFICE**
**330 IONIA AVE NW**
**GRAND RAPIDS, MI 49503-2549**

# USPS Tracking®

FAQs ›



**COMPLETED**

**Tracking Number:**                                    Remove ✕

## 70203160000230014209

Copy        Add to Informed Delivery (https://informeddelivery.usps.com/)

### Latest Update

Your item was delivered to the front desk, reception area, or mail room at 11:18 am on April 16, 2025 in GRAND RAPIDS, MI 49503.

**Get More Out of USPS Tracking:**

    USPS Tracking Plus®

Feedback

### Delivered

**Delivered, Front Desk/Reception/Mail Room**
GRAND RAPIDS, MI 49503
April 16, 2025, 11:18 am

**Arrived at USPS Regional Destination Facility**
GRAND RAPIDS MI DISTRIBUTION CENTER
April 15, 2025, 1:31 pm

**Arrived at USPS Regional Facility**
PONTIAC MI DISTRIBUTION CENTER
April 14, 2025, 10:51 pm

**Departed Post Office**
LINDEN, MI 48451
April 14, 2025, 4:04 pm

**USPS in possession of item**
LINDEN, MI 48451
April 14, 2025, 1:57 pm

Case 3:24-cv-01282    Document 238-2    Filed 04/23/25    Page 35 of 46 PageID #: 1741

**Hide Tracking History**

**What Do USPS Tracking Statuses Mean? (https://faq.usps.com/s/article/Where-is-my-package)**

| Text & Email Updates | ⌄ |
|---|---|

| Return Receipt Electronic | ⌃ |
|---|---|

⊘ Confirmation

Your Proof of Delivery record is complete and will be processed shortly.

Your confirmation will be sent to the following:

contact@jefffenton.com

| USPS Tracking Plus® | ⌄ |
|---|---|

| Product Information | ⌃ |
|---|---|

**Postal Product:**
First-Class Mail®

**Features:**
Certified Mail™
Return Receipt Electronic

**See Less** ⌃

Track Another Package

| Enter tracking or barcode numbers |
|---|

# Need More Help?

Contact USPS Tracking support for further assistance.

| FAQs |
|---|

**contact@jefffenton.com**

| | |
|---|---|
| **From:** | auto-reply@usps.com |
| **Sent:** | Sunday, April 20, 2025 3:59 AM |
| **To:** | contact@jefffenton.com |
| **Subject:** | USPS Return Receipt (Electronic) Info for 70203160000230014209 |
| **Attachments:** | 70203160000230014209.pdf |



---

Tracking #: **70203160000230014209**

---

Hello Jeffrey Fenton,

**Thank you for using USPS.com® to request a Return Receipt (Electronic) letter for your shipment.**

Tracking #:   70203160000230014209

Service Type:   First-Class Mail®

Attachment:   Return Receipt (Electronic) letter (PDF) provided by the U.S. Postal Service®.

Your Return Receipt (Electronic) letter is in the attached PDF. You will need Adobe Acrobat Reader installed on your device to open the PDF. Download Adobe Acrobat Reader for free.

If you need help or have questions about USPS Tracking® services and features, visit USPS Tracking FAQs.

---

### Want to Track on the Go?

Track packages with USPS Text Tracking® service. Simply text your tracking number to 28777 (2USPS) or select the Text Update option on the USPS Tracking site. Standard Message and Data Rates may apply. For more information, visit USPS Text Tracking.

 **UNITED STATES**
**POSTAL SERVICE**

April 20, 2025

Dear Jeffrey Fenton:

The following is in response to your request for proof of delivery on your item with the tracking number:
**7020 3160 0002 3001 4209.**

| Item Details | |
|---|---|
| **Status:** | Delivered, Front Desk/Reception/Mail Room |
| **Status Date / Time:** | April 16, 2025, 11:18 am |
| **Location:** | GRAND RAPIDS, MI 49503 |
| **Postal Product:** | First-Class Mail® |
| **Extra Services:** | Certified Mail™ |
| | Return Receipt Electronic |

| Shipment Details | |
|---|---|
| **Weight:** | 11.0oz |

| Recipient Signature | |
|---|---|

Signature of Recipient:

330 IONIA AVE NW, GRAND
RAPIDS, MI 49503

Address of Recipient:

Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004





Charles M. Walker
U.S. Bankruptcy Judge
Dated: 9/27/2019

**PLAINTIFF'S EXHIBIT**

**C**

IN THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | | |
|---|---|---|---|
| IN RE: | ) | | |
| | ) | | |
| FAWN ███████ FENTON | ) | CHAPTER | 13 |
| ███████████████████ | ) | CASE NO: | 19-02693 |
| BRENTWOOD, TN 37027 | ) | JUDGE | WALKER |
| SSN: XXX-XX-██65 | ) | | |
| | ) | | |
| DEBTOR | | | |

## ORDER GRANTING EXPEDITED MOTION TO SELL REAL ESTATE AND PERSONAL PROPERTY

This matter came before the Court on September 25, 2019 upon the Debtor's Expedited Motion to Sell Real Estate and Personal Property **with notice given to all parties** pursuant to Local Rule 9075-1. There being no objections raised at the call of the docket, the Motion is found to be well taken and it is therefore ORDERED as follows:

Debtor shall be allowed to sell **real property** located at 1986 Sunnyside Drive, Brentwood, Tennessee **and items of personal property** remaining in the house at auction pursuant to an Order Granting Motion to Sell Marital Residence by Auction entered in the Chancery Court for Williamson County, Tennessee on August 6, 2019 . **The Debtor will sell the real estate under Section 363(f)(3)** subject to the liens of Bank of America, N.A. and Bancorp South. This transaction shall be conditioned on the Debtor providing the auction report to the Trustee once the sale has taken place. All net proceeds from the sale of the property **shall be deposited into the Chancery Court Clerk's Office** and placed in **an interest bearing account** on behalf of the parties pending further orders of the Chancery Court for Williamson County, Tennessee.

IT IS SO ORDERED.

*THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE.*

APPROVED FOR ENTRY:


*/s/ Alex Koval*

Alex Koval
ROTHSCHILD & AUSBROOKS, PLLC
Attorney for Debtor(s)
1222 16th Avenue South, Suite 12
Nashville, TN  37212-2926
(615) 242-3996 (telephone)
(615) 242-2003 (facsimile)
notice@rothschildbklaw.com

This Order has been electronically
signed.  The Judge's signature and
Court's seal appear at the top of the
first page.
United States Bankruptcy Court.

Case 3:19-bk-02693    Doc 66    Filed 09/27/19    Entered 09/27/19 11:34:45    Desc Main
Document    Page 2 of 2
Case 3:24-cv-01282    Document 238-2    Filed 04/23/25    Page 40 of 46 PageID #: 1746
https://rico.jefffenton.com/evidence/2019-09-27_bk-order-to-sell-real-and-personal-property.pdf    Case 1:23-cv-01097-PLM-RSK (FENTON v. STORY et al.)

§ 363                                    TITLE 11—BANKRUPTCY                                    Page 84

AUTHENTICATED
U.S. GOVERNMENT
INFORMATION
GPO

<div style="column-count:2">

EFFECTIVE DATE OF 2005 AMENDMENT

Amendment by Pub. L. 109–8 effective 180 days after Apr. 20, 2005, and not applicable with respect to cases commenced under this title before such effective date, except as otherwise provided, see section 1501 of Pub. L. 109–8, set out as a note under section 101 of this title.

EFFECTIVE DATE OF 1994 AMENDMENT

Amendment by Pub. L. 103–394 effective Oct. 22, 1994, and not applicable with respect to cases commenced under this title before Oct. 22, 1994, see section 702 of Pub. L. 103–394, set out as a note under section 101 of this title.

EFFECTIVE DATE OF 1990 AMENDMENT

Pub. L. 101–508, title III, §3007(a)(3), Nov. 5, 1990, 104 Stat. 1388–28, provided that: "The amendments made by this subsection [amending this section and section 541 of this title] shall be effective upon date of enactment of this Act [Nov. 5, 1990]."

Pub. L. 101–508, title III, §3008, Nov. 5, 1990, 104 Stat. 1388–29, provided that the amendments made by subtitle A (§§3001–3008) of title III of Pub. L. 101–508, amending this section, sections 541 and 1328 of this title, and sections 1078, 1078–1, 1078–7, 1085, 1086, and 1091 of Title 20, Education, and provisions set out as a note under section 1078–1 of Title 20, were to cease to be effective Oct. 1, 1996, prior to repeal by Pub. L. 102–325, title XV, §1558, July 23, 1992, 106 Stat. 841.

EFFECTIVE DATE OF 1986 AMENDMENT

Amendment by section 257 of Pub. L. 99–554 effective 30 days after Oct. 27, 1986, but not applicable to cases commenced under this title before that date, see section 302(a), (c)(1) of Pub. L. 99–554, set out as a note under section 581 of Title 28, Judiciary and Judicial Procedure.

Amendment by section 283 of Pub. L. 99–554 effective 30 days after Oct. 27, 1986, see section 302(a) of Pub. L. 99–554.

Pub. L. 99–509, title V, §5001(b), Oct. 21, 1986, 100 Stat. 1912, provided that: "The amendments made by subsection (a) of this section [amending this section] shall apply only to petitions filed under section 362 of title 11, United States Code, which are made after August 1, 1986."

EFFECTIVE DATE OF 1984 AMENDMENT

Amendment by Pub. L. 98–353 effective with respect to cases filed 90 days after July 10, 1984, see section 552(a) of Pub. L. 98–353, set out as a note under section 101 of this title.

REPORT TO CONGRESSIONAL COMMITTEES

Pub. L. 99–509, title V, §5001(c), Oct. 21, 1986, 100 Stat. 1911, directed Secretary of Transportation and Secretary of Commerce, before July 1, 1989, to submit reports to Congress on the effects of amendments to 11 U.S.C. 362 by this subsection.

§ 363. Use, sale, or lease of property

(a) In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

(b)(1) The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate, except that if the debtor in connection with offering a product or a service discloses to an individual a policy prohibiting the transfer of personally identifiable information about individuals to persons that are not affiliated with the debtor and if such policy is in effect on the date of the commencement of the case, then the trustee may not sell or lease personally identifiable information to any person unless—

(A) such sale or such lease is consistent with such policy; or

(B) after appointment of a consumer privacy ombudsman in accordance with section 332, and after notice and a hearing, the court approves such sale or such lease—

(i) giving due consideration to the facts, circumstances, and conditions of such sale or such lease; and

(ii) finding that no showing was made that such sale or such lease would violate applicable nonbankruptcy law.

(2) If notification is required under subsection (a) of section 7A of the Clayton Act in the case of a transaction under this subsection, then—

(A) notwithstanding subsection (a) of such section, the notification required by such subsection to be given by the debtor shall be given by the trustee; and

(B) notwithstanding subsection (b) of such section, the required waiting period shall end on the 15th day after the date of the receipt, by the Federal Trade Commission and the Assistant Attorney General in charge of the Antitrust Division of the Department of Justice, of the notification required under such subsection (a), unless such waiting period is extended—

(i) pursuant to subsection (e)(2) of such section, in the same manner as such subsection (e)(2) applies to a cash tender offer;

(ii) pursuant to subsection (g)(2) of such section; or

(iii) by the court after notice and a hearing.

(c)(1) If the business of the debtor is authorized to be operated under section 721, 1108, 1203, 1204, or 1304 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

(2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—

(A) each entity that has an interest in such cash collateral consents; or

(B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

(3) Any hearing under paragraph (2)(B) of this subsection may be a preliminary hearing or may be consolidated with a hearing under subsection (e) of this section, but shall be scheduled in accordance with the needs of the debtor. If the hearing under paragraph (2)(B) of this subsection is a preliminary hearing, the court may authorize such use, sale, or lease only if there is

</div>

---

363(B)(1) I WAS DUE A NOTICE AND A HEARING BY THE TRUSTEE, SHORTLY AFTER MY EX-WIFE (SECRETLY) FILED FOR BANKRUPTCY. MY EX-WIFE HAD COMMITTED TO PAYING THE MORTGAGES AS THE VOLUNTARY PRIMARY BREADWINNER FOR OUR FAMILY SINCE 2011. I HAD NO ACCESS TO THE ACCOUNTS, THE STATEMENTS OR NOTICES. I HAD NO KNOWLEDGE, NOTICE, OR MEANS OF KNOWING THAT A SINGLE MORTGAGE PAYMENT WAS LATE, LET ALONE THAT SEVERAL WERE DEFAULTED UPON, AND OUR MUTUALLY INVESTED IN (CASH), PURCHASED, AND DEEDED PROPERTY WAS AT RISK!

---

a reasonable likelihood that the trustee will prevail at the final hearing under subsection (e) of this section. The court shall act promptly on any request for authorization under paragraph (2)(B) of this subsection.

(4) Except as provided in paragraph (2) of this subsection, the trustee shall segregate and account for any cash collateral in the trustee's possession, custody, or control.

(d) The trustee may use, sell, or lease property under subsection (b) or (c) of this section—

(1) in the case of a debtor that is a corporation or trust that is not a moneyed business, commercial corporation, or trust, only in accordance with nonbankruptcy law applicable to the transfer of property by a debtor that is such a corporation or trust; and

(2) only to the extent not inconsistent with any relief granted under subsection (c), (d),¹(e), or (f) of section 362.

(e) Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest. This subsection also applies to property that is subject to any unexpired lease of personal property (to the exclusion of such property being subject to an order to grant relief from the stay under section 362).

(f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

(g) Notwithstanding subsection (f) of this section, the trustee may sell property under subsection (b) or (c) of this section free and clear of any vested or contingent right in the nature of dower or curtesy.

(h) Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—

(1) partition in kind of such property among the estate and such co-owners is impracticable;

(2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;

(3) the benefit to the estate of a sale of such property free of the interests of co-owners out-

weighs the detriment, if any, to such co-owners; and

(4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

(i) Before the consummation of a sale of property to which subsection (g) or (h) of this section applies, or of property of the estate that was community property of the debtor and the debtor's spouse immediately before the commencement of the case, the debtor's spouse, or a co-owner of such property, as the case may be, may purchase such property at the price at which such sale is to be consummated.

(j) After a sale of property to which subsection (g) or (h) of this section applies, the trustee shall distribute to the debtor's spouse or the co-owners of such property, as the case may be, and to the estate, the proceeds of such sale, less the costs and expenses, not including any compensation of the trustee, of such sale, according to the interests of such spouse or co-owners, and of the estate.

(k) At a sale under subsection (b) of this section of property that is subject to a lien that secures an allowed claim, unless the court for cause orders otherwise the holder of such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property.

(l) Subject to the provisions of section 365, the trustee may use, sell, or lease property under subsection (b) or (c) of this section, or a plan under chapter 11, 12, or 13 of this title may provide for the use, sale, or lease of property, notwithstanding any provision in a contract, a lease, or applicable law that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title concerning the debtor, or on the appointment of or the taking possession by a trustee in a case under this title or a custodian, and that effects, or gives an option to effect, a forfeiture, modification, or termination of the debtor's interest in such property.

(m) The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

(n) The trustee may avoid a sale under this section if the sale price was controlled by an agreement among potential bidders at such sale, or may recover from a party to such agreement any amount by which the value of the property sold exceeds the price at which such sale was consummated, and may recover any costs, attorneys' fees, or expenses incurred in avoiding such sale or recovering such amount. In addition to any recovery under the preceding sentence, the court may grant judgment for punitive damages in favor of the estate and against any such party that entered into such an agreement in willful disregard of this subsection.

(o) Notwithstanding subsection (f), if a person purchases any interest in a consumer credit

I WAS IN POSSESSION OF THE PROPERTY, I HAD TENANTS (ELDERLY & HANDICAPPED) WITH LEGITIMATE LEASES, PROTECTED BY BANKRUPTCY LAW, STATE LAW, ADA, AND THE PROTECTING TENANTS AT FORECLOSURE ACT. I OFFERED TO BRING THE MORTGAGES CURRENT AT MY 8/1/2019 HEARING IN CHANCERY COURT, WHILE ATTORNEY VIRGINIA LEE STORY TOLD ME THAT IT WAS ALREADY TOO LATE. THAT THE BANKRUPTCY PROCEEDINGS WERE TOO FAR ALONG, WHICH IS A VIOLATION OF MY CONSTITUTIONAL RIGHTS FOR PROTECTING MY CRITICAL PROPERTY INTERESTS, WITH MY RIGHTS UNDER FEDERAL HUD/ADA/FED/FRBP CRIMINAL & CIVIL LAWS! ADVERSARIAL PROCEEDING REQUIRED BY LAW!

transaction that is subject to the Truth in Lending Act or any interest in a consumer credit contract (as defined in section 433.1 of title 16 of the Code of Federal Regulations (January 1, 2004), as amended from time to time), and if such interest is purchased through a sale under this section, then such person shall remain subject to all claims and defenses that are related to such consumer credit transaction or such consumer credit contract, to the same extent as such person would be subject to such claims and defenses of the consumer had such interest been purchased at a sale not under this section.

(p) In any hearing under this section—

(1) the trustee has the burden of proof on the issue of adequate protection; and

(2) the entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest.

(Pub. L. 95–598, Nov. 6, 1978, 92 Stat. 2572; Pub. L. 98–353, title III, §442, July 10, 1984, 98 Stat. 371; Pub. L. 99–554, title II, §257(k), Oct. 27, 1986, 100 Stat. 3115; Pub. L. 103–394, title I, §109, title II, §§214(b), 219(c), title V, §501(d)(8), Oct. 22, 1994, 108 Stat. 4113, 4126, 4129, 4144; Pub. L. 109–8, title II, §§204, 231(a), title XII, §1221(a), Apr. 20, 2005, 119 Stat. 49, 72, 195; Pub. L. 111–327, §2(a)(13), Dec. 22, 2010, 124 Stat. 3559.)

### HISTORICAL AND REVISION NOTES

#### LEGISLATIVE STATEMENTS

Section 363(a) of the House amendment defines "cash collateral" as defined in the Senate amendment. The broader definition of "soft collateral" contained in H.R. 8200 as passed by the House is deleted to remove limitations that were placed on the use, lease, or sale of inventory, accounts, contract rights, general intangibles, and chattel paper by the trustee or debtor in possession.

Section 363(c)(2) of the House amendment is derived from the Senate amendment. Similarly, sections 363(c)(3) and (4) are derived from comparable provisions in the Senate amendment in lieu of the contrary procedure contained in section 363(c) as passed by the House. The policy of the House amendment will generally require the court to schedule a preliminary hearing in accordance with the needs of the debtor to authorize the trustee or debtor in possession to use, sell, or lease cash collateral. The trustee or debtor in possession may use, sell, or lease cash collateral in the ordinary course of business only "after notice and a hearing."

Section 363(f) of the House amendment adopts an identical provision contained in the House bill, as opposed to an alternative provision contained in the Senate amendment.

Section 363(h) of the House amendment adopts a new paragraph (4) representing a compromise between the House bill and Senate amendment. The provision adds a limitation indicating that a trustee or debtor in possession sell jointly owned property only if the property is not used in the production, transmission, or distribution for sale, of electric energy or of natural or synthetic gas for heat, light, or power. This limitation is intended to protect public utilities from being deprived of power sources because of the bankruptcy of a joint owner.

Section 363(k) of the House amendment is derived from the third sentence of section 363(e) of the Senate amendment. The provision indicates that a secured creditor may bid in the full amount of the creditor's allowed claim, including the secured portion and any unsecured portion thereof in the event the creditor is undersecured, with respect to property that is subject to a lien that secures the allowed claim of the sale of the property.

SENATE REPORT NO. 95–989

This section defines the right and powers of the trustee with respect to the use, sale or lease of property and the rights of other parties that have interests in the property involved. It applies in both liquidation and reorganization cases.

Subsection (a) defines "cash collateral" as cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents in which the estate and an entity other than the estate have an interest, such as a lien or a co-ownership interest. The definition is not restricted to property of the estate that is cash collateral on the date of the filing of the petition. Thus, if "non-cash" collateral is disposed of and the proceeds come within the definition of "cash collateral" as set forth in this subsection, the proceeds would be cash collateral as long as they remain subject to the original lien on the "non-cash" collateral under section 552(b). To illustrate, rents received from real property before or after the commencement of the case would be cash collateral to the extent that they are subject to a lien.

Subsection (b) permits the trustees to use, sell, or lease, other than in the ordinary course of business, property of the estate upon notice and opportunity for objections and hearing thereon.

Subsection (c) governs use, sale, or lease in the ordinary course of business. If the business of the debtor is authorized to be operated under §721, 1108, or 1304 of the bankruptcy code, then the trustee may use, sell, or lease property in the ordinary course of business or enter into ordinary course transactions without need for notice and hearing. This power is subject to several limitations. First, the court may restrict the trustee's powers in the order authorizing operation of the business. Second, with respect to cash collateral, the trustee may not use, sell, or lease cash collateral except upon court authorization after notice and a hearing, or with the consent of each entity that has an interest in such cash collateral. The same preliminary hearing procedure in the automatic stay section applies to a hearing under this subsection. In addition, the trustee is required to segregate and account for any cash collateral in the trustee's possession, custody, or control.

Under subsections (d) and (e), the use, sale, or lease of property is further limited by the concept of adequate protection. Sale, use, or lease of property in which an entity other than the estate has an interest may be effected only to the extent not inconsistent with any relief from the stay granted to that interest's holder. Moreover, the court may prohibit or condition the use, sale, or lease as is necessary to provide adequate protection of that interest. Again, the trustee has the burden of proof on the issue of adequate protection. Subsection (e) also provides that where a sale of the property is proposed, an entity that has an interest in such property may bid at the sale thereof and set off against the purchase price up to the amount of such entity's claim. No prior valuation under section 506(a) would limit this bidding right, since the bid at the sale would be determinative of value.

Subsection (f) permits sale of property free and clear of any interest in the property of an entity other than the estate. The trustee may sell free and clear if applicable nonbankruptcy law permits it, if the other entity consents, if the interest is a lien and the sale price of the property is greater than the amount secured by the lien, if the interest is in bona fide dispute, or if the other entity could be compelled to accept a money satisfaction of the interest in a legal or equitable proceeding. Sale under this subsection is subject to the adequate protection requirement. Most often, adequate protection in connection with a sale free and clear of other interests will be to have those interests attach to the proceeds of the sale.

At a sale free and clear of other interests, any holder of any interest in the property being sold will be permitted to bid. If that holder is the high bidder, he will be permitted to offset the value of his interest against

363(H) THIS WAS A BURDENSOM ASSET, AS LONG AS I COULD BRING THE PAYMENTS CURRENT AND KEEP PAYING THEM ON TIME, THE BANKRUPTCY TRUSTEE WOULD HAVE HAD TO REMOVE OUR HOME FROM THE BANKRUPTCY ESTATE, OR PAY TO RELOCATE MY TENTNATS, AND PAID TO RELOCATE AND REIMBURSE ME FOR MY INVESTMENT, NOT A FORCED AUCTION, WHERE WE INSTANTLY LOST OVER $200. WHILE OUR HOME IS WORTH $800K TODAY! SCAM BETWEEN COURTS!

Page 87 TITLE 11—BANKRUPTCY §363

the purchase price of the property. Thus, in the most common situation, a holder of a lien on property being sold may bid at the sale and, if successful, may offset the amount owed to him that is secured by the lien on the property (but may not offset other amounts owed to him) against the purchase price, and be liable to the trustee for the balance of the sale price, if any.

Subsection (g) permits the trustee to sell free and clear of any vested or contingent right in the nature of dower or curtesy.

Subsection (h) permits sale of a co-owner's interest in property in which the debtor had an undivided ownership interest such as a joint tenancy, a tenancy in common, or a tenancy by the entirety. Such a sale is permissible only if partition is impracticable, if sale of the estate's interest would realize significantly less for the estate that sale of the property free of the interests of the co-owners, and if the benefit to the estate of such a sale outweighs any detriment to the co-owners. This subsection does not apply to a co-owner's interest in a public utility when a disruption of the utilities services could result.

Subsection (i) provides protections for co-owners and spouses with dower, curtesy, or community property rights. It gives a right of first refusal to the co-owner or spouse at the price at which the sale is to be consummated.

Subsection (j) requires the trustee to distribute to the spouse or co-owner the appropriate portion of the proceeds of the sale, less certain administrative expenses.

Subsection (k) [enacted as (l)] permits the trustee to use, sell, or lease property notwithstanding certain bankruptcy or ipso facto clauses that terminate the debtor's interest in the property or that work a forfeiture or modification of that interest. This subsection is not as broad as the anti-ipso facto provision in proposed 11 U.S.C. 541(c)(1).

Subsection (l) [enacted as (m)] protects good faith purchasers of property sold under this section from a reversal on appeal of the sale authorization, unless the authorization for the sale and the sale itself were stayed pending appeal. The purchaser's knowledge of the appeal is irrelevant to the issue of good faith.

Subsection (m) [enacted as (n)] is directed at collusive bidding on property sold under this section. It permits the trustee to void a sale if the price of the sale was controlled by an agreement among potential bidders. The trustees may also recover the excess of the value of the property over the purchase price, and may recover any costs, attorney's fees, or expenses incurred in voiding the sale or recovering the difference. In addition, the court is authorized to grant judgment in favor of the estate and against the collusive bidder if the agreement controlling the sale price was entered into in willful disregard of this subsection. The subsection does not specify the precise measure of damages, but simply provides for punitive damages, to be fixed in light of the circumstances.

REFERENCES IN TEXT

Section 7A of the Clayton Act, referred to in subsec. (b)(2), is classified to section 18a of Title 15, Commerce and Trade.

The Truth in Lending Act, referred to in subsec. (o), is title I of Pub. L. 90–321, May 29, 1968, 82 Stat. 146, as amended, which is classified generally to subchapter I (§1601 et seq.) of chapter 41 of Title 15, Commerce and Trade. For complete classification of this Act to the Code, see Short Title note set out under section 1601 of Title 15 and Tables.

AMENDMENTS

2010—Subsec. (d). Pub. L. 111–327, §2(a)(13)(A), struck out "only" before dash at end of introductory provisions.

Subsec. (d)(1). Pub. L. 111–327, §2(a)(13)(B), amended par. (1) generally. Prior to amendment, par. (1) read as follows: "in accordance with applicable nonbankruptcy law that governs the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust; and".

Subsec. (d)(2). Pub. L. 111–327, §2(a)(13)(C), inserted "only" before "to the extent".

2005—Subsec. (b)(1). Pub. L. 109–8, §231(a), substituted ", except that if the debtor in connection with offering a product or a service discloses to an individual a policy prohibiting the transfer of personally identifiable information about individuals to persons that are not affiliated with the debtor and if such policy is in effect on the date of the commencement of the case, then the trustee may not sell or lease personally identifiable information to any person unless—" and subpars. (A) and (B) for period at end.

Subsec. (d). Pub. L. 109–8, §1221(a), substituted "only—" and pars. (1) and (2) for "only to the extent not inconsistent with any relief granted under section 362(c), 362(d), 362(e), or 362(f) of this title."

Subsecs. (o), (p). Pub. L. 109–8, §204, added subsec. (o) and redesignated former subsec. (o) as (p).

1994—Subsec. (a). Pub. L. 103–394, §214(b), inserted "and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties" after "property".

Subsec. (b)(2). Pub. L. 103–394, §§109, 501(d)(8)(A), struck out "(15 U.S.C. 18a)" after "Clayton Act" and amended subpars. (A) and (B) generally. Prior to amendment, subpars. (A) and (B) read as follows:

"(A) notwithstanding subsection (a) of such section, such notification shall be given by the trustee; and

"(B) notwithstanding subsection (b) of such section, the required waiting period shall end on the tenth day after the date of the receipt of such notification, unless the court, after notice and hearing, orders otherwise."

Subsec. (c)(1). Pub. L. 103–394, §501(d)(8)(B), substituted "1203, 1204, or 1304" for "1304, 1203, or 1204".

Subsec. (e). Pub. L. 103–394, §219(c), inserted at end "This subsection also applies to property that is subject to any unexpired lease of personal property (to the exclusion of such property being subject to an order to grant relief from the stay under section 362)."

1986—Subsec. (c)(1). Pub. L. 99–554, §257(k)(1), inserted reference to sections 1203 and 1204 of this title.

Subsec. (l). Pub. L. 99–554, §257(k)(2), inserted reference to chapter 12.

1984—Subsec. (a). Pub. L. 98–353, §442(a), inserted "whenever acquired" after "equivalents" and "and includes the proceeds, products, offspring, rents, or profits of property subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title" after "interest".

Subsec. (b). Pub. L. 98–353, §442(b), designated existing provisions as par. (1) and added par. (2).

Subsec. (e). Pub. L. 98–353, §442(c), inserted ", with or without a hearing," after "court" and struck out "In any hearing under this section, the trustee has the burden of proof on the issue of adequate protection".

Subsec. (f)(3). Pub. L. 98–353, §442(d), substituted "all liens on such property" for "such interest".

Subsec. (h). Pub. L. 98–353, §442(e), substituted "at the time of" for "immediately before".

Subsec. (j). Pub. L. 98–353, §442(f), substituted "compensation" for "compensation".

Subsec. (k). Pub. L. 98–353, §442(g), substituted "unless the court for cause orders otherwise the holder of such claim may bid at such sale, and, if the holder" for "if the holder".

Subsec. (l). Pub. L. 98–353, §442(h), substituted "Subject to the provisions of section 365, the trustee" for "The trustee", "condition" for "conditions", "or the taking" for "a taking", and "interest" for "interests".

Subsec. (n). Pub. L. 98–353, §442(i), substituted "avoid" for "void", "avoiding" for "voiding", and "In addition to any recovery under the preceding sentence, the court may grant judgment for punitive damages in favor of the estate and against any such party that entered into such an agreement in willful disregard of

**363(H) WOULD HAVE ONLY ALLOWED THIS SALE (PROVIDED I COULD BRING THE PAYMENTS CURRENT AND MAINTAIN THEM) IF THE BENEFIT TO THE BK ESTATE FROM SUCH A SALE OUTWEIGHED ANY DETRIMENT TO THE CO-OWNERS. WHICH WAS LITERALLY IMPOSSIBLE. SHE HAD ROUGHLY $40K OF UNSECURE DEBTS, OUR MARITAL DEBTS LEFT IN MY NAME WERE NEVER GIVEN ANY CONSIDERATION, NOR WAS A PENNY APPLIED TO MY MARITAL DEBTS, OR PAID TO ME FOR MY INVESTMENTS. WE INSTANTLY LOST OVER $200K FROM OUR CASH INVESTMENTS, PLUS I LOST A MILLION DOLLAR RETIREMENT INVESTMENT, WHICH THIS PROPERTY WAS THE WHOLE OF. WORTH $800K TODAY, WITH ONLY $300K OWED!**


PLAINTIFF'S EXHIBIT

D

# Audio file

2024-07-20_repeating-patterns-of-court-racketerring.mp3[1]

# Transcript

**00:00:01 Jeff Fenton**

One of the repeating patterns employed by the Tennessee Courts and council has been to **sow fraud** into the court record and thereby **falsify the court record** with a fraudulent narrative. [Which is a felony crime.]

**00:00:25 Jeff Fenton**

[By] mak[ing] statements that were **false** and if someone did not immediately refute those statements and prove them to be false, [then] the next time around the court acted as though they were actually, in fact, **confirmed facts**.

**00:00:50 Jeff Fenton**

I don't know if this is because of the principle... if you don't disaffirm or rebuke or disprove a statement, like in a complaint, that is therefore taken as though it's true. **That's not the case here**, out of **trying to show respect for the court**, not fight with or disrespect the court, trying not to refute almost everything they say, was my intent.

**00:01:25 Jeff Fenton**

Plus, it's literally impossible for me, with my disabilities, **to fight both the opposing counsel and the court constantly.** [As I have noticed the court about repeatedly, but they have refused to intervene.] I need to check on the legalities of whether or not the court is supposed to make arguments or accusations, or if they are supposed to only be the decider of facts, because in this case they are making all kinds of accusations, which are **false** and then being sown into the court record as though **facts** and then acting as though they're **substantiated facts** when not rebuked or refuted immediately.

---

[1]     https://rico.jefffenton.com/evidence/2024-07-20_repeating-patterns-of-court-racketerring.mp3

[I understand this better now. I believe that this is *prima facie* evidence of both attorney and judicial misconduct, *judicial bias*, and *fraud on the court* by officers of the court.]

00:02:08 Jeff Fenton

Attorney Story took it one step further in this practice by pretending as though the statement was in fact **made by somebody else**. Another party, a third party, not herself. Like, as though it was from my counsel per say, which is even more **misconduct**. [And fraud on the court by officers of the court.]

00:02:27 Jeff Fenton

So, this is a pattern of racketeering I've seen in the courts. It's been repeated over and over. It **falsifies** the court records. [Which is a felony crime.]

00:02:37 Jeff Fenton

Another thing which has been seen over and over, that is another pattern of racketeering in the courts, is trying to exert any court rules **without obeying**, first and foremost, **the rules of conduct**, the [court's codes of] conduct.

00:02:55 Jeff Fenton

So, if they're trying to use **technical rules** to *prevent my testimony*, but they're not obeying the [court's codes of] conduct and their oaths of office, or the primary function of the court, or addressing any of the **merits**, and showing **good conduct** then the courts cannot reasonably be expected to *produce justice* **absent from just conduct**.

00:03:26 Jeff Fenton

So that is another pattern of racketeering used by the courts, to date, which this federal court is also participating in and amplifying.